QUINN EMANUEL URQUHART & SULLIVAN LLP
James D. Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel:     (415) 875-6600
Fax:     (415) 875-6700

William A. Burck (admitted *pro hac vice*)
williamburck@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Tel:     (202) 538-8000
Fax:     (202) 538-8100

Rajat Rana (admitted *pro hac vice*)
Sam Cleveland (admitted *pro hac vice*)
rajatrana@quinnemanuel.com
samcleveland@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Tel:     (212) 849-7000
Fax:     (212) 849-7100

*Attorneys for Defendant World Liberty Financial LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUCHEN "JUSTIN" SUN; BLUE ANTHEM LIMITED; and BLACK ANTHEM LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.),<br><br>Defendant. | Civil Action No. 3:26-cv-3360-JD<br><br>**DEFENDANT WORLD LIBERTY FINANCIAL LLC'S MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>Date:     August 20, 2026<br>Time:     10:00 a.m.<br>Courtroom:  11<br><br>The Honorable James Donato<br><br>Trial Date:  Not Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on August 20, 2026, at 10:00 a.m., the undersigned will appear before the Honorable Judge James Donato of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 11 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall then and there present Defendant's Motion to Compel Arbitration and Stay Case (the "Motion").

This motion is based on this Notice of Motion and Motion, as well as all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this motion.

## RELIEF REQUESTED

Defendant requests that the Court compel Blue Anthem Limited and Black Anthem Limited to arbitrate their claims, and stay the case as to any remaining Plaintiffs and/or claims.

Dated: June 2, 2026

/s/ *James D. Judah*
James D. Judah

*Attorney for Defendant World Liberty Financial LLC*

Civil Action No. 3:26-cv-3360-JD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTUAL ALLEGATIONS ....................................................... 1

        A.      World Liberty is a Market-Leading Decentralized Finance Company ..................... 1

        B.      Blue Anthem Purchases and is Awarded $WLFI Tokens ........................................ 2

        C.      The Anthem Parties and World Liberty Enter into ▮▮▮▮ To Unlock Certain $WLFI Tokens ............................................................................................................ 3

        D.      World Liberty Freezes Blue Anthem's Tokens ........................................................ 4

        E.      The Anthem Parties Concede Their Claims are Subject to Arbitration ..................... 4

III.    LEGAL STANDARD ........................................................................................... 5

IV.     ARGUMENT ......................................................................................................... 6

        A.      Blue Anthem and Black Anthem Must be Compelled to Arbitration ........................ 6

                1.      A Valid Arbitration Agreement Exists ........................................................ 6

                2.      The Parties Agreed that the Question of Arbitrability Is Assigned to the Arbitrator ....................................................................................... 8

                3.      The Arbitration Provisions Are Broad and Cover the Disputes at Issue ...................................................................................................... 9

        B.      Any Remaining Portion of This Case Should Be Stayed Pending Arbitration ........ 14

V.      CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................................5, 7

*AT&T Tech., Inc. v. Communications Workers*,
475 U.S. 643 (1986) ....................................................................................................10

*Barrera v. Apple Am. Grp. LLC*
(2023) 95 Cal.App.5th 63 ............................................................................................7

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ......................................................................................5

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002)........................................................................14

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .................................................................................8, 9

*Burgos v. Ne. Logistics, Inc.*,
2017 WL 10187756 (E.D.N.Y. Mar. 30, 2017)............................................................9

*Carder v. Carl M. Freeman Communities, LLC*,
2009 WL 106510 (Del. Ch. Jan. 5, 2009) ....................................................................6

*Chiron Corp. v. Ortho Diag. Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .....................................................................................5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
1998 WL 865284 (N.D. Cal. Dec. 7, 1998), *aff'd*, 207 F.3d 1126 (9th Cir. 2000) ..................10

*Colorado-Arkansas-Texas Distributing, LLC v. Am. Eagle Food Prods.*,
525 F. Supp.2d 428 (S.D.N.Y. 2007)...........................................................................13

*Condee v. Longwood Management Corp.*
(2001) 88 Cal. App. 4th 215 ........................................................................................7

*Connell v. ByteDance, Inc.*,
2025 WL 1828472 (N.D. Cal. July 1, 2025)..................................................................9

*Country Life Homes, Inc. v. Shaffer*,
2007 WL 333075 (Del. Ch. Jan. 31, 2007)...................................................................12

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .....................................................................................................5

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Deering v. Graham*,
    2015 WL 424534 (D.N.J. Jan. 30, 2015) ......................................................................................8

*Doe v. Kaiser Found. Health Plan, Inc.*,
    725 F. Supp. 3d 1033 (N.D. Cal. 2024) .................................................................................9, 10

*E.I. DuPont de Nemours & Co. v. Custom Blending Int'l, Inc.*,
    1998 WL 842289 (Del. Ch. Nov. 24, 1998) .................................................................................7

*Edge of the Woods v. Wilmington Savings Fund Society, FSB*,
    2001 WL 946521 (Del. Super. Ct. Aug. 16, 2001) .......................................................................7

*Epic Systems Corp. v. Lewis*,
    584 U.S. 497 (2018) ......................................................................................................................7

*Gestetner Holdings, PLC v. Nashua Corp.*,
    784 F. Supp. 78 (S.D.N.Y. 1992) ...............................................................................................13

*Green Tree Fin. Corp.–Ala. v. Randolph*,
    531 U.S. 79 (2000) ......................................................................................................................10

*Han v. Synergy Homecare Franchising, LLC*,
    2017 WL 446881 (N.D. Cal. Feb. 2, 2017) ...............................................................................10

*Hansen v. LMB Mortg. Servs., Inc.*,
    1 F.4th 667 (9th Cir. 2021) ..........................................................................................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ....................................................................................................................5, 6

*Installit, Inc. v. Carpenters 46 N. Cal. Cntys. Conf. Bd.*,
    214 F. Supp. 3d 855 (N.D. Cal. 2016) .......................................................................................10

*Marchand v. Northrup Grumman Corp.*,
    2017 WL 2633132 (N.D. Cal. June 19, 2017) ...........................................................................15

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
    473 U.S. 614 (1985) ......................................................................................................................9

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ......................................................................................................9

*Mohebbi v. Khazen*,
    2014 WL 6845477 (N.D. Cal. Dec. 4, 2014)..............................................................................15

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ......................................................................................................5

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
    817 A.2d 149 (Del. 2002) .............................................................................................................6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Quinlan v. O'Brien*,
2026 WL 93395 (Del. Super. Ct. Jan. 13, 2026) ...................................................................6

*REM OA Holdings, LLC v. N. Gold Holdings, LLC*,
2023 WL 6884845 (Del. Ch. Oct. 19, 2023) ...............................................................12

*Roblox Corp. v. WowWee Grp. Ltd.*,
2023 WL 4108191 (N.D. Cal. June 20, 2023).................................................................10

*S.G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) ........................................................................6

*In re Samsung Galaxy Smartphone Marketing & Sales Practices Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) ....................................................................14

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .............................................................................5, 6, 9

*Suski v. Coinbase, Inc.*,
55 F.4th 1227 (9th Cir. 2022)................................................................................12, 13

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
59 F. Supp. 2d 1060 (S.D. Cal. 1999) .....................................................................13

*Thomson v. Hodgson*,
150 F.4th 1097 (9th Cir. 2025) ...............................................................................13

*Trinchitella v. Am. Realty Partners, LLC*,
2016 WL 4041319 (E.D. Cal. July 27, 2016).............................................................14

*Verint Americas Inc. v. Terminix Consumer Servs., LLC*,
817 F. Supp. 3d 1338 (N.D. Ga. 2025) .....................................................................13

*Webber v. Uber Techs, Inc.*,
2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ...........................................................9

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
2006 WL 2473665 (Del. Ch. Aug. 22, 2006) .............................................................6

*Zamudio v. Aerotek, Inc*,
2024 WL 863715 (E.D. Cal. Feb. 28, 2024).................................................................14

**Statutes**

9 U.S.C. § 2 ...............................................................................................................3, 7

9 U.S.C. § 3 ................................................................................................................14

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

**Other Authorities**

American Arbitration Association Commercial Arbitration Rules ....................................... 8 & n.4

## I.      Introduction

Plaintiffs Blue Anthem Limited ("Blue Anthem") and Black Anthem Limited ("Black Anthem"; together, the "Anthem Parties") agreed to arbitrate their disputes with World Liberty. Having signed various agreements, accepted their benefits, and admitted before filing that their claims belong in arbitration, the Anthem Parties nonetheless filed this suit.

Blue Anthem agreed to arbitrate in four successive agreements: the November 2024 Advisor Token Agreement (the "ATA"), the January 2025 Terms of Sale ("Terms of Sale"), ███████████ ████████████████████████████████, and the September 2025 Token Unlock Agreement (the "TUA"); ██████████████████████████████████████████ Each agreement's arbitration provision is broad, covering disputes arising from or related to the agreements, and some agreements delegate the threshold question of arbitrability to the arbitrator, rather than a court. And although Blue Anthem's earliest agreement—the November 2024 Token Purchase Agreement (the "TPA")—provided for disputes to be resolved in court, every later agreement required arbitration, and those later agreements control on the same subject matter. The Anthem Parties' claims "touch matters" in these agreements and therefore must be sent to arbitration under Ninth Circuit and Supreme Court precedent.

The Anthem Parties' own pre-filing conduct confirms they understood these obligations. The Anthem Parties' counsel sent World Liberty a draft arbitration demand in late 2025 asserting that ████████████████████████████████████████████ ████████████████████ Ex. 5. Only after Plaintiffs decided they could exert more pressure in court than arbitration did they reverse course and sue.

To the extent the claims brought by Yuchen (Justin) Sun ("Sun") are not dismissed (for the reasons in World Liberty's contemporaneously filed Motion to Dismiss), the Court should stay them pending arbitration. Sun's claims arise from the same agreements and conduct as the arbitrable claims, so a stay would avoid duplicative proceedings and inconsistent rulings.

## II.      Relevant Factual Allegations

### A.      World Liberty is a Market-Leading Decentralized Finance Company

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

World Liberty is a decentralized finance company founded in 2024 by cryptocurrency industry leaders, including Zachary Folkman, Chase Herro, and Zach Witkoff, among others.  Alper Decl. ¶ 2.  World Liberty seeks to provide access to decentralized finance applications through the use of blockchain technology.  *Id.*  In October 2024, World Liberty launched a cryptocurrency token called $WLFI, which gives holders certain governance rights related to World Liberty's protocol.  *Id.* ¶ 3.  The tokens carry no economic or other rights.  *Id.*

**B.      Blue Anthem Purchases and is Awarded $WLFI Tokens**

On November 25, 2024, Blue Anthem—an entity owned and controlled by Sun, Compl. ¶ 19—entered into the TPA with World Liberty, under which Blue Anthem purchased two billion non-transferable $WLFI tokens for $30 million.  Ex. 1.  This purchase was subject to the World Liberty Terms of Sale applicable to non-U.S. persons located outside the United States ("**Terms of Sale**").  Caplan Decl. ¶¶ 3-5; Ex. A (Terms of Sale).  On the same day, World Liberty granted Blue Anthem an additional one billion non-transferable $WLFI tokens through the ATA, in exchange for (*inter alia*) Blue Anthem's agreement to serve on World Liberty's Advisory Board **and to arbitrate any non-IP disputes**:

> Except for any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, "Disputes") in which either Party seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, including, without limitation, copyrights, trademarks, trade names, logos, trade secrets or patents, you and the Company (i) waive your and the Company's respective rights to have any and all Disputes arising from or related to these Terms resolved in a court, and (ii) waive your and the Company's respective rights to a jury trial. Instead, you and the Company will arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

Ex. 2 § 20; *see also* Compl. ¶¶ 7, 30, 75, 99, 101, 111, 133 (referencing the ATA and/or its terms).  The arbitration provision is clearly identified ("**20. Dispute Resolution; Arbitration**"), including with bold, all-capitalized language.  Ex 2 § 20.[1]

---

[1]  **"PLEASE READ THIS SECTION CAREFULLY: IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT AND TO HAVE A JURY HEAR YOUR CLAIMS. IT CONTAINS PROCEDURES FOR**

In January 2025, Blue Anthem purchased another approximately one billion non-transferable $WLFI tokens, and this purchase was also subject to the World Liberty Terms of Sale. Compl. ¶ 30; Caplan Decl. ¶¶ 3-6; Ex. A (Terms of Sale). The Terms of Sale includes the same arbitration clause as the ATA. Ex. A § 16.[2]

As a result of these purchases and awards, Blue Anthem held approximately four billion non-transferable $WLFI tokens. Significantly, in each of these agreements, Blue Anthem agreed that the $WLFI tokens were not transferable and may never become transferable. Ex. 1; Ex. 2; Ex. A. For instance, the TPA provided that "[a]ll $WLFI will be non-transferable and locked indefinitely in a wallet or smart contract." Ex. 1 § 1. Blue Anthem also agreed it had "no expectation of resale of the Token" and that it would "assume that the Tokens are non-transferable indefinitely." *Id.*; *see also id.* § 10(k) ("You have read and understand the restrictions and limitations set forth in these Terms that will be imposed on the Tokens, including that the Tokens are non-transferable and that they may never become transferable."). The ATA and Terms of Sale included the same warnings. Ex. 2 §§ 6, 14(11); Ex. A §§ 1, 10(12).

**C.    The Anthem Parties and World Liberty Enter into** ▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 3. ▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**MANDATORY BINDING ARBITRATION AND A CLASS ACTION WAIVER."** Ex. 2 (ATA) § 20.

[2] The Terms of Sale also includes all-capitalized language in the preamble noticing purchasers to the arbitration provision. *Id.* ("PLEASE READ THESE TERMS OF TOKEN SALE CAREFULLY … SECTION 16 CONTAINS A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER, WHICH MAY AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT AGREE TO THESE TERMS OF SALE, DO NOT PURCHASE TOKENS.").



Ex. 3 § 7.

which Blue Anthem did on September 1, 2025.  Caplan Decl. ¶¶ 7-8; Ex. B.  The TUA again unambiguously disclosed World Liberty's ability and right to freeze tokens.  Ex. B § 6.   The TUA also included yet another agreement to arbitrate.  *Id.* § 8 (providing that "any dispute arising out of or related to this Receipt Agreement shall be subject to Section 5 'Dispute Resolution' from the Terms of Service"); Ex. 4 (Terms of Service) § 5 ("Dispute Resolution; Arbitration").

**D.      World Liberty Freezes Blue Anthem's Tokens**

█████████████████████████████████████████████████████, World Liberty discovered violations of the ███.  World Liberty then exercised its contractual right under the ███ and TUA to freeze Blue Anthem's tokens.

**E.      The Anthem Parties Concede Their Claims are Subject to Arbitration**

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

After World Liberty exercised its contractual right to freeze Blue Anthem's tokens, counsel for Plaintiffs acknowledged that these disputes were subject to arbitration—including by sending World Liberty a draft arbitration demand ("Plaintiffs' Draft Arbitration Demand"). Cleveland Decl. ¶ 2; Ex. 5. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 5 ¶¶ 18-19 ████████████████████████████████████████████████████████████████████████████████████

### III.    Legal Standard

The Federal Arbitration Act embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citations omitted). In determining whether to compel arbitration under the FAA, a court need only evaluate two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019); *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diag. Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). In such a case, the FAA "requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). For a dispute to be subject to a contractual agreement to arbitrate, the dispute "need only 'touch matters' covered by the contract containing the arbitration clause." *Simula, Inc. v. Autoliv,*

*Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).  Any doubts regarding whether a claim is subject to arbitration must be resolved in favor of arbitration.  *Id.*

In considering a motion to compel arbitration, "the court applies a summary judgment standard and thus may consider evidence outside of the pleadings, such as declarations." *S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 618 (N.D. Cal. 2025); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (applying summary judgment standard "is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'").

## IV.    Argument

### A.    Blue Anthem and Black Anthem Must be Compelled to Arbitration

There are multiple valid agreements to arbitrate that cover each of the Anthem Parties' claims against World Liberty.  No further analysis is required to compel those claims to arbitration. *Henry Schein*, 586 U.S. at 67-68.

#### 1.    A Valid Arbitration Agreement Exists

There are no fewer than four separate arbitration agreements between Blue Anthem and World Liberty: 1) the ATA, 2) the Terms of Sale, 3) the ███, and 4) the TUA.  Exs. 2-4, A, B. Further, Black Anthem is also a party to the ███.  Ex. 3.  Each of these is a valid agreement (either signed or accepted through World Liberty's online portal) with a clear arbitration provision.  *See, e.g.*, Ex. 2-3 (executed ATA and ███); Caplan Decl. ¶¶ 2-8 (confirming assent to the Terms of Sale and TUA through click-through acceptance).  These facts are sufficient to establish that a valid agreement containing an arbitration provision exists.  *See Quinlan v. O'Brien*, 2026 WL 93395, at *6 (Del. Super. Ct. Jan. 13, 2026) (finding a valid arbitration agreement between plaintiff and defendant based on an unambiguous arbitration provision); *Carder v. Carl M. Freeman Communities, LLC*, 2009 WL 106510, at *3 (Del. Ch. Jan. 5, 2009) ("Where the parties bargained for an arbitration provision in a contract, Delaware courts generally favor arbitration of particular disputes and 'ordinarily resolve any doubts in favor of arbitration.'") (quoting *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002)); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *3 (Del. Ch. Aug. 22, 2006) (broad arbitration clause requiring

arbitration of any and all disputes or controversies arising out of agreement encompassed "all possible claims 'that touch on contract rights or contract performance'").[3]

Moreover, the Anthem Parties' own actions acknowledge the existence and validity of these agreements. As set forth above (Section II.E, *supra*), among other indications that these claims were subject to mandatory arbitration, Plaintiffs sent World Liberty a ▇▇▇▇▇▇▇▇ Demand for Arbitration with AAA (consistent with the arbitration rules applying to all four of the arbitration agreements) asserting that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ (Ex. 5 ¶¶ 18-19).

Finally, the arbitration agreements invoke the FAA, which provides that any "written provision" to arbitrate disputes "shall be valid, irrevocable, and enforceable" absent limited exceptions such as fraud or unconscionability. 9 U.S.C. § 2; *see Epic Systems Corp. v. Lewis*, 584 U.S. 497, 509-10 (2018); *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). No such exceptions apply here. The Complaint alleges fraud in the inducement, but only as to the TPA (not the ▇▇▇ or the arbitration agreements specifically). Compl. ¶¶ 173-78 (alleging that absent World Liberty's representations "Plaintiffs would never have entered into the TPA, acquired $WLFI tokens, or publicly endorsed the World Liberty project"—but not referencing the ATA, Terms of Sale, ▇▇▇, or TUA). The Complaint also alludes to ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In any event, neither the alleged facts nor the law support a duress claim, including because the Anthem Parties are sophisticated parties, *Edge of the Woods v. Wilmington Savings Fund Society, FSB*, 2001 WL 946521, at *6 (Del. Super. Ct. Aug. 16, 2001) (citing party's sophistication in rejecting duress claim); *E.I. DuPont de Nemours & Co. v. Custom Blending Int'l, Inc.*, 1998 WL 842289, at *4 n.2 (Del. Ch. Nov. 24, 1998) (same), and because the facts do not support a duress defense. Regardless, if the Anthem Parties wish to contest the enforceability of the ▇▇▇, they can do so in arbitration,

---

[3] The same is true under California law. *Barrera v. Apple Am. Grp. LLC* (2023) 95 Cal. App. 5th 63, 76; *Condee v. Longwood Management Corp.* (2001) 88 Cal. App. 4th 215, 219.

not in court.  *Deering v. Graham*, 2015 WL 424534, at \*5 (D.N.J. Jan. 30, 2015) ("[B]ecause plaintiff is claiming that she signed an integrated contract containing an arbitration clause under duress, rather than just a stand-alone agreement to arbitrate, the duress defense must be decided by an arbitrator and not this Court.").

### 2.    The Parties Agreed that the Question of Arbitrability Is Assigned to the Arbitrator

The Court need not determine whether this dispute is arbitrable, because the parties have delegated that gateway question to the arbitrator, who must decide in the first instance whether Plaintiffs' claims are subject to arbitration.  "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  But the parties can delegate these threshold issues to the arbitrator when the parties "clearly and unmistakably" do so, as they have done here.  *Id.*

All of the arbitration provisions agreed to by the parties call for disputes to be resolved by arbitration administered by the American Arbitration Association, and the ATA, Terms of Sale, and TUA expressly incorporate the AAA rules.  Ex. 2 (ATA) § 20 ("You and we agree that any Dispute that cannot be resolved through the procedures set forth above will be resolved through binding arbitration in accordance with the American Arbitration Association Rules."); Ex. A (Terms of Sale) § 16 (same); Ex. 4 (Terms of Service, incorporated by reference through TUA) § 5 (same).[4]  The AAA rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."  Ex. 6, R-7(a).  Incorporating the AAA rules thus represents a clear delegation of the issue of arbitrability to the arbitrator.  *Brennan*, 796 F.3d at 1130 ("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate

---

[4]  The AAA Commercial Arbitration Rules provide that "[t]he parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules."  Ex. 6 R-1(a).

arbitrability"); *Connell v. ByteDance, Inc.*, 2025 WL 1828472, at *7 (N.D. Cal. July 1, 2025) ("the Ninth Circuit and courts in this district have repeatedly applied *Brennan*'s holding" concerning incorporation of the AAA rules being clear and unmistakable evidence of delegation). This is especially true when the contracting parties are both sophisticated parties, as they are here. *Brennan*, 796 F.3d at 1130.

Further, the Terms of Service (applicable through the TUA) has a clear delegation clause. It provides, in all capital letters, that "IF WE HAVE A DISPUTE ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS ARBITRATION PROVISION, **INCLUDING WITHOUT LIMITATION WHETHER IT IS VALID, CAN BE ENFORCED, OR APPLIES TO OUR DISPUTE**, THAT DISPUTE WILL BE RESOLVED IN ARBITRATION." Ex. 4 (emphasis added). Courts enforce delegation clauses worded almost exactly the same and compel disputes to arbitration for the arbitrator to determine if they are arbitrable. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208-09 (9th Cir. 2016) (finding language delegating "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision" to have "clearly and unmistakably delegated the question of arbitrability to the arbitrator"); *Webber v. Uber Techs, Inc.*, 2018 WL 10151934, at *5 (C.D. Cal. Sept. 5, 2018) (similar); *Burgos v. Ne. Logistics, Inc.*, 2017 WL 10187756, at *6 (E.D.N.Y. Mar. 30, 2017).

Because World Liberty and the Anthem Parties agreed to delegate the question of arbitrability to the arbitrator, the Court should compel arbitration at the very least for the arbitrator to determine whether this dispute—or any portion of it—is arbitrable. *See Simula*, 175 F.3d at 719 ("The FAA embodies a clear federal policy in favor of arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in the favor of arbitration.").

**3.      The Arbitration Provisions Are Broad and Cover the Disputes at Issue**

For a dispute to be subject to a contractual agreement to arbitrate, the dispute "need only 'touch matters' covered by the contract containing the arbitration clause." *Simula, Inc.*, 175 F.3d at 721 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *Doe v. Kaiser Found. Health Plan, Inc.*, 725 F. Supp. 3d 1033, 1038, 1046 (N.D. Cal. 2024)

(granting motion to compel arbitration where the claims fell under the subject matter of one of the parties' agreements with an arbitration provision "even though the conduct at issue . . . [was] also governed" by an agreement without an arbitration provision). Any doubts regarding whether a claim is subject to arbitration must be resolved in favor of arbitration. *Id.* Further, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Installit, Inc. v. Carpenters 46 N. Cal. Cntys. Conf. Bd.*, 214 F. Supp. 3d 855, 859 (N.D. Cal. 2016) (quoting *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

"The strong presumption in favor of arbitration is particularly applicable when the arbitration clause is broad." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 1998 WL 865284, at *5 (N.D. Cal. Dec. 7, 1998), *aff'd*, 207 F.3d 1126 (9th Cir. 2000) (citing *AT&T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 650 (1986)). Here, all of the arbitration provisions cover any disputes "arising under or relating to" the scope of each agreement. *See* Ex. 2 § 20 ("any and all Disputes arising from or related to these [ATA] Terms"); Ex. 3 § 16 ███████████████████████ ████████████████████████████████; Ex. A § 7 ("any and all Disputes arising from or related to these Terms [of Sale]"); Ex. 4 § 5 ("Disputes subject to this provision include, without limitation, those arising from or related to (a) these Terms or the breach, termination or invalidity thereof; (b) any and all products or services sold, distributed or provided by the Company; and (c) any and all interactions or transactions between the parties, whether heretofore or hereafter arising"). Courts have routinely held that contractual language using these terms evinces an intent by the parties to adopt a broad arbitration clause. *See, e.g.*, *Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 4108191, at *3 (N.D. Cal. June 20, 2023) (When "parties use[] the broader phrase 'arising under or relating to,'" arbitration provisions are "interpreted more broadly."); *Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881, at *7 (N.D. Cal. Feb. 2, 2017) ("The ordinary meaning of 'relating to' is broad.").

Every one of the Anthem Parties' claims arises from World Liberty's freeze of the $WLFI tokens and the agreements that govern those tokens. Each claim therefore at the very least "touches" the unlock and freezing matters covered by the ███ —and, for Blue Anthem, the ATA, Terms of

Sale, and TUA as well—and several are rooted expressly in the ███. As shown below, each cause of action falls within the broad scope of the arbitration provisions.

First Cause of Action (Breach of Contract). This claim expressly mentions the ███. Compl. ¶ 165. It also touches on the ATA and Terms of Sale by referencing the tokens acquired in connection with those agreements. *Id.* ¶ 161 (Plaintiffs "were awarded an additional grant of one billion $WLFI tokens. Plaintiffs then purchased an additional one billion $WLFI tokens for $15 million in another transaction."). Further, even the claim that World Liberty breached the TPA is based on "freezing" and/or "unlock" issues that touch upon the terms of the ███, ATA, Terms of Sale, and TUA. *Id.* ¶¶ 162-165. ████████████████████ ████████████████ *Compare* Compl. ¶¶ 159-166 ("Breach of Contract") with Ex. 5 ██ ███████████████.

Second Cause of Action (Anticipatory Breach of Contract). This claim expressly alleges an anticipatory breach of the ███. Compl. ¶ 169, 172. It also touches upon the ATA and Terms of Sale by seeking relief based on the tokens acquired in connection with those agreements, and more broadly is based upon reallocation and destruction issues that touch upon the terms of all of the arbitration agreements.

Third Cause of Action (Fraud in the Inducement). This claim is based on the freezing of Blue Anthem's tokens (Compl. ¶ 177), and therefore touches upon the ████████████ ████████████████. Further, the alleged "blacklisting and reallocation functions" (*id.* ¶¶ 176-177) are disclosed and authorized in the ███ and TUA. Further, Plaintiffs admitted that this claim is subject to arbitration in their Draft Arbitration Demand. *Compare* Compl. ¶¶ 173-178 ("Fraud in the Inducement") with Ex. 5 ████████████ ████████.

Fourth Cause of Action (Conversion). This claim, like others, expressly mentions the ███. Compl. ¶ 182. It also concerns the freezing of Blue Anthem's tokens, which, as above, was addressed in the ███ and TUA, and ███████████████ ██████.

████████. *Compare* Compl. ¶¶ 179-184 ("Conversion") with Ex. 5 ████████ ████████.

Fifth Cause of Action (Unjust Enrichment). This claim is also based on the "freezing" of Blue Anthem's tokens, as well as alleged "blacklisting" and destruction issues. Compl. ¶¶ 186-87. It therefore touches the ████ and TUA. Further, this claim references Blue Anthem's "$45 million investment" (*id.*) which includes the tokens acquired in connection with the ATA and Terms of Sale. ████████████████████████████████████████████████████████ *Compare* Compl. ¶¶ 185-188 ("Unjust Enrichment") with Ex. 5 ████████ ████████.

Sixth Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing). This claim expressly alleges the breach of an implied covenant purportedly in the ████. Compl. ¶¶ 190-91. It also is based on tokens acquired in connection with the ATA and Terms of Sale as well as on allegations of "blacklisting and reallocation functions" that touch on matters in the ████ and TUA. ████████████████████████████████████████████████████████ *Compare* Compl. ¶¶ 189-92 ("Breach of Implied Covenant of Good Faith and Fair Dealing") with Ex. 5 ████████████████.

Seventh Cause of Action (Declaratory Relief). This claim seeks a declaratory judgment expressly relating to the ████, seeks relief based upon tokens acquired in connection with the ATA and Terms of Sale, and is based upon token freezing allegations. Compl. ¶¶ 194-95. It therefore touches matters in all four of the arbitration agreements (and overlaps substantially with the overlapping causes of action included in Plaintiffs' Draft Arbitration Demand).

Additionally, under Delaware substantive contract law,[5] "where a new, later contract between the parties covers the same subject matter as an earlier contract, the new contract supersedes and controls that issue, if the two agreements conflict." *REM OA Holdings, LLC v. N. Gold Holdings, LLC*, 2023 WL 6884845, at *3 (Del. Ch. Oct. 19, 2023); *see also Country Life Homes,*

---

[5] ████████████████████████████████ Ex. 3 § 7. And to determine whether the parties agreed to arbitrate, "courts apply state-law principles of contract formation and interpretation." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Inc. v. Shaffer*, 2007 WL 333075, at *5 (Del. Ch. Jan. 31, 2007) ("The new contract, as a general matter, will control over the old contract with respect to the same subject matter to the extent that the new contract is inconsistent with the old contract . . .").  The TPA and ▮▮▮ both concern the same subject matter: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮.  As a result, as to the dispute resolution provisions, which conflict, the ▮▮▮ controls.  *See Suski*, 55 F.4th at 1231 (affirming district court finding that later-in-time agreement between the parties controlled with respect to whether the parties agreed to arbitrate); *see also Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060, 1063 (S.D. Cal. 1999) (finding that subsequent agreement containing arbitration provision supersedes previous agreements); *Verint Americas Inc. v. Terminix Consumer Servs., LLC*, 817 F. Supp. 3d 1338, 1343-44 (N.D. Ga. 2025) (compelling arbitration in part because "this litigation likely cannot be resolved without reference" to the agreements with arbitration provisions, which "strengthen[s] the connection between [plaintiff's] claims and the parties' agreement").

Finally, as explained above (Section II.E, *supra*), the Anthem Parties' pre-litigation conduct confirms that they understood their claims were subject to AAA arbitration.  This is reason enough to compel arbitration.  *See Gestetner Holdings, PLC v. Nashua Corp.*, 784 F. Supp. 78, 82-83 n.4 (S.D.N.Y. 1992) (rejecting arguments against arbitration because they were "undercut by Nashua's own behavior prior to litigation"); *Colorado-Arkansas-Texas Distributing, LLC v. Am. Eagle Food Prods.*, 525 F. Supp.2d 428, 435 (S.D.N.Y. 2007) (finding agreement to arbitrate when party's "actions, prior to the filing of this suit, were consistent with an expectation that it had agreed to arbitration"); *Thomson v. Hodgson*, 150 F.4th 1097, 1105 (9th Cir. 2025) ("[A] party's predispute, postcontracting conduct is powerful evidence of that party's intent and understanding of the contract at the time it entered into the agreement."); *Verint Americas*, 817 F. Supp. 3d at 1344-45 (finding party's pre-litigation citations to contract containing arbitration provision relevant to issue of arbitrability and rejecting attempt to avoid agreement's arbitration provision by re-framing allegations in the complaint without reference to the agreement); *id.* ("[Plaintiff's] prior recognition that the parties' agreement governs this dispute supports the Court's finding that this dispute arises out of or relates to the agreement.").

### B.    Any Remaining Portion of This Case Should Be Stayed Pending Arbitration

Notably, one Plaintiff (Sun), is not a party to any relevant agreement containing an arbitration clause.  As explained in World Liberty's contemporaneously filed Motion to Dismiss, Sun should be dismissed from this litigation.  But if he is not, this case will proceed with him as the sole remaining Plaintiff once the Anthem Parties are compelled to arbitration.

Under these circumstances, the Court can—and should—stay the remaining case pending completion of the arbitration.  Such a stay is authorized by the FAA.  9 U.S.C. § 3 (if court finds a dispute arbitrable, the court "shall . . . stay the trial of the action until such arbitration has been had").  "In cases where the FAA is implicated, public policy and the orderly course of justice favor staying a civil action that may implicate compelled arbitration." *Zamudio v. Aerotek, Inc*, 2024 WL 863715, at *3 (E.D. Cal. Feb. 28, 2024).  In determining whether to stay non-arbitrable claims pending arbitration, "a court considers economy and efficiency, the similarity of the issues of law and fact to those that will be considered during arbitration, and the potential for inconsistent findings absent a stay." *Trinchitella v. Am. Realty Partners, LLC*, 2016 WL 4041319, at *13 (E.D. Cal. July 27, 2016).

Here, all factors weigh in favor of staying the remaining case (if any) pending arbitration. Allowing Sun to proceed in court while the Anthem Parties are arbitrating their claims would create duplicative work across two venues for identical claims, causing waste of the Court's, the arbitrator's, and the parties' time and resources.  While Sun's claims should be dismissed, if they are not, the issues for Sun's claims and the Anthem Parties' claims are not just similar—they are identical.  Sun brings exactly the same claims as the Anthem Parties, and litigating his claims will involve the exact same facts and law.  Because of that, there would be a high risk of inconsistent findings if this case were not stayed.  The Court and the arbitrator would be asked to resolve the exact same factual and legal issues, and if those rulings conflict, it will raise weighty issues.  *See Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002) (staying case pending arbitration when some parties were not signatories to contracts with arbitration provision, including because "a failure to stay the action may lead to inconsistent findings which will hinder the pursuit of judicial efficiency"); *see also In re Samsung Galaxy Smartphone Marketing & Sales Practices*

-14-                                    Civil Action No. 3:26-cv-3360-JD

*Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (staying case pending arbitration when only some plaintiffs are compelled to arbitration); *Marchand v. Northrup Grumman Corp.*, 2017 WL 2633132, at *13 (N.D. Cal. June 19, 2017) (staying case pending arbitration when only some claims are subject to arbitration); *Mohebbi v. Khazen*, 2014 WL 6845477, at *12 (N.D. Cal. Dec. 4, 2014) (staying remaining non-arbitrable claims pending arbitration).

## V.    Conclusion

For the foregoing reasons, the Court should grant Defendant's Motion to Compel Arbitration, compel Blue Anthem Limited and Black Anthem Limited to arbitrate their claims, and stay any claims brought by Yuchen (Justin) Sun if those claims are not dismissed.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

DATED:  June 2, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By        */s/ James D. Judah*
       James D. Judah (Bar No. 257112)
       jamesjudah@quinnemanuel.com
       50 California Street, 22nd Floor
       San Francisco, CA 94111
       Tel:    (415) 875-6600
       Fax:    (415) 875-6700

       William A. Burck (admitted *pro hac vice*)
       williamburck@quinnemanuel.com
       555 13th Street NW, Suite 600
       Washington, D.C. 20004
       Tel:    (202) 538-8000
       Fax:    (202) 538-8100

       Rajat Rana (admitted *pro hac vice*)
       Sam Cleveland (admitted *pro hac vice*)
       rajatrana@quinnemanuel.com
       samcleveland@quinnemanuel.com
       295 Fifth Avenue
       New York, NY 10016
       Tel:    (212) 849-7000
       Fax:    (212) 849-7100

       *Attorneys for Defendant World Liberty Financial LLC*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

**Certificate of Service**

I hereby certify that on June 2, 2026, I filed a true and correct copy of the foregoing document with the Court's CM/ECF system, which sent a notification of such filing to all parties who have appeared in this matter.

DATED: June 2, 2026

By: */s/ James D. Judah*
       James D. Judah

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION