# EXHIBIT 4

# Terms of Service

Updated on: 2025-08-20

**EXCEPT AS SET FORTH HEREIN, ANY AND ALL DISPUTES BETWEEN YOU AND THE COMPANY SHALL BE RESOLVED THROUGH BINDING INDIVIDUAL ARBITRATION IN ACCORDANCE WITH SECTION 5 OF THESE TERMS. BY AGREEING TO THESE TERMS, YOU WAIVE YOUR RIGHTS TO RESOLVE DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND TO PROCEED AGAINST THE COMPANY ON A CLASS OR REPRESENTATIVE BASIS.**

These Terms of Service ("**Terms of Service**" or "**Terms**") apply to your access to and use of www.worldlibertyfinancial.com ("**Website**"). "**We**," "**us**," and "**our**" and "**Company**" refer to World Liberty Financial, Inc., and its affiliates and subsidiaries. They also apply, without limitation, to the issuance, redemption purchase and sale of USD1 by BitGo (defined below), including those subject to the terms of service and customer agreements between you and the provider of such third-party services.

Please note that these Terms contain an arbitration clause and class action waiver. By agreeing to these Terms, you agree to resolve all disputes, except as otherwise set forth in Section 5, through binding individual arbitration, which means that you waive any right to have the dispute decided by a judge or jury, and you waive any right to participate in a class action.

## 1. Changes to these Terms of Service

Company may revise and update these Terms of Service without notice; all changes are effective immediately upon posting on the Website. If you do not agree to the revised terms, your recourse is to stop using the Website.

## 2. Privacy

Our privacy policy can be found at https://worldlibertyfinancial.com/privacy.

## 3. Prohibited activities

You agree that you will not, and you will not attempt to:

1. Decompile, disassemble, and/or reverse engineer any portion of the Website, including any included or linked-to third-party content or services;
2. Impersonate any person or entity, or otherwise misrepresent your affiliation with a person or entity;
3. Distribute or disseminate viruses or other harmful computer code through the Website or through any third-party content or service;

4. Use the Website to send or facilitate the sending of mass unsolicited data packets, SMS texts, e-mails, or other traffic, such as distributed denial of service (DDoS) or "spam" communication efforts;

5. Use or access the Website for the benefit of an entity or individual subject to economic sanctions in the United States, and other appropriate jurisdictions;

6. Use the Website to violate any local, state, or national law;

7. Use the Website in any way that harms Company, its service providers, suppliers, affiliates, or any other user of the Website;

8. Harvest any information from the Website;

9. Take any action that, at Company's sole discretion, is deemed to impose an unreasonable or disproportionately large load on Company's infrastructure or otherwise make excessive traffic demands of the Website;

10. Conduct automated queries or other automated activity with the purpose of obtaining information from the Website;

11. Attempt to gain unauthorized access to the Website, user accounts, computer systems, or networks connected to the Website; or

12. Use any device, software or routine that interferes with the proper working of the Website, or otherwise attempt to interfere with the proper working of the Website.

**4. Third party content and websites**

1. Company's Website may provide access to outside content and may include third-party applications, products, or services. These include without limitation for the issuance, redemption purchase or sale of USD1 by BitGo Trust Company, Inc. and/or by BitGo Technologies LLC ("**BitGo**"). You understand that in order to use certain third-party applications, products, or services, the third-party service provider may require you to be onboarded and to agree to their terms of service in order to use the applications, products, or services they provide.

2. You acknowledge that the Company or affiliated entities of the Company may receive compensation for providing access to outside content and applications, products or services, from any such third party or otherwise (including without limitation earnings on the reserves backing USD1).

3. Your use of third-party content and services is subject to all terms, conditions, practices, and policies set forth by those services and are at your own risk. Company makes no representations or warranties with respect to third-party applications, products, or services, or how they operate, including but not limited to operations involving the privacy, security, exchange, and transmission of your data. Company does not endorse nor hold responsibility for any information, practices, or policies of third-party content and services.

4. You acknowledge and agree that Company is not responsible for the quality, integrity, safety, accuracy, availability, reliability, or legality of any such third-party websites, or resources contained therein, and that Company is not responsible or liable for any content, advertising, products, or other material available from such third-party content or services. Further, you acknowledge that Company shall not be responsible or liable, directly or indirectly, for any damage, harm, injury, or loss of any kind caused or alleged to be caused by, or in connection with, the use of or reliance upon any content, material, or services available through any third-party content or services.

5. Third party applications or content may be accessed through the website. Third party applications are not offered, managed, or controlled in any way by World Liberty Financial, Inc. or affiliated entities. By using third party applications through this website, you expressly agree that you have read, understand, and accept all the applicable terms, conditions and risks that may apply to your use of those third party applications. If you authorize a third-party application to connect to your wallet and take actions on your behalf, you assume all risks associated with those connections and actions and you are ultimately responsible to us for those connections and actions.

6. You also agree that you will not hold us responsible for, and will indemnify us against any liability arising out of or related to any act or omission of any third-party using your account or wallet credentials whether a developer or otherwise.

**5. Dispute Resolution; Arbitration**

**PLEASE READ THIS SECTION CAREFULLY: IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT AND TO HAVE A JURY HEAR YOUR CLAIMS. IT CONTAINS PROCEDURES FOR MANDATORY BINDING ARBITRATION AND A CLASS ACTION WAIVER.**

**Binding Individual Arbitration.** Except for any disputes, claims, controversies, suits, actions, causes of action, demands or proceedings (collectively, "**Disputes**") in which either party seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, including, without limitation, copyrights, trademarks, trade names, logos, trade secrets or patents, you and the Company (i) waive your and the Company's respective rights to have any and all Disputes between the parties resolved in a court, and (ii) waive your and the Company's respective rights to a jury trial. Instead, ANY AND ALL DISPUTES BETWEEN YOU AND THE COMPANY MUST BE RESOLVED THROUGH BINDING ARBITRATION (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court). Disputes subject to this provision include, without limitation, those arising from or related to (a) these Terms or the breach, termination or invalidity thereof; (b) any and all products or services sold, distributed or provided by the Company; and (c) any and all interactions or transactions between the parties, whether heretofore or hereafter arising.

**No Class Arbitrations, Class Actions, or Representative or Collective Actions.** Any Dispute arising out of or related to these Terms is personal to you and the Company and will be resolved

solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative or collective proceeding. There will be no class arbitration or arbitration in which an individual attempts to resolve a Dispute as a representative of another individual or group of individuals. Further, a Dispute cannot be brought as a class or other type of representative action, whether within or outside of arbitration, or on behalf of any other individual or group of individuals.

**Informal Dispute Resolution.** The following must occur prior to and as a condition precedent to commencing a formal arbitration under these Terms. Each party will notify the other party in writing of any Dispute within thirty (30) days of the date it arises or becomes known, so that the parties can attempt in good faith to resolve the Dispute informally. Notice to the Company shall be sent by e-mail to the Company at info@worldlibertyfinancial.com. Notice to you shall be by email to the then-current email address registered with the Company. Your notice must include (i) your name, postal address, email address and telephone number, (ii) a description in reasonable detail of the nature or basis of the Dispute, (iii) the date of any purchase, transaction or interaction at issue, as well as relevant documentation or screen captures if available, and (iv) the specific relief that you are seeking. For a period of sixty (60) days from the date of receipt of notice by the other party, the parties agree to negotiate in good faith and in a timely manner about the Dispute, including through a minimum of one (1) telephonic dispute resolution conference. Dispute resolution conferences shall be individualized such that multiple individuals initiating claims cannot participate in the same conference, absent mutual agreement by the parties. If either party is represented by counsel, that party's counsel may participate in the dispute resolution conference, but the party also must appear at and participate in the conference.

The parties agree that any relevant limitations periods and arbitral fee(s) or other deadlines will be tolled during the sixty (60) day informal dispute resolution period. After this sixty (60) day period, the relevant limitations periods and filing fee(s) or deadlines are no longer tolled until filing is effectuated under this Section. If you and the Company cannot agree how to resolve the Dispute within the informal dispute resolution period and after participating in the mandatory dispute resolution conference, then either you or the Company may, as appropriate and in accordance with this Section, commence an arbitration proceeding or, to the extent specifically provided for in this Section, file a claim in court.

**Arbitration Process.** Except as otherwise provided in this Section for disputes concerning the use of intellectual property and those eligible to be heard in small claims court, any and all Disputes between the parties, including without limitation those arising out of or relating to these Terms, or the breach, termination or invalidity thereof, shall be resolved through binding arbitration before the American Arbitration Association ("**AAA**") under its applicable rules and procedures including, where applicable, its Commercial Arbitration Rules, Consumer Arbitration Rules, and Mass Arbitration Supplementary Rules and their attendant procedures and fee schedules. You can review the AAA's rules and procedures at www.adr.org/rules, or you can call the AAA at 1-800-778-7879. You or the Company may initiate arbitration by written notice and compliance with all applicable AAA filing requirements; you may serve your individual demands on the Company by mail at:

407 Ayre St. #1358
Wilmington, Delaware 19804
Email: info@worldlibertyfinancial.com

Absent agreement otherwise by both parties, the place of arbitration shall be Miami, Florida. The language of the arbitration shall be English. The arbitrator(s) shall have experience adjudicating matters involving Internet technology, software applications, financial transactions and, ideally, blockchain technology. The arbitrator will apply substantive law consistent with the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*, "**FAA**") and applicable statutes of limitations. The arbitrator's award of damages must be consistent with the terms of the "Limitation of Liability" subsection of these Terms as to the types and amounts of damages for which a party may be held liable. IF WE HAVE A DISPUTE ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS ARBITRATION PROVISION, INCLUDING WITHOUT LIMITATION WHETHER IT IS VALID, CAN BE ENFORCED, OR APPLIES TO OUR DISPUTE, THAT DISPUTE WILL BE RESOLVED IN ARBITRATION.

Except as may be required by law, neither a party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. To the extent permitted by applicable law, the parties shall each be responsible for their own attorneys' fees and costs associated with the arbitration.

**Mass Arbitrations.** In the event that 25 or more individual claims are filed by the same or coordinated counsel or are otherwise coordinated, counsel for the claimants and counsel for the respondent shall each select five (5) cases (per side) to proceed in individual arbitral proceedings as part of a batching process. Any remaining claims that have complied with the procedures in this Section shall not be filed or deemed filed in arbitration, nor shall any arbitration fees be assessed in connection with those claims, until they are selected to be filed as part of this batching process. At the outset of disputes under this provision, you and the Company agree to delegate to a Process Arbitrator all matters listed as within the scope of a Process Arbitrator's authority under the AAA Mass Arbitration Supplementary Rules, as well as disagreements concerning the validity, enforceability, and applicability of these terms, and any other matters that the parties mutually agree to delegate.

During the batching process, a single arbitrator shall preside over each batch of cases. After decisions have been rendered in the first ten (10) cases, the Company and all claimants shall engage in a global mediation in an attempt to resolve the remaining cases with the benefit of the decisions in the first batch of cases. If the parties are unable to resolve the remaining cases after the mediation, each side shall select another ten (10) cases (per side) to proceed to individual arbitral proceedings as part of a second batching process. The parties may, but are not required to, agree in writing to modify the number of cases to be included at each stage of the batching process. After decisions have been rendered in this second batch of cases, the Company and all claimants shall engage in a second global mediation in an attempt to resolve the remaining cases with the benefit of the decisions in the first two (2) batches of cases. If the parties have not resolved the remaining disputes at the close of the second global mediation, the Company or any individual claimant(s) whose claim has not been adjudicated may elect to opt out of arbitration by providing notice to the

other party, and if the claimant or the Company wishes to proceed with the claim they may file an individual (non-class, non-representative) action in court. If the Company or any claimant(s) do not opt out, those remaining claims will proceed in arbitration in continued batches of one-hundred (100) claimants per batch (to the extent there are fewer than one-hundred (100) claimants outstanding, a final batch will consist of the remaining claimants). This batching process shall in no way be interpreted as authorizing class or representative arbitration or litigation of any kind. In order to increase the efficiency of the administration and resolution of arbitrations, and if consistent with the relevant rules and procedures, the arbitral tribunal shall: (i) designate a single arbitrator for each batch; (ii) provide for a single filing fee due per side per batch; and (iii) allow joint conferences and joint hearings, and such other coordinated procedures as the arbitrator deems appropriate. The applicable limitations period(s) and filing fee deadlines shall be tolled for each claim subject to this Section from the time that the arbitral filing requirements are satisfied with respect to that claim. A court shall have authority to enforce these mass arbitration provisions and, if necessary, to enjoin a court or arbitral filing in violation thereof.

**Severability of Dispute Resolution; Arbitration.** The agreement to arbitrate contained in this Section shall continue in full force and effect despite the expiration or termination of these or other related terms. If any term, clause or provision of this Section is held invalid or unenforceable, it will be held to the minimum extent required by law, and all other terms, clauses and provisions of this Section will remain valid and enforceable. Further, the waivers set forth in Section are severable from the other provisions of these Terms and will remain valid and enforceable, except as prohibited by applicable law.

**6. Governing Law and Venue**

This Agreement, and all questions concerning the construction, validity, enforcement and interpretation thereof, will be governed by and construed and enforced in accordance with the laws of the State of Delaware, without regard to conflict of law rules or principles (whether of Delaware or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. The arbitration agreement in these Terms is governed by the FAA, including its procedural provisions, in all respects. State arbitration laws do not govern in any respect. Further, you and the Company each agree that the Terms evidence a transaction involving interstate commerce, and will be governed by and construed in accordance with federal law to the fullest extent possible. Any Dispute between the parties arising out of or relating to these Terms that is not subject to arbitration or cannot be heard in small claims court will be resolved and filed only in the courts of the State of Florida. You hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of such courts over any suit, action or proceeding arising out of these Terms.

**7. Severability**

If any term, clause, or provision of these Terms is held to be illegal, invalid, void, or unenforceable (in whole or in part), then such term, clause, or provision shall be severable from these Terms without affecting the validity or enforceability of any remaining part of that term, clause, or provision, or any other term, clause, or provision in these Terms, which will remain in full force and effect. Any invalid or unenforceable provisions will be interpreted to affect the intent of the original provisions. If such construction is not possible, the invalid or unenforceable provision will be severed from these Terms, but the rest of these Terms will remain in full force and effect.

**8. Miscellaneous**

These Terms constitute the entire agreement between you and us relating to your use, acquisition and/or holding of Tokens. We may make changes to these Terms from time to time as reasonably required to comply with applicable law or regulation. If we make changes, we will post the amended Terms at www.worldlibertyfinancial.com and include the date of the update. We may also attempt to notify you through other communications channels. The amended Terms will be effective immediately. We may assign our rights and obligations under these Terms. Our failure to exercise or enforce any right or provision of these Terms will not operate as a waiver of such right or provision. We will not be liable for any delay or failure to perform any obligation under these Terms where the delay or failure results from any cause beyond our reasonable control. Using, acquiring or holding Tokens does not create any form of partnership, joint venture or any other similar relationship between you and us. Except as otherwise provided in herein, these Terms are intended solely for the benefit of you and us and are not intended to confer third-party beneficiary rights upon any other person or entity. You agree and acknowledge that all agreements, notices, disclosures, and other communications that we provide to you, including these Terms, will be provided in electronic form.

**9. Disclaimer of warranties**

YOU EXPRESSLY AGREE THAT USE OF THE WEBSITE IS AT YOUR SOLE RISK. THE WEBSITE IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS ONLY. THE COMPANY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR USE OR PURPOSE, NON-INFRINGEMENT, TITLE, OPERABILITY, CONDITION, QUIET ENJOYMENT, VALUE, ACCURACY OF DATA, AND SYSTEM INTEGRATION.

**10. Limitations on liability**

TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, IN NO EVENT WILL THE COMPANY OR ANY OF ITS OFFICERS, EMPLOYEES, PARENTS, SUBSIDIARIES, AFFILIATES, AGENTS, OR LICENSORS BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, ACTUAL, TREBLE, PUNITIVE, AND/OR EXEMPLARY DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, REVENUES, GOODWILL, USE OR DATA, SERVICE INTERRUPTION, COMPUTER DAMAGE OR SYSTEM FAILURE, COST OF SUBSTITUTE PRODUCTS OR SERVICES, BODILY INJURY, OR DEATH OR OTHER INTANGIBLE LOSSES) ARISING OUT OF OR RELATED IN ANY WAY TO YOUR USE OF THE WEBSITE, REGARDLESS OF WHETHER SUCH DAMAGES ARE UNDER THEORY OF BREACH OF CONTRACT, TORT, NEGLIGENCE, CONTRACT, WARRANTY, STATUTE, STRICT LIABILITY, OR OTHERWISE, EVEN IF WE OR THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NOTWITHSTANDING ANYTHING CONTRARY CONTAINED HEREIN, THE COMPANY'S LIABILITY TO YOU ARISING FROM THESE TERMS, THE USE OF OR INABILITY TO USE THE WEBSITE, WILL AT ALL TIMES BE LIMITED TO THE GREATER OF $5,000 USD OR THE AMOUNT PAID BY YOU TO THE COMPANY FOR ACCESS TO AND USE OF THE WEBSITE.

YOU RELEASE THE COMPANY AND HOLD IT AND ITS THIRD-PARTY TECHNOLOGY PLATFORM PROVIDER, SUPPLIERS, AND PROVIDERS, AND ANY THIRD-PARTY WHO PROMOTES THE WEBSITE OR PROVIDES YOU WITH A LINK TO THE WEBSITE, HARMLESS FROM ANY AND ALL CLAIMS, DEMANDS, AND DAMAGES OF EVERY KIND AND NATURE AS CITED ABOVE, ARISING OUT OF OR IN ANY WAY CONNECTED WITH YOUR USE OF THE WEBSITE. YOU WAIVE THE PROVISION OF ANY STATE OR LOCAL LAW LIMITING OR PROHIBITING A GENERAL RELEASE.

**12. Additional terms**

1. The failure of Company to enforce any right or provision of these Terms of Service does not constitute a waiver of future enforcement of any right or provision. If, for any reason, a court of competent jurisdiction or an arbitrator finds any portion of a provision of these Terms of Service unenforceable or invalid, the remaining portion of that provision will otherwise be enforced to the maximum extent permissible. All other provisions of these Terms of Service will remain in full force and effect.

2. The Terms, and any rights or obligations under them, are not assignable, transferable or sublicensable by you except with Company's prior written consent, but may be assigned or transferred by us without restriction. Any attempted assignment by you without Company's prior written consent shall violate these Terms and be void.

3. You agree that no joint venture, partnership, employment, agency, special or fiduciary relationship exists between you and Company as a result of these Terms or your use of the Website.