# EXHIBIT B

TOKEN UNLOCK AGREEMENT ("UNLOCK AGREEMENT")

Governance Participant:

"[WALLET ADDRESS]" ("You," "Your," or "Governance Participant")

Quantity of Tokens:

"[TOKEN AMOUNT]" (the "Allocation")

Token Unlock-Up Terms:

Twenty percent (20%) of WLFI Tokens purchased by participants in the $0.015 and $0.05 rounds, approximately between October 14, 2024 and March 14, 2025, will be allocated for unlocking. The remaining eighty percent (80%) of WLFI Tokens will be unlocked according to terms decided by the community through a governance vote, giving holders the ability to shape how these tokens are unlocked moving forward. Governance Participant acknowledges that these terms are subject to change, including the potential adoption of new unlocking approaches or adjustments to existing ones, based on community decisions or other applicable requirements. ("Unlock")

Governance Participant acquired and holds non-transferable WLFI tokens (the "Tokens") issued by World Liberty Financial, Inc. (the "Company") pursuant to the terms of the WLFI token sale terms and conditions, and/or purchase agreement entered into by Governance Participant ("Purchase Agreement"). It is a condition to the unlocking the Governance Participant's Tokens, that Governance Participant enter into this Unlock Agreement.

If Governance Participant is uncertain if it can make any of the representations, acknowledgements and agreements below, do not enter into this Unlock Agreement. In such case, please reach out to WLFI at info@worldlibertyfinancial.com with any questions to see if any items can be modified or there are alternative means of satisfying the eligibility requirements for participation in the Unlock.

The Governance Participant hereby represents, acknowledges and agrees that:

1. Ownership of Wallet.

Governance Participant is the sole owner of the wallet that initially received the Tokens, and was the sole owner at the time of initial acquisition of the Tokens, and has not transferred the beneficial interest of the wallet of Tokens to any person. Governance Participant is solely responsible for implementing reasonable and appropriate measures designed to secure access to (i) any device connected with the email address associated with its account, (ii) private keys required to access any wallet or relevant Ethereum address or its Tokens, and (iii) its username, password and any other login or identifying credentials. If Governance Participant's private

key(s) or other access credentials are lost, Governance Participant may lose access to their Tokens. If Governance Participant's private key is compromised, Governance Participant may lose access to their Tokens. Even if the Company refers you to third-party wallet solutions, the Company is not responsible for the adequacy of their services or software, or for any such losses.

2. Use of Tokens.

Governance Participant acquired the Tokens with a full understanding that the Tokens are non-transferable, are provided solely for participation in governance and do not represent any ownership right or stake, share or security or equivalent rights, or any right to receive any distribution, revenue share, additional tokens, intellectual property rights or any other form of participation in or relating to the World Liberty Financial Protocol (the "WLF Protocol"), and/or the Company and its corporate affiliates, other than rights to use for governance relating to the WLF Protocol, subject to limitations and conditions pursuant to the Terms of Use, Privacy Policy, and other applicable terms and policies available at worldlibertyfinancial.com (collectively, the "WLF Protocol Terms and Policies").

Governance Participant agreed and acknowledged that the sole utility of holding $WLFI is governance, and not for any investment. The Governance Participant further represented that it was acquiring the Tokens for the exclusive purpose of using the Tokens for Governance Participant's own account, not as a nominee or agent, and not with a view to resale, speculation, or investment, and Governance Participant had no present intention of transferring, selling, granting any participation in, or otherwise distributing the same and is not otherwise acting as an underwriter, dealer or other person participating in a distribution of Tokens.

3. Compliance with Law and Change of Circumstances.

If Governance Participant subsequently elects to transfer or resell any unlocked Token notwithstanding the foregoing, it is solely responsible for determining whether any such resale complies with applicable law and Governance Participant should not do so unless done in compliance with applicable law. Governance Participant also represents that any such resale would be conducted on the basis of a change of circumstances for Governance Participant since the original representation was made under the Purchase Agreement.

4. No Prior Purported Transfer.

The Tokens were sold to Governance Participant as non-transferable, and it is a condition to the Unlock that no Transfer (as defined below) has occurred prior to this Unlock Agreement. Governance Participant represents, warrants and covenants that no Transfer of Tokens, ownership of any wallet holding Tokens or any right to receive Tokens, has occurred prior to the execution of this Unlock Agreement. As used in this Unlock Agreement, and specifically in reference to the Transfer Restrictions, "Transfer" refers to any of the following:

(a) the direct or indirect sale, transfer, exchange, assignment, delegation, pledge, charge, lending, hypothecation, creation of a swap or other derivative with respect to, or transfer or disposition of, this Unlock Agreement, the right to receive Tokens subject to the Purchase Agreement or any other agreement, any Tokens or any interest, right, power, claim, obligation or liability relating to the Tokens;

(b) the direct or indirect sale, transfer, exchange, assignment, delegation, pledge, charge, lending, hypothecation, creation of a swap or other derivative with respect to, or transfer or disposition of, the Tokens, this Unlock Agreement or the Purchase Agreement or any interest, right, power, claim, obligation or liability relating to this Unlock Agreement or the Purchase Agreement;

(c) staking or depositing such Tokens in or otherwise placing such Tokens under the control, custody or escrow of a protocol or smart contract as a result of which such Tokens will be made available, even temporarily, for any transaction contemplated by the preceding clause (a) or clause (b) or any functionally similar decentralized finance transaction, including transactions commonly referred to in the decentralized finance industry as "liquidity mining," "liquidity providing" (aka "LP'ing"), "farming" or "market making";

(d) selling, publishing, sharing, disclosing, failing to properly secure or otherwise directly or indirectly making available to another person or the public the private key of any address, account or wallet used to hold any Tokens; or

(e) entering into or becoming subject to a legal order from a court of competent jurisdiction, contract, agreement or understanding, written or oral, contemplating or relating to any of the transactions referred to in the preceding clause (a), clause (b), clause (c) or clause (d).

Without limiting the generality of the foregoing, "Transfer" of Tokens shall also include entering into any short position, any "put equivalent position," "call equivalent position," option or contract to sell or purchase, forward contract (whether deliverable or non-deliverable, prepaid or postpaid, variable or fixed), cash-for-difference contract, or swap or other arrangement that directly or indirectly transfers to another, in whole or in part, any of the economic or other consequences of ownership or use of such Tokens or any interest, right, claim, obligation or liability relating to such Tokens (or, this Unlock Agreement or the Purchase Agreement), in each case, whether any such transaction is to be settled by delivery of such Tokens, other virtual currencies or virtual mediums of exchange, in cash, or otherwise.

5. Prohibited Participants.

Governance Participant is not (i) a citizen or resident of a geographic area in which use of cryptographic tokens is prohibited by applicable law, decree, regulation, treaty, or administrative act, (ii) a citizen or resident of, or located in, a geographic area that is subject to U.S. or other applicable sanctions or embargoes, (iii) an individual, or an individual employed by or associated with an entity, that is identified on the U.S. Department of Commerce's Denied

Persons or Entity List, the U.S. Department of Treasury's Specially Designated Nationals or Blocked Persons Lists, the U.S. Department of State's Debarred Parties List or the sanctions lists adopted by the United Nations and the European Union to such extent such sanctions are extended by the UK Government to its Overseas Territories, as such lists may be amended from time to time. The Company may, in its sole discretion, reject or approve any Governance Participant and will, in its sole discretion, determine the jurisdictions where potential acquisitions may be made.

6. Screening Acknowledgement.

The Company reserves the right to conduct screening, background, compliance, and other procedures on any Governance Participant or wallet address at any time, including screenings for applicable sanctions, anti-money laundering, and other legal or regulatory watchlists. The Company may, in its sole discretion, decline to unlock, restrict access to, or freeze any wallet if it determines that such action is necessary to comply with applicable law, enforce its policies, or protect the integrity of the WLF Protocol.

7. Tax Compliance.

Governance Participant understands that Governance Participant bears sole responsibility for any taxes as a result of the matters and transactions pertaining to the Tokens, and any future acquisition, ownership, use, sale or other disposition of Tokens held by Governance Participant. Governance Participant will comply with any applicable tax obligations in its jurisdiction arising from Governance Participant's acquisition or use of the Tokens. Governance Participant understands that Governance Participant should consult Governance Participant's own tax advisor regarding implications of the treatment of the Tokens under applicable tax Law and is relying solely on Governance Participant's own tax advisor with respect to the tax implications of the acquisition, ownership and disposition of the Tokens.

8. Acknowledgment and Agreement with Terms.

Governance Participant has carefully reviewed, acknowledges and agrees to be bound by the WLF Protocol Terms and Policies. Governance Participant agrees and acknowledges that any dispute arising out of or related to this Receipt Agreement shall be subject to Section 5 "Dispute Resolution" from the Terms of Service.

9. Full Satisfaction of Obligations.

Unlock of the Allocation by the Governance Participant satisfies any and all rights that Governance Participant has to receive, and obligations that the Company has to provide, Tokens to Governance Participant under any agreement, and Governance Participant has no other claim to Tokens or otherwise from the Company or any of its affiliates. Any claims or obligations Governance Participant has against the Company or its affiliates are hereby

terminated in exchange for the right to receive the Unlock of their Allocation pursuant to this Unlock Agreement.

10. Notice.

Governance Participant agrees and acknowledges that this Unlock Agreement constitutes adequate notice and with respect to Governance Participant's notice rights (if any) pursuant to any Purchase Agreement, or otherwise, to the extent that any such notice or consent is required, and herby waives any such notice or approval rights.

11. Bring-Down of Representations and Warranties.

Except as expressly provided otherwise in this Unlock Agreement, Governance Participant acknowledges that the representations and warranties of Governance Participant set forth in the Purchase Agreement remain true and correct in all respects as if made as of the date of this Unlock Agreement.