**CAHILL GORDON & REINDEL LLP**
SAMSON A. ENZER (admitted *pro hac vice*)
senzer@cahill.com
HERBERT S. WASHER (admitted *pro hac vice*)
hwasher@cahill.com
EDWARD N. MOSS (admitted *pro hac vice*)
emoss@cahill.com
JOHN S. MACGREGOR - # 304330
jmacgregor@cahill.com
32 Old Slip
New York, NY 10005
Telephone:     (212) 701-3000
Facsimile:     (212) 269-5420

CAHILL GORDON & REINDEL LLP
GREGORY STRONG (admitted *pro hac vice*)
gstrong@cahill.com
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Telephone:     (302) 884-0001

Attorneys for Plaintiffs YUCHEN "JUSTIN" SUN,
BLUE ANTHEM LIMITED, and BLACK
ANTHEM LIMITED

**KEKER, VAN NEST & PETERS LLP**
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
GAYATRI V. PARANJAPE - # 345933
gparanjape@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUCHEN "JUSTIN" SUN; BLUE ANTHEM LIMITED; and BLACK ANTHEM LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.), <br><br> Defendant. | Case No. 26 Civ. 3360 <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE** <br><br> Judge: Hon. James Donato <br><br> Date Filed:  April 21, 2026 <br><br> Trial Date:  None set |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...............................................................................................1

LEGAL STANDARD ...........................................................................................................2

ARGUMENT .........................................................................................................................2

     I.      The TPA's Broad and Exclusive Forum-Selection Clause Governs This Dispute. ............................................................................................................2

     II.    Arbitration Clauses in Four Other Agreements Do Not Change the Result. .....5

          A.    The Parties' Other Agreements Do Not Modify or Supersede the TPA. .......................................................................................................5

          B.    World Liberty Has Waived Any Supposed Right to Arbitrate. .............7

     III.   The Other Four Agreements Are Unenforceable, Inapplicable, or Both. ..........9

     IV.   Plaintiffs' Draft ▇▇▇▇▇▇▇ Does Not Constitute a Waiver or Concession ..................................................................................................13

     V.    This Court Should Reject World Liberty's Procedural Maneuvering. ............14

          A.    This Court Must Decide Arbitrability in This Case............................14

          B.    Even if Some Claims Go to Arbitration, This Court Should Not Stay the Others. ........................................................................................15

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Ashall Homes Ltd.* v. *ROK Ent. Grp. Inc.*,
  992 A.2d 1239 (Del. Ch. 2010)............................................................................3, 4n

*Brennan* v. *Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ...................................................................................14

*Brown* v. *Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) .....................................................................................2

*California Crane School, Inc.* v. *Google LLC*,
  621 F. Supp. 3d 1024 (N.D. Cal. 2022) ......................................................................15

*Centene Corp.* v. *Accellion, Inc.*,
  2022 WL 898206 (Del. Ch. Mar. 28, 2022) ..................................................................5

*Coinbase, Inc.* v. *Suski*,
  602 U.S. 143 (2024).................................................................................................7, 14

*Connell* v. *ByteDance, Inc.*,
  2025 WL 1828472 (N.D. Cal. July 1, 2025)................................................................15

*Country Life Homes, Inc.* v. *Shaffer*,
  2007 WL 333075 (Del. Ch. Jan. 31, 2007) ...................................................................7

*Gile* v. *Dolgen Cal., LLC*,
  2022 WL 17248087 (9th Cir. Nov. 28, 2022)............................................................7, 9

*Granite Rock Co.* v. *Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010)......................................................................................................5

*Grumman Sys. Support Corp.* v. *Data Gen. Corp.*,
  125 F.R.D. 160 (N.D. Cal. 1988) ................................................................................8n

*Henry* v. *Phixios Holdings, Inc.*,
  2017 WL 2928034 (Del. Ch. July 10, 2017)...............................................................12

*Hoffman Const. Co. of Or.* v. *Active Erectors & Installers, Inc.*,
  969 F.2d 796 (9th Cir. 1992) ........................................................................................9

*IND Holding, Inc.* v. *ReachOut Tech. NE, Holdings, LLC*,
  2025 WL 2426683 (D. Del. Aug. 22, 2025) ..................................................................6

*Ingres Corp.* v. *CA, Inc.*,
  8 A.3d 1143 (Del. 2010) ...............................................................................................3

*Johnson* v. *Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ...................................................................................................6

*Joseph* v. *Amazon.com, Inc.*,
2013 WL 4806462 (N.D. Cal. Sept. 9, 2013) .......................................................................3n

*Keller* v. *Chegg, Inc.*,
2023 WL 5279649 (N.D. Cal. Aug. 15, 2023) ....................................................................11n

*King* v. *AxleHire, Inc.*,
2019 WL 1925493 (N.D. Cal. Apr. 30, 2019) .....................................................................11n

*Kuhk* v. *Playstudios Inc.*,
2024 WL 4529263 (W.D. Wash. Oct. 18, 2024) ...................................................................11

*Lucey* v. *FedEx Ground Package Sys., Inc.*,
305 F. App'x 875 (3d Cir. 2009) ..................................................................................... 10-11

*Maganallez* v. *Hilltop Lending Corp.*,
505 F. Supp. 2d 594 (N.D. Cal. 2007) ....................................................................................5

*Moyer* v. *Wells Fargo*,
2018 WL 4956822 (M.D. Pa. Sept. 27, 2018) ......................................................................10

*Murphy* v. *Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) .................................................................................................3

*Nagrampa* v. *MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ...............................................................................................13

*Norcia* v. *Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ..........................................................................................2, 11

*Obesity Rsch. Inst., LLC* v. *Fiber Rsch. Int'l, LLC*,
310 F. Supp. 3d 1089 (S.D. Cal. 2018).................................................................................11

*Openshaw* v. *FedEx Ground Package Sys., Inc.*,
731 F. Supp. 2d 987 (C.D. Cal. 2010) ..................................................................................14

*Oracle Am., Inc.* v. *Procore Techs., Inc.*,
2025 WL 1069892 (N.D. Cal. Apr. 9, 2025) .....................................................................5, 14

*Oracle Am., Inc.* v. *Procore Techs., Inc.*,
2025 WL 2223426 (N.D. Cal. Aug. 5, 2025) ........................................................................15

*Phoenix Can. Oil Co.* v. *Texaco Inc.*,
560 F. Supp. 1372 (D. Del. 1983)............................................................................................7

*Pochiro* v. *Prudential Ins. Co. of Am.*,
827 F.2d 1246 (9th Cir. 1987) .................................................................................................8

*Ponomarenko* v. *Shapiro*,
   287 F. Supp. 3d 816 (N.D. Cal. 2018) ...............................................................................6, 13

*PPG Indus., Inc.* v. *Webster Auto Parts, Inc.*,
   128 F.3d 103 (2d Cir. 1997)......................................................................................................9

*Ragab* v. *Howard*,
   2015 WL 6662960 (D. Colo. Nov. 2, 2015)..............................................................................6

*REM OA Holdings, LLC* v. *Northern Gold Holdings, LLC*,
   2023 WL 6884845 (Del. Ch. Oct. 19, 2023) ............................................................................6

*Reynaud* v. *Riverbed Tech., LLC*,
   2024 WL 3297069 (N.D. Cal. July 2, 2024)...........................................................................15

*SEIU Loc. 121RN* v. *Los Robles Reg'l Med. Ctr.*,
   976 F.3d 849 (9th Cir. 2020) ..................................................................................................14

*Sequoia Benefits & Ins. Servs.* v. *Costantini*,
   553 F. Supp. 3d 752 (N.D. Cal. 2021) ......................................................................................9

*Sifuentes* v. *Dropbox, Inc.*,
   2022 WL 2673080 (N.D. Cal. June 29, 2022) ........................................................................12

*Simula, Inc.* v. *Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ....................................................................................................6

*Snow* v. *Eventbrite, Inc.*,
   2020 WL 6135990 (N.D. Cal. Oct. 19, 2020)..........................................................................11

*SPay, Inc.* v. *Stack Media Inc.*,
   2021 WL 1109181 (Del. Ch. Mar. 23, 2021)............................................................................3

*Suski* v. *Coinbase, Inc.*,
   55 F.4th 1227 (9th Cir. 2022) ...................................................................................................7

*Thiele* v. *Merrill Lynch, Pierce, Fenner & Smith*,
   59 F. Supp. 2d 1060 (S.D. Cal. 1999).......................................................................................7

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practs., & Prods. Liab. Litig.*,
   838 F. Supp. 2d 967 (C.D. Cal. 2012).......................................................................................5

*United Commc'ns Hub, Inc.* v. *Qwest Commc'ns, Inc.*,
   46 F. App'x 412 (9th Cir. 2002) .............................................................................................15

*Verint Ams. Inc.* v. *Terminix Consumer Servs., LLC*,
   817 F. Supp. 3d 1338 (N.D. Ga. 2025) .....................................................................................7

*Wang* v. *Life Ins. Co. of the Southwest*,
   2019 WL 13201949 (N.D. Cal. Dec. 19, 2019) ..................................................................2, 11

-iv-
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE
Case No. 26-cv-3360

*Whirlpool Corp.* v. *Cabri*,
   2022 WL 1421126 (D. Del. May 5, 2022) ................................................................................7

*WWEC Holdings III Corp.* v. *Hackman*, ,
   2026 WL 819022 (Del. Ch. Mar. 25, 2026) ............................................................................4n

## PRELIMINARY STATEMENT[1]

This lawsuit—to hold World Liberty accountable for illegally seizing $WLFI tokens that Plaintiffs purchased for tens of millions of dollars—belongs in this Court.  Plaintiffs filed this lawsuit here because the contract under which they are suing—their Token Purchase Agreement ("TPA") with World Liberty—provides that any disputes "arising out of or based upon" the TPA must be filed in this Court (or in California state court).  The TPA even *expressly forbids* the parties from filing lawsuits anywhere else.  Yet, in its bid to divert this case from public Court proceedings to private arbitration, World Liberty barely mentions the TPA or its dispositive forum-selection provision.  World Liberty's attempt to hide its fraudulent conduct from the public spotlight—by sweeping this case into arbitration—should be rejected.  Plaintiffs respectfully urge this Court to retain jurisdiction and decline World Liberty's invitation to ignore the parties' foundational contract.

This lawsuit plainly arises from and is based upon the TPA.  After its launch, World Liberty struggled to sell $WLFI tokens.  But that changed in November 2024, when Mr. Sun agreed through one of his companies (Blue Anthem) in the TPA to purchase two billion $WLFI tokens from World Liberty for $30 million.  Thus, the TPA—which World Liberty's brief glosses over—marked the start of the parties' commercial relationship and formed its very foundation.  Unfortunately, however, that foundation turned out to be rubble:  it was the product of fraud by World Liberty.

As Plaintiffs later learned, World Liberty had made false representations to fraudulently induce Plaintiffs into making their anchor investment under the TPA.  World Liberty had promised Plaintiffs in the TPA that their tokens would be "marketable" and "free and clear of any . . . encumbrance," and it later proclaimed publicly that, on its supposedly "decentralized" platform, "no one's ever going to tell you that your account is shut down."  But World Liberty did exactly what it had promised never to do.  Without any lawful basis, World Liberty seized Plaintiffs' tokens, depriving Plaintiffs of hundreds of millions of dollars of what was indisputably their own property.

Naturally, when it came time to file this case—which features claims for fraudulent inducement and breaches of the TPA—Plaintiffs did so in this jurisdiction.  The contract required

---

[1] Unless otherwise noted, emphasis is added, and internal quotations and citations are omitted.

it. The TPA mandates that "*any* suit, action or other proceeding arising out of or based upon" that agreement must be brought in this Court or California state court. The parties also agreed in the TPA (i) "*not* to commence any suit, action or other proceeding arising out of or based upon these Terms *except* in the state courts of California or [this Court]"; and (ii) to "*waive, and agree not to assert*, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, *any claim*" that "*these Terms or the subject matter hereof may not be enforced in or by such court*."

World Liberty does not mention, let alone quote, any of these provisions in its brief. It does not argue that the TPA is unenforceable. It does not explain how Plaintiffs could have complied with the TPA by filing elsewhere. It fails to explain why the express waiver provision does not bar World Liberty's motion to compel. And it never disputes—because it cannot—that this case arises out of, or is based upon, the TPA. Instead, World Liberty argues that because four other agreements between the parties contain arbitration clauses, this Court should just jettison the TPA and send the entire case to arbitration. That is as wrong as it sounds. For these and the reasons below, the Court should apply the TPA, retain jurisdiction, and reject World Liberty's meritless arguments.

### LEGAL STANDARD

On a motion to compel arbitration, the movant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia* v. *Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). In contrast, a plaintiff need not provide evidence, since a court "assume[s] the truth of allegations in plaintiff's complaint." *Brown* v. *Dillard's, Inc.*, 430 F.3d 1004, 1006 (9th Cir. 2005). "Where a party opposes a motion to compel arbitration on the ground that no agreement to arbitrate was made, the court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Wang* v. *Life Ins. Co. of the Southwest*, 2019 WL 13201949, at *3 (N.D. Cal. Dec. 19, 2019).

### ARGUMENT

**I.    The TPA's Broad and Exclusive Forum-Selection Clause Governs This Dispute.**

The TPA requires that "any suit, action or other proceeding arising out of or based upon" the TPA be brought in this Court or California state court. (ECF No. 43-5 (TPA) § 17). Not only that, but in the TPA, the parties "agree[d] not to commence any suit, action or other proceeding"

-2-

anywhere "except in" those courts, and they also "waive[d], and agree[d] not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim" that "these Terms or the subject matter hereof may not be enforced in or by such court." (*Id.*).

These provisions are enforceable, and World Liberty does not and cannot argue otherwise. "[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause." *Ingres Corp.* v. *CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010); *accord Murphy* v. *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (clauses "presumptively valid").[2]  That is particularly true where, as here, the contract bars the filing of "any suit, action or other proceeding" anywhere "except in" the relevant courts. (TPA § 17); *see also Ashall Homes Ltd.* v. *ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1247 (Del. Ch. 2010) (explaining that it is "hard to imagine a clearer indication" of "exclusive jurisdiction over disputes arising from [an] agreement" than a prohibition on proceedings elsewhere).

The TPA is undisputedly unambiguous, and courts have offered guidance on how to interpret the plain meaning of "arising out of" under Delaware law (which governs the TPA).  In *SPay, Inc.* v. *Stack Media Inc.*, the Delaware Chancery Court explained that the "concept of 'arising out of' is a broad one," and held that it covered claims beyond breach of the relevant contract.  2021 WL 1109181, at *3 (Del. Ch. Mar. 23, 2021).  That case involved claims for (i) fraudulent inducement to enter the contract with the forum-selection clause, and (ii) a declaratory judgment about the enforceability of related contracts.   *Id.* at *2.  The Chancery Court applied the forum-selection clause to both claims, explaining that "where parties to a contract animate their forum selection clause with 'arising out of' language, as long as the claims stem from the contractual relationship, then an action need not allege contract-based claims in order for the forum selection clause in the contract to be enforced."  *Id.* at *3.  Notably, the court found that the fraudulent-inducement claim "ar[o]se out of" the parties' contract since it "would not be independently assertable apart from that

---

[2] "Federal law applies to the interpretation of a forum selection clause," but courts "look to general principles of contract interpretation for guidance." *Joseph* v. *Amazon.com, Inc.*, 2013 WL 4806462, at *3 (N.D. Cal. Sept. 9, 2013).  The TPA is governed by Delaware law.  (*See* TPA § 18).

[a]greement" and "[i]f the [agreement] did not exist, the claim would not exist." *Id.* at \*4.[3]

The same logic applies here. Each of Plaintiffs' claims asserts that World Liberty violated Plaintiffs' rights under the TPA and other rights in their relationship that stemmed from the TPA. Further, none of the claims would exist if there were no TPA. Thus, all "arise" from the TPA.

***Count I – Breach of Contract*.** Plaintiffs allege multiple breaches of the TPA. (*See* ECF No. 1 ("Compl.") ¶¶ 38, 68, 162, 164, 170). ███████████████████████████████ ███████████████████████████████████████████ ████████████████████████████ Thus, this claim would not exist without the TPA.

***Count II – Anticipatory Breach of Contract*.** Plaintiffs allege that World Liberty's threatened burning of Plaintiffs' tokens would breach the TPA. (*See id.* ¶ 170). ███████ ████████████████████████████████████

***Count III – Fraud in the Inducement*.** Plaintiffs allege that they "would never have entered into the TPA" had World Liberty not induced them to do so under false pretenses. (*See id.* ¶¶ 174, 177). This claim plainly arises from and is based upon the TPA.

***Count IV – Conversion*.** Plaintiffs claim that World Liberty improperly froze their tokens purchased under the TPA. (*See id.* ¶¶ 180-184). Thus, this conversion claim arises from the TPA.

***Count V – Unjust Enrichment*.** Plaintiffs allege that World Liberty retained the $45 million Plaintiffs paid to purchase $WLFI tokens while depriving Plaintiffs of any economic value from their tokens. (*See id.* ¶¶ 186-188). Plaintiffs undisputably purchased the first batch of those tokens for $30 million under the TPA (*see also* note 5 below), and thus this claim—and the parties' entire relationship—also arises from the TPA.

***Count VI – Implied Covenant of Good Faith and Fair Dealing*.** Plaintiffs claim that World Liberty breached this covenant, implied in both the TPA ██████, through the unlawful token freezes. (*See id.* ¶ 191). For the reasons above, the entire claim arises from the TPA.

***Count VII – Declaratory Relief*.** Plaintiffs seek a declaration that World Liberty materially breached certain provisions of the TPA ██████ (*see id.* ¶ 195), which arises from the TPA.

---

[3] *See also WWEC Holdings III Corp.* v. *Hackman*, 2026 WL 819022, at \*8 (Del. Ch. Mar. 25, 2026); *Ashall*, 992 A.2d at 1252-53.

## II.   Arbitration Clauses in Four Other Agreements Do Not Change the Result.

### A.  The Parties' Other Agreements Do Not Modify or Supersede the TPA.

Having no answer to the TPA, World Liberty switches field and argues that four other agreements between the parties require arbitration.  World Liberty is wrong.

To begin, this Court can compel arbitration only if it determines that the parties agreed to arbitrate *this* dispute.  *Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[The] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*. . . .") (emphasis in original).  The parties agreed to litigate "this dispute" here because it arises from and is based upon the TPA.  Arbitration provisions in other agreements (which this dispute is not based on) do not change the analysis.  *See Oracle Am., Inc.* v. *Procore Techs., Inc.*, 2025 WL 1069892, at *4-5 (N.D. Cal. Apr. 9, 2025) (one agreement's arbitration provision did not "supersede" judicial forum-selection clause in different agreement that "set[] forth the rights and obligations of the parties" with respect to "the subject of the claims in th[e] action"); *Centene Corp.* v. *Accellion, Inc.*, 2022 WL 898206, at *6 (Del. Ch. Mar. 28, 2022) (noting that California and Delaware "rules governing contract interpretation are similar").

There is also a serious question whether the four other arbitration provisions are enforceable.  They provide for arbitration in three different jurisdictions—New York (under the Advisor Token Agreement ("ATA") and the Terms of Sale), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and Florida (under the Terms of Service, incorporated into the Token Unlock Agreement ("TUA")).  They even conflict as to where non-arbitrable disputes must be litigated:  the ATA and Terms of Sale dictate Delaware, the TUA (through the Terms of Service) provides for Florida, ▮▮▮▮▮▮▮▮▮▮▮▮.  These conflicts may well render all four provisions unenforceable.  *See Maganallez* v. *Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 602-03 (N.D. Cal. 2007) (declining to compel arbitration because "uncertain" terms did not "reflect sufficient meeting of the minds for the Court to find that plaintiffs waived their important, constitutionally-protected right to a jury trial"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practs., & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 992 (C.D. Cal. 2012) ("In light of the conflicting arbitration provisions, the parties' intent is not clear. . . . To the contrary, read together, the conflicting arbitration provisions are not only ambiguous, they are fundamentally

-5-
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE
Case No. 26-cv-3360

incompatible."); *Ragab* v. *Howard*, 2015 WL 6662960, at \*6 (D. Colo. Nov. 2, 2015) (no "meeting of the minds" as to "dispute resolution" where "parties have entered into multiple agreements containing conflicting arbitration clauses"), *aff'd*, 841 F.3d 1134 (10th Cir. 2016).  And when "the existence of an arbitration agreement is at issue," the "presumption in favor of arbitrability does not apply."  *Johnson* v. *Walmart Inc.*, 57 F.4th 677, 681-82 (9th Cir. 2023).

In any event, the TPA controls the analysis.  When multiple agreements exist between the same parties, the first agreement—the one that creates the underlying relationship—controls the forum-selection analysis where, as here, it governs the rights at issue.  *See, e.g.*, *Ponomarenko* v. *Shapiro*, 287 F. Supp. 3d 816, 837-38 (N.D. Cal. 2018) (forum-selection clause in earlier agreement governed all claims, including those arising from later agreement, because earlier agreement was "the primary contract between the parties" and later agreement was an "extension of the [original] agreement" governing "the relationship between the parties"); *IND Holding, Inc.* v. *ReachOut Tech. NE, Holdings, LLC*, 2025 WL 2426683, at \*7 (D. Del. Aug. 22, 2025) (where contracts have conflicting forum-selection clauses, courts should look to agreement that created underlying transaction).  World Liberty's arguments to the contrary are meritless.

*First*, World Liberty claims that a dispute "need only 'touch matters' covered by the contract containing the arbitration clause" to be arbitrable.  (ECF No. 40 ("Br.") at 9 (citing *Simula, Inc.* v. *Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999))).  But the link between this case and most of the agreements World Liberty cites is tangential (*see* Section III below), and in any event, none of World Liberty's cases involve facts like this, with claims undisputedly arising from a foundational contract that lacks an arbitration provision *and* contains an exclusive forum-selection clause.

*Second*, World Liberty invokes the "later in time" doctrine, citing *REM OA Holdings, LLC* v. *Northern Gold Holdings, LLC*, 2023 WL 6884845 (Del. Ch. Oct. 19, 2023), for the proposition that later agreements supersede earlier ones.  (Br. at 12-13).  But in *REM*, the earlier agreement was "expressly subject to future 'definitive documentation,'" and the later one contained an integration clause.  2023 WL 6884845, at \*1, \*3.  Here, by contrast, (i) the *TPA* contained an integration clause (TPA § 20); (ii) the TPA provided that it "*shall control*" in case of any "conflict with . . . any terms on [World Liberty's] website" (TPA § 5); (iii) the TPA further provided that "*[a]ny changes made*

*to these Terms* following the execution of this Agreement and the Token Sale *shall require the prior written consent of Purchaser*" (TPA § 20), which has never occurred; and (iv) *none* of the agreements that World Liberty cites supersede or amend the TPA.  In fact, the only one that even mentions the TPA ███████████████████████████████████████████████████ ███████████████████████████.  These provisions defeat World Liberty's argument.  *See Whirlpool Corp.* v. *Cabri*, 2022 WL 1421126, at \*14 (D. Del. May 5, 2022) (later agreement's forum-selection clause did not apply to claim for breach of earlier agreement because "there [wa]s no clear intent that the [earlier contract] be governed by the terms of the [later contract]"); *Phoenix Can. Oil Co.* v. *Texaco Inc.*, 560 F. Supp. 1372, 1378 (D. Del. 1983) (same).

World Liberty's other cases (*see* Br. at 12-13) are likewise inapposite.  In *Country Life Homes, Inc.* v. *Shaffer*, the earlier agreement specifically contemplated the later one, and the later agreement (███████████) had an integration clause.  2007 WL 333075, at \*1 (Del. Ch. Jan. 31, 2007).  In *Suski* v. *Coinbase, Inc.*, the Ninth Circuit held that a forum-selection clause in a later agreement superseded an earlier one only where (unlike here) it "sufficiently demonstrates the parties' intent to do so."  55 F.4th 1227, 1230 (9th Cir. 2022), *aff'd*, 602 U.S. 143 (2024).  In *Thiele* v. *Merrill Lynch, Pierce, Fenner & Smith*, the agreements all contained similar arbitration clauses, and the court was not even asked to distinguish between conflicting provisions.  59 F. Supp. 2d 1060, 1063-64 (S.D. Cal. 1999).  Finally, *Verint Ams. Inc.* v. *Terminix Consumer Servs., LLC* did not involve conflicting forum-selection clauses.  817 F. Supp. 3d 1338, 1340 (N.D. Ga. 2025).

**B.  World Liberty Has Waived Any Supposed Right to Arbitrate.**

World Liberty's motion also fails because it waived any claimed right to arbitrate when it strategically filed a related case—indeed, a compulsory counterclaim—in Florida state court.

Demonstrating a waiver requires: "(1) knowledge of an existing right to compel arbitration; and (2) acts inconsistent with that existing right."  *Gile* v. *Dolgen Cal., LLC*, 2022 WL 17248087, at \*1 (9th Cir. Nov. 28, 2022).  Courts examine "the totality of the parties' actions" and ask "whether a party's actions indicate a conscious decision to seek judicial judgment on the merits of the arbitrable claims."  *Id.* at \*1.  World Liberty's conduct meets these standards.

*First*, World Liberty knew of its claimed right to arbitrate when it filed its Florida lawsuit.

Weeks before filing in Florida, World Liberty stipulated not to burn Plaintiffs' tokens during this litigation while reserving its contention that Plaintiffs' claims are "subject to mandatory arbitration" (ECF No. 16 at 1). *Second*, World Liberty has acted in a manner "inconsistent" with its claimed right to arbitrate. Days before Plaintiffs filed this lawsuit, Mr. Sun published posts on X.com that previewed certain facts underlying the claims in this forthcoming lawsuit. World Liberty did nothing. But two weeks after Plaintiffs filed this case, World Liberty—knowing that it would move to compel arbitration—filed a lawsuit in Florida claiming the X.com posts were defamatory. The defamation case is obviously related, but World Liberty must have known that filing a counterclaim in this Court would seriously undermine its attempt to compel arbitration. So World Liberty chose to file its counterclaim in the guise of a separate lawsuit in its chosen forum—a maneuver that allowed World Liberty to publicize its allegations against Mr. Sun while still preserving its argument to try to shield Mr. Sun's claims in this case from the public eye. The "totality" of World Liberty's actions—including forum shopping and gamesmanship—justifies a finding of waiver.

World Liberty's defamation claims are compulsory counterclaims.[4] In Florida, World Liberty accuses Mr. Sun of defamation based on X.com posts stating that World Liberty "embedd[ed] a backdoor blacklisting function in the smart contract used to deploy WLFI tokens," and that World Liberty's "governance process was 'not conducted through a fair or transparent process.'" (ECF No. 35 Ex. 1 ("Fla. Compl.") ¶ 4). Thus, World Liberty's theory is that Mr. Sun defamed it by posting to X.com a preview of some facts that he would include days later in his Complaint in this case. That is a compulsory counterclaim. *See, e.g.*, *Pochiro* v. *Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1251 (9th Cir. 1987) (separate defamation action was a compulsory counterclaim where "the allegedly defamatory statements are sufficiently related to [the] subject matter of the original action," under Arizona law using same definition as Rule 13(a)(1)).

---

[4] A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). Courts consider "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Grumman Sys. Support Corp.* v. *Data Gen. Corp.*, 125 F.R.D. 160, 162 (N.D. Cal. 1988). The underlying facts need not be "precisely identical." *Id.* At the appropriate time, Mr. Sun will remove the defamation action to federal court in Florida and then move to transfer it here, so the entire dispute can be litigated here all at once.

World Liberty could have brought its counterclaim in arbitration.  It could have waited to bring that counterclaim in this Court in the event that it lost this motion.  It did neither.  Instead, World Liberty chose to bring its counterclaim in a forum it deemed most favorable while still (supposedly) preserving its arbitration argument.  That strategic choice is a waiver.  *See Sequoia Benefits & Ins. Servs.* v. *Costantini*, 553 F. Supp. 3d 752, 760 (N.D. Cal. 2021) (waiver by filing "motion to dismiss that went to the merits" and "counterclaims with an accompanying request for a jury trial").  As the Ninth Circuit has explained, "su[ing] in state court[] [is] an act that undeniably is inconsistent with enforcing [an] arbitration right."  *Hoffman Const. Co. of Or.* v. *Active Erectors & Installers, Inc.*, 969 F.2d 796, 799 (9th Cir. 1992); *see also PPG Indus., Inc.* v. *Webster Auto Parts, Inc.*, 128 F.3d 103, 110 (2d Cir. 1997) ("[A] party waives its right to arbitration when it avails itself of judicial resources in one action, then attempts to compel arbitration in a second action involving the same facts and legal issues."); *Gile*, 2022 WL 17248087, at *1-2 (party waived right to arbitrate by making "a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims" and "actively litigating [the] case to take advantage of being in [] court").

## III.    The Other Four Agreements Are Unenforceable, Inapplicable, or Both.

Even if the Court were to find that the TPA is not dispositive (it is), and that World Liberty did not waive its right to arbitrate (it did), the four other agreements on which World Liberty relies are unenforceable, inapplicable, or both.  Moreover, World Liberty offers no explanation for how these other agreements could override World Liberty's promise in the TPA "not to assert, by way of motion" that this Court lacks the power to enforce the TPA.  (TPA § 17).

**None of Plaintiffs' Claims Arise Under the ATA.**  On November 25, 2024, the same day that Plaintiffs paid World Liberty $30 million under the TPA for two billion $WLFI tokens, World Liberty and Blue Anthem entered into the ATA under which Mr. Sun was awarded one billion more tokens in exchange for becoming an advisor to World Liberty.  World Liberty asks this Court to apply the ATA's arbitration provision, which covers "[d]isputes arising from or related to [the ATA's] Terms."  (ECF No. 43-6 (ATA) § 20).  But those "Terms" are limited to "the Award [of advisor tokens] *only* and *not* [to] Tokens received otherwise."  (*Id.* § 23).  Plaintiffs' claims relate to World Liberty's arbitrary seizure of the investor tokens Plaintiffs bought under the TPA, not the

advisor tokens Mr. Sun received under the ATA.  Their Complaint does not even mention the ATA.

**The Court Should Not Apply the Arbitration Provision in the Terms of Sale.**  *First*, the November 25, 2024 purchase of two billion $WLFI tokens for $30 million was governed by the TPA—not the Terms of Sale.  The TPA provided that Plaintiffs' purchase was "[s]ubject to the terms and conditions of the [TPA] (the 'Terms')."  (TPA at 1).  Not only that, but the TPA also referred to itself on its first page as "THESE TERMS OF TOKEN SALE" and "THESE TERMS OF SALE," and later expressly stated that "to the extent that the terms of this Agreement conflict with [] any terms on the Seller's website, ***the terms of this Agreement shall control***."  (*Id.* § 5).  And the TPA's integration clause stated that "[t]hese Terms constitute the entire agreement between you and us relating to your purchase of Tokens from us" and that "[a]ny changes made to these Terms following the execution of this Agreement and the Token Sale shall require the prior written consent of Purchaser."  (*Id.* § 20).  It is undisputed that Plaintiffs never gave this written consent.

Nevertheless, World Liberty now seems to claim that the Court should cast the TPA aside because, to obtain the very tokens Plaintiffs had purchased under the terms of the TPA, Plaintiffs had to "accept" online World Liberty's generic Terms of Sale—which contained an arbitration clause that conflicts with the TPA's forum-selection clause. [5]  But in addition to the lack of written consent, allowing this bait-and-switch would run afoul of basic notions of equity and fair play.  *See, e.g.*, *Moyer* v. *Wells Fargo*, 2018 WL 4956822, at *7 n.2 (M.D. Pa. Sept. 27, 2018) ("[I]f [plaintiff] presented evidence which indicated that his prior agreements with [defendant] did not contain arbitration provisions, but one was surreptitiously included in the 2014 agreement which changed the fee structure between the parties, then he might make the showing required to void an otherwise clear arbitration agreement."), *R&R adopted*, 2018 WL 4956693 (M.D. Pa. Oct. 12, 2018); *Lucey* v.

---

[5] World Liberty argues that the Terms of Sale also govern Plaintiffs' January 2025 purchase of one billion more tokens for $15 million.  But the TPA expressly governed Plaintiffs' "purchase of $WLFI Tokens . . . from the Company ***during the first round of the general Token sale*** (the 'Token Sale') ***period*** (the 'Sale Period')" (TPA at 1-2), which covered the January 2025 purchase.  *See* World Liberty Financial, *Tokenomics* (last updated Jan. 31, 2026), https://docs.worldlibertyfinancial.com/wlfi-token/tokenomics ("Round 1" of token sale was priced at $0.015 per token while "Round 2" of token sale was priced at $0.05 per token, which demonstrates that Plaintiffs' January 2025 purchase for $15 million was at the $0.015 per token price).

*FedEx Ground Package Sys., Inc.*, 305 F. App'x 875, 877 (3d Cir. 2009) (agreement unconscionable where party was given "no meaningful choice" but to accept arbitration agreement after being "financially committed" to the underlying transaction).

*Second*, World Liberty has not met its burden to show that Plaintiffs agreed to its Terms of Sale when Plaintiffs purchased their tokens.  As the moving party, World Liberty must prove the existence of an agreement to arbitrate by a preponderance of evidence.  *Norcia*, 845 F.3d at 1283.  Plaintiffs are entitled to "the benefit of all reasonable doubts and inferences that may arise."  *Wang*, 2019 WL 13201949, at \*3.  To enforce an online agreement like the Terms of Sale, World Liberty must show that Plaintiffs had notice of and agreed to the terms that were in effect on a specific date.  *See Snow* v. *Eventbrite, Inc.*, 2020 WL 6135990, at \*5 (N.D. Cal. Oct. 19, 2020) (denying motion to compel arbitration where defendant did not "state the date when the website first adopted its present appearance" or exhibit the "agreements as they existed on the dates of the plaintiffs' sign-ups and purchases").  Courts reject "conclusory statement[s]" that provide "no specific facts as to how" users "receive[d] actual notice of or agree[d] to" online terms.  *Kuhk* v. *Playstudios Inc.*, 2024 WL 4529263, at \*4 (W.D. Wash. Oct. 18, 2024); *see also Obesity Rsch. Inst., LLC* v. *Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1104 (S.D. Cal. 2018) ("declarations that contain only conclusory statements, instead of specific facts, are insufficient").[6]

But World Liberty provides only (i) a declaration describing the token-purchase portal in the present tense, without specifying how it operated ***on the relevant dates*** (*see, e.g.*, ECF No. 40-6 ("Caplan Decl.") ¶ 3 ("a user ***is required*** to engage in a number of steps"), ¶ 3(e) ("[t]he user ***is then required*** to scroll through the terms")); and (ii) an undated Terms of Sale, even though that document expressly provides that World Liberty may "make changes to these Terms from time to time" and will "post the amended Terms" and "***include the date of the update***."  (ECF No. 40-7 (Terms of Sale) § 19).  In other words, World Liberty has not shown how the Terms of Sale were

---

[6] *Cf. Keller* v. *Chegg, Inc.*, 2023 WL 5279649, at \*2-3 (N.D. Cal. Aug. 15, 2023) (Donato, J.) (evidence sufficient where movant submitted electronic tracking records showing specific user "accepted the [terms of use] on" certain dates and screenshots of website interface); *King* v. *AxleHire, Inc.*, 2019 WL 1925493, at \*3 (N.D. Cal. Apr. 30, 2019) (Donato, J.) (evidence sufficient where it showed plaintiff's name, IP address, and time and date of approval of terms).

presented to users on the date Plaintiffs acquired their tokens (*i.e.*, whether the "Accept Terms" button was conspicuously placed, whether the Terms were visible on the interface or merely through a hyperlink), nor which version was applicable on that date.  That is insufficient.  *See, e.g.*, *Henry* v. *Phixios Holdings, Inc.*, 2017 WL 2928034, at *10 (Del. Ch. July 10, 2017) (amended terms not effective because there was "no evidence" that plaintiff received notice or otherwise assented to revisions); *Sifuentes* v. *Dropbox, Inc.*, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) (denying motion to compel where defendant did "not show[] by a preponderance of the evidence that [p]laintiff had actual or inquiry notice of the updated terms of service" with arbitration provision).

**The TUA Is Both Unenforceable and Inapplicable.**  Like the Terms of Sale, the TUA is also a contract of adhesion.  Because all $WLFI tokens were initially locked from tradability, token-holders had to unlock them online once the first tranche became tradable in September 2025.  World Liberty claims that users were required to click "accept" on the TUA as part of that unlocking process and that Plaintiffs did so on September 1, 2025.  (Caplan Decl. ¶¶ 7-8).  The TUA did not contain an arbitration provision but purported to incorporate one contained in a separate document, the website's Terms of Service.  (ECF No. 40-8 (TUA) § 8).

World Liberty's reliance on the TUA fails for two reasons.  *First*, as with the Terms of Sale, World Liberty's proof is insufficient to show that Plaintiffs accepted the TUA, let alone the supposedly incorporated Terms of Service.  To meet its burden of proof, World Liberty must show how its online interface presented the TUA on September 1, 2025—including evidence that the token-unlock portal gave users adequate notice that the TUA incorporated an arbitration clause ***in an entirely different document***.  But again, World Liberty provides evidence only of how the company's portal currently works.  (Caplan Decl. ¶ 7).  And the TUA that World Liberty proffers is undated and states that "these terms are subject to change."  (TUA at 1).

*Second*, Plaintiffs' claims do not arise under the TUA anyway.  The TUA's dispute resolution clause reaches only disputes "arising out of or related to" that agreement.  (TUA § 8).  The TUA governs how token-holders unlock their tokens—not the economic and governance rights that are the subject of Plaintiffs' claims.  Plaintiffs do not allege breach of the TUA.  Plaintiffs' Complaint observes that World Liberty's conduct would violate the TUA (*see* Compl. ¶ 66), but that is not the

same as seeking relief for breach of the TUA.

**The** ███ **Does Not Override the TPA.** As discussed, the Court should not apply the ████████████████████ (*see* Br. at 10-11) because (i) Plaintiffs' claims arise from the TPA; (ii) Plaintiffs never agreed (let alone in writing) to modify the TPA's forum-selection clause; (iii) Plaintiffs waived the right to challenge this Court's enforcement of the TPA; (iv) ████████ ████████████ ; and (v) ████████████████████████ ████████████████████████████████████. But there is another reason: World Liberty bases its position on a mischaracterization of Plaintiffs' fraud claim.

World Liberty argues that Plaintiffs' fraud-in-the-inducement claim "touches on" the ███ because the claim is based on the "freezing of Blue Anthem's tokens" and ████████████ ████████████████████████████████ (*Id.* at 11). That is wrong. When Plaintiffs purchased the tokens under the TPA, World Liberty promised that they would have valid "marketable"—in other words, *sellable*—title to their tokens. But when token-holders voted in July 2025 to approve transferability, World Liberty breached its prior representations and froze Plaintiffs' tokens such that they could not be marketable. (Compl. ¶¶ 53-56). This unlawful and arbitrary freeze was simply an event that revealed World Liberty's representations in the TPA to be false. ███ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████. *See Ponomarenko*, 287 F. Supp. 3d at 838.

**IV.    Plaintiffs' Draft** ████████████████ **Does Not Constitute a Waiver or Concession**

World Liberty suggests that Plaintiffs waived their right to file this lawsuit because they sent World Liberty a draft pleading ████████████████ as part of confidential settlement discussions. (Br. at 5). That argument is contrary to the law and distorts the facts.

*First*, World Liberty does not cite any authority to support its argument that the draft ███ was a waiver or concession. And for good reason—the law is just the opposite. Even initiating or participating in arbitration does *not* waive the ability to challenge an arbitration agreement. *See Nagrampa* v. *MailCoups, Inc.*, 469 F.3d 1257, 1279 (9th Cir. 2006) ("limited involvement in preliminary [arbitration] matters does not preclude [plaintiff] from challenging arbitrability");

*Openshaw* v. *FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987, 998 (C.D. Cal. 2010) ("even when a party participates in arbitration, he does not necessarily waive the right to object to it"). And here, Plaintiffs did not even do that; they just sent a ***confidential*** settlement communication.

*Second*, the draft ██████████ and the Complaint are substantively different. ██
████████████████████████████████████████████████████████████. The Complaint alleges fraud in the inducement as to the TPA, breach of the TPA, and other claims that are all based upon or arise out of the TPA. World Liberty's brief fails to mention these fundamental differences, which materially change the forum-selection analysis.

**V.    This Court Should Reject World Liberty's Procedural Maneuvering.**

**A.  This Court Must Decide Arbitrability in This Case.**

Plaintiffs allege breach of only two contracts—(i) the TPA, which expressly provides for court resolution of disputes, and (ii) ██████████████████████████████████
████████████████████████████████████████████████████████████
██████████. Yet World Liberty argues that an arbitrator must decide arbitrability because three *other* contracts—the ATA, Terms of Sale, and TUA (through the Terms of Service)—require that. (Br. at 8-9). Not so. Contracts under which Plaintiffs are ***not*** suing should not override contracts under which they ***are*** suing, but in any event, "courts should not assume that the parties agreed to arbitrate arbitrability" absent "clear and unmistakable" evidence. *SEIU Loc. 121RN* v. *Los Robles Reg'l Med. Ctr.*, 976 F.3d 849, 861 (9th Cir. 2020). Here, there is no such evidence; rather, there is confusion—at best. As the Supreme Court has explained, when parties invoke multiple contracts—some "sending arbitrability disputes to arbitration, and the other[s] either explicitly or implicitly sending arbitrability disputes to the courts—***a court*** must decide which contract governs." *Coinbase, Inc.* v. *Suski*, 602 U.S. 143, 152 (2024); *see also Oracle Am.*, 2025 WL 1069892, at *3-4 (court must determine which contract governs where multiple agreements contain conflicting arbitration and forum-selection provisions). That is precisely the case here, and World Liberty does not show otherwise. Although World Liberty cites *Brennan* v. *Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), for the proposition that incorporation of AAA rules (a provision in the contracts under which Plaintiffs are ***not*** suing) is a "clear and unmistakable" delegation of arbitrability to an arbitrator (Br.

at 8-9), that concept does not apply where, as here, conflicting provisions exist.  To the contrary, as the Court explained in *Connell* v. *ByteDance, Inc.*, the presence of "provisions [that] conflict" on arbitrability means that incorporation of AAA rules is **not** "clear and unmistakable evidence" of an intent to delegate the issue of arbitrability.  2025 WL 1828472, at *8-9 (N.D. Cal. July 1, 2025).

### B.  Even if Some Claims Go to Arbitration, This Court Should Not Stay the Others.

The Ninth Circuit has a strong "preference for proceeding with the non-arbitrable claims when feasible."  *United Commc'ns Hub, Inc.* v. *Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002).  "[C]ourts weigh various factors, including: the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Reynaud* v. *Riverbed Tech., LLC*, 2024 WL 3297069, at *6 (N.D. Cal. July 2, 2024).  Courts also consider "(i) the predominance of the arbitrable claims, (ii) the merit of the non-arbitrable claims, (iii) the Court's concern with controlling its own docket, and (iv) overall judicial economy."  *Id.*  Staying non-arbitrable claims is appropriate "*only*" when "the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision."  *United Commc'ns*, 46 F. App'x at 415.  But here, (i) Plaintiffs' TPA-related claims must be litigated in this Court, and those claims predominate; (ii) the outcome of the TPA claims does not depend on the outcome of ███████; and (iii) a stay would not simplify this case or promote efficiency.  *See, e.g.*, *California Crane School, Inc.* v. *Google LLC*, 621 F. Supp. 3d 1024, 1033-34 (N.D. Cal. 2022) (no stay where movant "fail[ed] to show that a stay would simplify the legal and factual issues in this lawsuit or otherwise promote the orderly course of justice"); *Oracle Am., Inc.* v. *Procore Techs., Inc.*, 2025 WL 2223426, at *3 (N.D. Cal. Aug. 5, 2025) (no stay since parties "will need to litigate the remaining non-arbitrable claims" regardless "of whatever happens in the arbitration").

## <u>CONCLUSION</u>

For the reasons above, the Court should deny World Liberty's motion and request to stay.

Dated: July 14, 2026
      New York, NY

CAHILL GORDON & REINDEL LLP

By:    */s/ Samson A. Enzer*
       Samson A. Enzer (admitted *PHV*)
       Herbert S. Washer (admitted *PHV*)
       Edward N. Moss (admitted *PHV*)
       John S. MacGregor (No. 304330)
       senzer@cahill.com
       hwasher@cahill.com
       emoss@cahill.com
       jmacgregor@cahill.com
       32 Old Slip
       New York, NY 10005
       Telephone: (212) 701-3000

       Gregory Strong (admitted *PHV*)
       gstrong@cahill.com
       221 W. 10th Street, 3rd Floor
       Wilmington, DE 19801
       Telephone: (302) 884-0001

       KEKER, VAN NEST & PETERS LLP

       Robert A. Van Nest (No. 84065)
       Steven P. Ragland (No. 221076)
       Brook Dooley (No. 230423)
       Gayatri V. Paranjape (No. 345933)
       rvannest@keker.com
       sragland@keker.com
       bdooley@keker.com
       gparanjape@keker.com
       633 Battery Street
       San Francisco, CA 94111-1809
       Telephone: (415) 391-5400

       *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE
Case No. 26-cv-3360