QUINN EMANUEL URQUHART & SULLIVAN LLP
James D. Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel:    (415) 875-6600
Fax:    (415) 875-6700

William A. Burck (admitted *pro hac vice*)
williamburck@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Tel:    (202) 538-8000
Fax:    (202) 538-8100

Rajat Rana (admitted *pro hac vice*)
Sam Cleveland (admitted *pro hac vice*)
rajatrana@quinnemanuel.com
samcleveland@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Tel:    (212) 849-7000
Fax:    (212) 849-7100

*Attorneys for Defendant World Liberty Financial LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUCHEN "JUSTIN" SUN; BLUE ANTHEM LIMITED; and BLACK ANTHEM LIMITED,<br><br>Plaintiffs,<br><br>V.<br><br>WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.),<br><br>Defendant. | Civil Action No. 3:26-cv-3360-JD<br><br>**DEFENDANT WORLD LIBERTY FINANCIAL LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>Date:    August 20, 2026<br>Time:    10:00 a.m.<br>Courtroom: 11<br><br>The Honorable James Donato<br><br>Trial Date: Not Set |

## I. INTRODUCTION

Plaintiffs' opposition brief fundamentally mischaracterizes the legal and factual issues relevant to World Liberty's Motion. This is not a forum selection dispute. It is a Motion to Compel Arbitration governed by the FAA. What matters is not whether Plaintiffs' claims touch upon (or "aris[e] out of or [are] based upon") the TPA, but whether they touch upon any of the other agreements (with arbitration clauses) between the parties. They obviously do. The Motion can be resolved by the ▮▮▮▮ alone: Plaintiffs do not dispute the enforceability or validity of the ▮▮▮▮, or that six of the seven asserted claims touch matters covered by the ▮▮▮▮. ECF No. 49 ("Opp.") at 13. That is dispositive as to those claims under the FAA and controlling Ninth Circuit precedent. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). And even as to the sole disputed claim (fraud in the inducement), Plaintiffs' arguments fail. The TPA expressly provided—and Blue Anthem expressly represented it knew—that the acquired $WLFI tokens conveyed "***No Economic Rights***" and were "***Non-Transferable***." Alper Decl. Ex. 1 (ECF No. 40-2) at 2 (emphasis in original); *see also id.* at 8 (Blue Anthem's representation that it was aware "that the tokens are non-marketable, non-transferable, and may be illiquid"). It is the ▮▮▮▮ and TUA, **not** the TPA, that provide for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ certain of those tokens. Alper Decl. Ex. 3 (ECF No. 40-4) at 2. Accordingly, Plaintiffs' fraud-in-the-inducement claim—which seeks damages related to "the loss of the economic value of their frozen tokens," Complaint ¶ 178—also "touch[es] matters" covered by the ▮▮▮▮. Moreover, because the claim is not limited to the two billion tokens acquired through the TPA, but includes the approximately two billion additional tokens acquired pursuant to the ATA and Terms of Sale, it also necessarily "touch[es] matters" covered by the ATA and Terms of Sale.

Plaintiffs' various other arguments to avoid the Anthem Parties' arbitration obligations all fail. The Terms of Sale and TUA are not unenforceable (and Plaintiffs do not even come close to meeting their burden as to either). Plaintiffs' claims "touch matters" covered by the ATA, Terms of Sale, and TUA, and Plaintiffs' arguments to the contrary are inconsistent with the Complaint, Plaintiffs' prior admissions, and Plaintiffs' prior representations to the Court. For example, while

Plaintiffs now argue that the ATA is totally irrelevant to their claims, Opp. at 9-10, Plaintiffs told the Court last month that the ATA was one of two agreements (along with the TPA) that was "foundational to the case." ECF No. 45 at 1. World Liberty has not waived its arbitration rights by bringing defamation claims against a non-party to any of the arbitration agreements (and whose claims World Liberty is not seeking to compel to arbitration). And judicial economy and the other relevant factors all favor staying Sun's claims (to the extent they are not dismissed with prejudice).

For all of these reasons, the Court should reject Plaintiffs' misleading contortions of their claims, compel the Anthem Parties to arbitration, and stay any remaining portion of the case.

## II.    ARGUMENT

Plaintiffs do not dispute that four separate arbitration agreements exist; they only argue that they do not cover the asserted claims (and, for two agreements, that they are not enforceable). Plaintiffs do not come close to meeting their burden to show the claims are not subject to arbitration. *See Installit, Inc. v. Carpenters 46 N. Cal. Cntys. Conf. Bd.*, 214 F. Supp. 3d 855, 859 (N.D. Cal. 2016).

### A.    Plaintiffs' Forum Selection Arguments Are Inapplicable

### 1.    The TPA's Forum-Selection Clause Does Not Govern This Dispute

Plaintiffs' lead argument is that the TPA's forum-selection clause overrides any arbitration agreements. Opp. at 2-4. However, Plaintiffs cite no cases involving arbitration clauses, questions of arbitrability, or motions to compel arbitration.[1] Accordingly, all of Plaintiffs' authorities are inapposite. It is irrelevant whether the TPA's forum-selection clause would, in isolation, apply to Plaintiffs' claims. What matters is whether there are other agreements between the parties that contain arbitration clauses (there are), and whether Plaintiffs' claims "touch matters" covered by

---

[1] *See Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010) (adjudicating enforceability of forum selection clause and not concerning arbitration clause); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (ruling on improper venue motion and not concerning arbitration clause); *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1247 (Del. Ch. 2010) (deciding applicability of forum selection provision and not concerning arbitration); *Joseph v. Amazon.com, Inc.*, 2013 WL 4806462, at *3 (N.D. Cal. Sept. 9, 2013) (deciding improper venue motion and not concerning arbitration).

-2-    Civil Action No. 3:26-cv-3360-JD

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION TO COMPEL ARBITRATION

those agreements (they do).  *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, 725 F. Supp. 3d 1033, 1038, 1046 (N.D. Cal. 2024) (granting motion to compel arbitration where the claims fell under the subject matter of one of the parties' agreements with an arbitration provision "even though the conduct at issue . . . [was] also governed" by an agreement without an arbitration provision).

### 2.    The Four Arbitration Agreements Govern This Dispute

Plaintiffs' next argument is that the four later-in-time agreements between the parties, each of which include an arbitration clause, are irrelevant because "the first agreement—the one that creates the underlying relationship—controls the forum-selection analysis where, as here, it governs the rights at issue."  Opp. at 6.  Not so.  Here, again, Plaintiffs rely on inapposite forum-selection cases that do not involve arbitration clauses, questions of arbitrability, or motions to compel arbitration.[2]  In fact, courts routinely resolve purported conflicts between forum selection clauses and agreements to arbitrate in favor of arbitration.  *Personal Sec. & Safety Systems, Inc. v. Motorola*, 297 F.3d 388, 396 n.11 (5th Cir. 2002) ("[A] forum selection clause cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration.").  In such circumstances, courts compel arbitration unless the forum selection clause **specifically** prohibits arbitration. *ValuePart, Inc. v. Farquhar*, 2014 WL 4923179, at *6 (N.D. Ill. Sept. 29, 2014); *Morrow Equipment Co., LLC v. Baker Concrete Constr., Inc.*, 2010 WL 4483909, at *3 (D. Or. Nov. 1, 2010).  Here, the TPA does not even mention arbitration, much less **specifically** prohibit it.

In any event, to the extent there is a conflict between the forum selection clause in the TPA and the arbitration provisions in other agreements, the later-in-time agreements (all of which include an arbitration provision) govern.  *See Thiele v. Merrill Lynch*, *Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060, 1063 (S.D. Cal. 1999) (finding that subsequent agreement containing arbitration provision

---

[2]  *See Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 837-38 (N.D. Cal. 2018) (considering motion to transfer venue to another federal court based on forum selection clause); *IND Holding, Inc. v. ReachOut Tech. NE, Holdings, LLC*, 2025 WL 2426683, at *7 (D. Del. Aug. 22, 2025) (considering motion to dismiss under the doctrine of *forum non conveniens* based on forum selection clause); *Whirlpool Corp. v. Cabri*, 2022 WL 1421126, at *4-5 (D. Del. May 5, 2022) (adjudicating forum selection clause and not concerning arbitration); *Phoenix Canada Oil Co. v. Texaco Inc.*, 560 F. Supp. 1372, 1377 (D. Del. 1983) (similar).

supersedes previous agreements); *REM OA Holdings, LLC v. Northern Gold Holdings, LLC*, 2023 WL 6884845, at *3 (Del. Ch. Oct. 19, 2023) (under Delaware substantive contract law, later agreements concerning same subject matter govern).  This is especially true when later-in-time agreements—the ███ and TUA—most closely relate to this dispute.  *Verint Americas Inc. v. Terminix Consumer Servs., LLC*, 817 F. Supp. 3d 1338, 1343-44 (N.D. Ga. 2025) (compelling arbitration in part because "this litigation likely cannot be resolved without reference to" the agreements with arbitration provisions).

Finally, Plaintiffs argue that *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 721 (9th Cir. 1999), and the operative "touch matters" standard does not apply here because "the link between this case and most of the agreements World Liberty cites is tangential" and "none of World Liberty's cases involve facts like this."  Opp. at 6.  However, Plaintiffs cite no legal authority to support either of these propositions.  That's because there are none.  Even a "tangential" link will "'touch matters' covered by the contract," *Simula*, 175 F.3d at 721—and in any event, Plaintiffs concede that the link between this case and at least some of the arbitration agreements is more than substantial.  *See* ECF No. 45 at 2.

Plaintiffs also cite *Oracle Am., Inc. v. Procore Techs., Inc.*, 2025 WL 1069892, at *4-5 (N.D. Cal. Apr. 9, 2025), but in that case the two conflicting contracts were returned at the same time and the court found (and "[t]he parties appear[ed] to agree") that they were "interdependent instruments, together designed to attain one preconceived objective, and should be construed together."  *Id.* at *4 & n.3.  That is not the case here, where the ATA, Terms of Sale, TUA, and ███ are all later-in-time agreements that modified the relationship between the parties (including rights regarding the unlocking, transfer, and freezing of tokens acquired through the TPA).

**B.    The Separate Florida Case Is No Waiver of the Right to Arbitrate**

Plaintiffs next argue that World Liberty has acted inconsistently with its arbitration rights by filing a Florida state court action against Sun.  Opp. at 7-9.  This argument fails.  *See Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 619 (N.D. Cal. 2019) ("Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" (citation omitted)).

Civil Action No. 3:26-cv-3360-JD

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION TO COMPEL ARBITRATION

As World Liberty voluntarily informed the Court, transparently and in an abundance of caution, World Liberty filed a defamation complaint against Sun in Florida state court. ECF No. 35. The Florida case is not a related case, nor is it a "compulsory counterclaim." Opp. at 7. It is a claim against Sun—who is not a party to any of the arbitration agreements and against whom World Liberty is not seeking to compel arbitration—relating to tortious conduct that occurred months, and in some cases, years, after the conduct at issue in this action.

Far from acting inconsistently with its right to arbitrate these claims, World Liberty has repeatedly and vigorously explained to Plaintiffs that these claims are subject to mandatory arbitration. Counsel for Plaintiffs have similarly acknowledged that these disputes were subject to arbitration, including by sending World Liberty a 36-page, 118-paragraph draft Demand for Arbitration with AAA (consistent with the arbitration rules applying to all four of the arbitration agreements) asserting that AAA jurisdiction applies through the ███. *See* ECF No. 40-10.

Plaintiffs' cases are inapposite. *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1251 (9th Cir. 1987) does not involve a motion to compel arbitration (let alone a finding of waiver of arbitration rights). In *Sequoia Benefits & Ins. Servs. v. Costantini*, 553 F. Supp. 3d 752, 760 (N.D. Cal. 2021), there were multiple indications of waiver of intent to arbitrate, including filing a merits-heavy motion to dismiss, informing the court the matter was not subject to arbitration, participating in case management conference, and filing counterclaims asking for a jury trial. *Hoffman Construction Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798-99 (9th Cir. 1992), is inapplicable because World Liberty did not bring arbitrable claims in the Florida action; the Florida claims are not arbitrable because Sun has not personally agreed to arbitrate. It is not surprising nor unconventional that arbitrable claims would proceed in arbitration while non-arbitrable claims would proceed in court, especially when they are unrelated.

**C.     This Dispute Touches Upon the Four Agreements, and They Are Enforceable**

Plaintiffs argue that the agreements with arbitration clauses do not cover the claims and/or are unenforceable. Opp. at 5-7, 9-13. These arguments lack merit.

*First*, Plaintiffs suggest that the arbitration agreements are not enforceable because there are purported inconsistencies between their arbitration provisions. Opp. at 5. Specifically, Plaintiffs

claim that because the arbitration provisions call for arbitration in different places, then they "may well" be unenforceable. *Id.* But this is not an argument about whether the claims must be arbitrated, but rather about *where* the arbitration is to take place, and this is exactly the type of dispute that an arbitrator can—and must—resolve. *Zyppah, Inc. v. Allemeier*, 2018 WL 1932887, at *3 (D. Nev. Apr. 24, 2018) (issue of arbitral location for arbitrator, not court). Plaintiffs go on to suggest that the arbitration provisions may be unenforceable because the provisions vary as to where ***non-arbitrable claims*** should be litigated. Opp. at 5. But these manufactured conflicts—which Plaintiffs do not claim have any material bearing on this dispute—do not affect the fact that the Anthem Parties agreed to arbitrate in no fewer than four agreements.

Each of Plaintiffs' cases is inapplicable. *See Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 601 (N.D. Cal. 2007) (arbitration agreement "optional," and specific terms were unclear, so the court concluded, "while the parties may have agreed to the goal of arbitration, the terms on which this would occur were not settled" and were therefore not binding); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practs., & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 991-92 (C.D. Cal. 2012) (conflict between delegation provisions, including concerning non-binding arbitration, not arbitrability itself); *Ragab v. Howard*, 2015 WL 6662960, at *5 (D. Colo. Nov. 2, 2015) (noting 74 ways, including material ways, in which the arbitration clauses were ambiguous and inconsistent); *Johnson v. Walmart Inc.*, 57 F.4th 677, 681-82 (9th Cir. 2023) (applying California law to determine scope of arbitration clause).

Nor does Plaintiffs' undeveloped suggestion that the Terms of Sale and TUA are "contract[s] of adhesion," Opp. at 12, render either agreement unenforceable. Even if these agreements are properly characterized as contracts of adhesion (which they are not), they—as well as the arbitration clauses contained in them—would still be enforceable. *See James v. Nat'l Fin., LLC*, 132 A.3d 799, 832 (Del. Ch. 2016) ("[A] contract of adhesion is not unconscionable per se[.]" (citation omitted)). More importantly, even if these agreements were adhesive, it would not impact the enforceability of their arbitration provisions. *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1260 (Del. Super. 2001) ("Delaware law is being applied. That law recognizes that arbitration agreements, even in adhesion contracts, can effectively waive the right to a jury trial.").

## 1.    ATA

Contrary to Plaintiffs' new argument that this dispute does not touch on the ATA, Opp. at 9-10, Plaintiffs previously told the Court that the ATA is "foundational to the case." ECF No. 45 at 1. This argument is not only contrary to representations Plaintiffs made to the Court, it is also wrong. The Complaint alludes to the ATA (through the tokens Blue Anthem was awarded under it), and Plaintiffs' breach of contract claim appears to be based in part on the ATA. ECF No. 40 ("Mot.") at 11-12.

## 2.    Terms of Sale

Faced with the fact that Blue Anthem agreed to the Terms of Sale—and its mandatory arbitration clause—multiple times in connection with its purchase of all of the tokens at issue in this litigation, Plaintiffs seek to obscure that a substantial portion of the tokens at issue in this action were purchased *solely* pursuant to the Terms of Sale. Specifically, Blue Anthem's January 2025 purchase was subject to the Terms of Sale, and not the TPA. Plaintiffs do not refute that, and instead, they advance—in a footnote—the halfhearted argument that the November 2024 TPA somehow covers Blue Anthem's later January 2025 purchase of $WLFI tokens. Opp. at 10 n.5. This argument is based in nothing more than an apparent comparison between the purchase price for tokens from different rounds and a generic statement in the introductory portion of the TPA. *Id.* But the TPA only applies to Blue Anthem's November 2024 purchase: it sets forth the number of tokens purchased in November 2024 (two billion) and the aggregate purchase price ($30 million). *See* Alper Decl. Ex. 1 at 1. It then states that the agreement covers that enumerated number of Purchased Tokens for that Purchase Price. *Id.* Nowhere does the TPA indicate an intent to cover any subsequent transactions for that same price, nor have Plaintiffs shown any agreements between the parties that the TPA would cover Blue Anthem's January 2025 purchase of tokens.[3]

Moreover, contrary to Plaintiffs' argument, World Liberty has met its burden to show Blue Anthem's assent to the Terms of Sale. Opp. at 11-12. Notably, Plaintiffs do not contend that Blue

---

[3] Plaintiffs vaguely allude to unconscionability of the Terms of Sale. Opp. at 10-11. But Plaintiffs have not alleged that the Terms of Sale are unconscionable, and they are not. In any event, this is a question for the arbitrator. *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 881 (N.D. Cal. 2023).

13437-00001/18489895.1

Anthem did not assent to the Terms of Sale or its arbitration provision. Instead, Plaintiffs speculate that the Terms of Sale attached to the declaration of Corey Caplan may have differed from the Terms of Sale Blue Anthem assented to. *Id.* Plaintiffs identify no specific ways in which the Terms of Sale changed, let alone in a material way for this dispute. But in any event, the versions of the Terms of Sale and TUA attached to the Caplan Declaration were the versions in effect at the time Blue Anthem assented to them. Supp. Caplan Decl. ¶ 4. Plaintiffs also contend that the Caplan Declaration is somehow faulty because it uses the present tense. Opp. at 11. But the Caplan Declaration is clear that Blue Anthem went through the steps set forth in the declaration when it purchased the $WLFI tokens and that those token purchases would not have been possible if Blue Anthem had not completed those steps. ECF No. 40-6 ¶¶ 4-6, 8. The Caplan Declaration provides significantly more than "conclusory statements," Opp. at 11, about the manner in which Blue Anthem assented to the Terms of Sale, walking through the exact procedure Blue Anthem was required to follow before the transaction could be consummated and affirms that Blue Anthem completed those steps.

Plaintiffs' cases are all distinguishable. *See Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *5 (N.D. Cal. Oct. 19, 2020) (failure to show applicable agreement at relevant time and evidence was misleading and contradictory); *Henry v. Phixios Holdings, Inc.*, 2017 WL 2928034, at *10 (Del. Ch. July 10, 2017) (mere response to an email did not constitute assent); *Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) (browsewrap case where mere continued use of service did not constitute assent); *Kuhk v. Playstudios Inc.*, 2024 WL 4529263 (W.D. Wash. Oct. 18, 2024) (similar). Indeed, the evidence World Liberty has provided closely matches the evidence in the two cases in footnote 6 of the Opposition, both of which featured specific facts—unrebutted by the party resisting arbitration—showing that the party had assented to agreements to arbitrate. Opp. at 11 n.6. As the Court recognized in those cases, clickwrap agreements are "valid and enforceable." *Keller v. Chegg, Inc.*, 2023 WL 5279649, at *3 (N.D. Cal. Aug. 15, 2023).

### 3. TUA

Plaintiffs' arguments about a purported lack of evidence of assent fail for the same reasons as with regard to the Terms of Sale. Nor are Plaintiffs correct that this dispute does not touch upon

the TUA.  Opp. at 12-13.  Plaintiffs admit that the TUA "governs how token-holders unlock their tokens," *id.* at 12, which is the very issue at the heart of this dispute.  Plaintiffs' claims boil down to a complaint that they could not transfer or sell Blue Anthem's tokens when they would have liked to, which is an issue that would not exist but for the unlocking made possible through the TUA.  Plaintiffs seek to cast their claims as relating to the "economic and governance rights" related to the tokens, but those topics are inherently tied up in the transferability of the tokens, which never would have existed at all but for the ███ and TUA.  Furthermore, Plaintiffs admit that their claims relate to purported violations of the TUA, even if they are not bringing an express claim for breach of the TUA.  *Id.*  And this case centers around World Liberty's freezing of Blue Anthem's tokens, which is authorized by the TUA and ███.  Plaintiffs' arguments about the incorporation of the Terms of Service's arbitration provision should be given short shrift as it is beyond dispute that one agreement may incorporate by reference portions of another.  *Wilmington Sav. Fund Soc'y, F.S.B. v. Swanson*, 2016 WL 6948454, at *7 (Del. Super. Ct. Nov. 21, 2016)

**4.    ███**

Plaintiffs do not contend that the ███ is unenforceable and do not dispute that it covers most of the asserted claims.  Opp. at 13.  Their other arguments fail for the same reasons as above.

**D.    The Draft Arbitration Demand Unmistakably Shows These Claims Are Subject to Mandatory Arbitration**

Plaintiffs' detailed arbitration demand was an explicit admission that this dispute belongs in arbitration.  Mot. at 4-5, 13.  Plaintiffs' cases are inapposite and do not address a situation where—as here—a party has admitted claims are subject to mandatory arbitration.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277 (9th Cir. 2006) (party had previously objected to arbitration, including because dispute was not within scope of arbitration provision); *Openshaw v. FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987, 999 (C.D. Cal. 2010) (*pro se* party filed arbitration merely to preserve rights and as a result of impending statute of limitations expiration).  Nor are Plaintiffs correct that their draft demand materially differs from their complaint.  Both the arbitration demand and the complaint concern Blue Anthem's purchase of $WLFI tokens, the unlocking through the ███, and World Liberty's freezing of those tokens.  *See, e.g.,* Compl. ¶¶ 65-66, 75,

-9-    Civil Action No. 3:26-cv-3360-JD

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION TO COMPEL ARBITRATION

161-95.  The complaint contains many of the same claims as in the draft demand.  *Id.*  The draft arbitration demand—like the complaint—discusses the TPA, *see, e.g.*, ECF No. 40-10 ¶¶ 25, 49, 51, 70, 111, and certain claims in the arbitration demand  are expressly based in the TPA.  Yet Plaintiffs still acknowledged that the dispute was subject to mandatory arbitration through the ██ .

### E.       The Parties Delegated Arbitrability to the Arbitrator

Plaintiffs again seek to avoid their obligation to arbitrate these claims by weaponizing purported confusion that results from the very fact that the Anthem Parties agreed to arbitrate in so many separate documents.   There is no confusion, as Plaintiffs suggest, and the arbitration agreements delegate the issue of arbitrability to the arbitrator.  Mot. at 8-9.  Plaintiffs' cases are not on point:  *SEIU Loc. 121RN v. Los Robles Reg'l Med. Ctr.*, 976 F.3d 849, 861 (9th Cir. 2020) (party failed to show delegation of question of arbitrability); *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) (later-in-time contract had forum selection clause requiring litigation in court).

### F.       The Court Should Stay Any Remaining Portion of the Case

If Sun's claims are not dismissed, they should be stayed.  Plaintiffs' single sentence of argumentation misses the mark.  Plaintiffs do not explain what the "TPA-related claims" are, nor are the claims severable in the way Plaintiffs propose.  Even crediting Plaintiffs' arbitrary and unsupported severing of their claims, there is no reason any purported "TPA-related claims" need to be litigated now, as opposed to following the arbitration.  Maintaining a parallel litigation and arbitration for "TPA claims" and "██ claims" would be administratively infeasible; an enormous waste of the Court's, the Arbitrator's, and the parties' time and resources; and would pose an unacceptably high risk of conflicting rulings.  Finally, Plaintiffs fail to explain their (incorrect) view that a stay would not simplify the case or promote efficiency.  This conclusory and undeveloped argumentation should be disregarded.

## III.     CONCLUSION

For the foreground reasons, the Court should grant Defendant's Motion to Compel Arbitration, compel Blue Anthem Limited and Black Anthem Limited to arbitrate their claims, and stay any claims brought by Yuchen (Justin) Sun if those claims are not dismissed.

DATED: July 28, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ James D. Judah
    James D. Judah (Bar No. 257112)
    jamesjudah@quinnemanuel.com
    50 California Street, 22nd Floor
    San Francisco, CA 94111
    Tel:    (415) 875-6600
    Fax:    (415) 875-6700

    William A. Burck (admitted *pro hac vice*)
    williamburck@quinnemanuel.com
    555 13th Street NW, Suite 600
    Washington, D.C. 20004
    Tel:    (202) 538-8000
    Fax:    (202) 538-8100

    Rajat Rana (admitted *pro hac vice*)
    Sam Cleveland (admitted *pro hac vice*)
    rajatrana@quinnemanuel.com
    samcleveland@quinnemanuel.com
    295 Fifth Avenue
    New York, NY 10016
    Tel:    (212) 849-7000
    Fax:    (212) 849-7100

    *Attorneys for Defendant World Liberty Financial LLC*

13437-00001/18489895.1

Civil Action No. 3:26-cv-3360-JD

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION TO COMPEL ARBITRATION