**CAHILL GORDON & REINDEL LLP**
SAMSON A. ENZER (admitted *pro hac vice*)
senzer@cahill.com
HERBERT S. WASHER (admitted *pro hac vice*)
hwasher@cahill.com
EDWARD N. MOSS (admitted *pro hac vice*)
emoss@cahill.com
JOHN S. MACGREGOR - # 304330
jmacgregor@cahill.com
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

**KEKER, VAN NEST & PETERS LLP**
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
GAYATRI V. PARANJAPE - # 345933
gparanjape@keker.com
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

CAHILL GORDON & REINDEL LLP
GREGORY STRONG (admitted *pro hac vice*)
gstrong@cahill.com
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 884-0001

Attorneys for Plaintiffs YUCHEN "JUSTIN" SUN, BLUE ANTHEM LIMITED, and BLACK ANTHEM LIMITED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YUCHEN "JUSTIN" SUN;<br>BLUE ANTHEM LIMITED; and<br>BLACK ANTHEM LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.),<br><br>Defendant. | Case No. 26-cv-3360<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>Judge: Hon. James Donato<br><br>Hearing Date: December 10, 2026<br>Hearing Time: 11:00 AM<br><br>Trial Date: None set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 10, 2026, at 11:00 AM, or as soon thereafter as the matter can be heard, in Courtroom 11, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Yuchen "Justin" Sun ("Sun"), Blue Anthem Limited ("Blue Anthem"), and Black Anthem Limited ("Black Anthem") will and hereby do move (the "Motion") this Court for the imposition of sanctions pursuant to the Court's inherent sanctions power and 28 U.S.C. § 1927, together with such other and further relief as the Court deems just and proper.

This Motion is based on this Notice of Motion and Motion, the Declaration of Edward N. Moss and the exhibits attached thereto, the Memorandum of Law in Support of Plaintiffs' Motion for Sanctions, and all pleadings and other papers on file in this action.

Dated: November 2, 2026
New York, NY

CAHILL GORDON & REINDEL LLP

By: */s/ Samson A. Enzer*
Samson A. Enzer (admitted *PHV*)
Herbert S. Washer (admitted *PHV*)
Edward N. Moss (admitted *PHV*)
John S. MacGregor (No. 304330)
senzer@cahill.com
hwasher@cahill.com
emoss@cahill.com
jmacgregor@cahill.com
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000

Gregory Strong (admitted *PHV*)
gstrong@cahill.com
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 884-0001

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (No. 84065)
Steven P. Ragland (No. 221076)
Brook Dooley (No. 230423)
Gayatri V. Paranjape (No. 345933)
rvannest@keker.com

sragland@keker.com
bdooley@keker.com
gparanjape@keker.com
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400

*Attorneys for Plaintiffs*

**CAHILL GORDON & REINDEL LLP**
SAMSON A. ENZER (admitted *pro hac vice*)
senzer@cahill.com
HERBERT S. WASHER (admitted *pro hac vice*)
hwasher@cahill.com
EDWARD N. MOSS (admitted *pro hac vice*)
emoss@cahill.com
JOHN S. MACGREGOR - # 304330
jmacgregor@cahill.com
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

**KEKER, VAN NEST & PETERS LLP**
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
GAYATRI V. PARANJAPE - # 345933
gparanjape@keker.com
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

CAHILL GORDON & REINDEL LLP
GREGORY STRONG (admitted *pro hac vice*)
gstrong@cahill.com
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 884-0001

Attorneys for Plaintiffs YUCHEN "JUSTIN" SUN, BLUE ANTHEM LIMITED, and BLACK ANTHEM LIMITED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

YUCHEN "JUSTIN" SUN;
BLUE ANTHEM LIMITED; and
BLACK ANTHEM LIMITED,

Plaintiffs,

v.

WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.),

Defendant.

Case No. 26-cv-3360

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS**

Judge: Hon. James Donato

Hearing Date: December 10, 2026
Hearing Time: 11:00 AM

Trial Date: None set

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ........................................................................... 2

ARGUMENT ........................................................................... 5

I. WORLD LIBERTY'S INITIAL DISCLOSURE IS SANCTIONABLE .......................... 6

A. The Initial Disclosure Inexplicably Omitted Required Information .................... 6

B. Sanctions Are Appropriate Under This Court's Inherent Powers ........................ 7

C. Sanctions Are Warranted Pursuant to Section 1927 ........................................... 7

D. The Conduct Violated Rule 11 ........................................................................... 8

II. MONETARY SANCTIONS ARE APPROPRIATE ................................................... 10

CONCLUSION ........................................................................... 11

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Caputo* v. *Tungsten Heavy Powder, Inc.*,
96 F.4th 1111 (9th Cir. 2024) ........ 8

*Chambers* v. *NASCO, Inc.*,
501 U.S. 32 (1991) ........ 2, 7, 9

*Cont'l Air Lines, Inc.* v. *Grp. Sys. Int'l Far E., Ltd.*,
109 F.R.D. 594 (C.D. Cal. 1986) ........ 10n

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ........ 2, 7, 10

*In re Girardi*,
611 F.3d 1027 (9th Cir. 2010) ........ 8

*Hendrix* v. *Naphtal*,
971 F.2d 398 (9th Cir. 1992) ........ 9, 10

*Hyde* v. *Irish*,
962 F.3d 1306 (11th Cir. 2020) ........ 6

*Itel Containers Int'l Corp.* v. *P.R. Marine Mgmt., Inc.*,
108 F.R.D. 96 (D.N.J. 1985) ........ 8

*Knickerbocker* v. *Corinthian Colleges*,
298 F.R.D. 670 (W.D. Wash. 2014) ........ 7

*Lake* v. *Gates*,
130 F.4th 1064 (9th Cir. 2025) ........ 6, 8, 10

*Larson* v. *White Mountain Grp. LLC*,
2011 WL 5592911 (D. Ariz. Nov. 17, 2011) ........ 9, 10

*Oneto* v. *Watson*,
808 F. Supp. 3d 974 (N.D. Cal. 2025) ........ 9

*Panzarella Consulting, LLC* v. *Single Touch Interactive, Inc.*,
2011 WL 1626574 (D. Nev. Apr. 28, 2011) ........ 7

*Primus Auto. Fin. Servs., Inc.* v. *Batarse*,
115 F.3d 644 (9th Cir. 1997) ........ 7

*Rowland* v. *Watchtower Bible & Tract Soc'y of N.Y., Inc.*,
142 F.4th 1169 (9th Cir. 2025) ........ 8

*Smith* v. *Ricks*,
31 F.3d 1478 (9th Cir. 1994) ........................................................................................9

*Willy* v. *Coastal Corp.*,
503 U.S. 131 (1992)........................................................................................................6

*Wymer* v. *Lessin*,
109 F.R.D. 114 (D.D.C. 1985)....................................................................................10n

*Xped LLC* v. *Entities Listed on Exhibit 1*,
690 F. Supp. 3d 831 (N.D. Ill. 2023) ............................................................................7

## PRELIMINARY STATEMENT[1]

World Liberty admits that it has violated one of the most basic requirements of this Court—the obligation under Civil Local Rule 3-15 ("Local Rule 3-15") to disclose complete and accurate information about a party's citizenship so that the litigants and the Court can determine at the beginning of a case whether diversity jurisdiction exists. The rule is plain on its face and easy to follow, particularly for a business with an apparently global network of investors like World Liberty, represented by experienced and capable counsel. Yet by their own admission, World Liberty and its counsel have not complied. As detailed below, that failure is sanctionable.

At the outset of this case, World Liberty filed a corporate disclosure statement disclosing ***only one entity*** in its entire membership chain and claiming to be a citizen of only Florida. (ECF No. 42). But months later—after Plaintiffs had spent hundreds of thousands of dollars litigating, and just days after World Liberty had learned that the Court was not inclined to grant its request to move this entire case into confidential arbitration—World Liberty changed its tune and filed a supplement disclosing that instead of one, there were actually ***22 members*** in World Liberty's membership chain. That belated disclosure—which includes the revelation that, in addition to Florida, World Liberty is also a citizen of Delaware, Puerto Rico, and the United Arab Emirates ("UAE")—means that this Court would lack subject matter jurisdiction.

According to World Liberty, its own initial disclosure was false, yet it is unclear why. World Liberty obviously always knew what its citizenship was. And while its lawyers assert that they discovered World Liberty was actually a citizen of the UAE only after the initial false filing, they refused to answer Plaintiffs' basic discovery requests for evidence to substantiate that claim. Given the circumstances—the plainly false initial disclosure, the stark difference between that disclosure and the supplement, the timing of the supplement, and the refusal to explain how or why the initial false filing was allowed to occur—the false disclosure was the result of (at a minimum) recklessness. Thus, in addition to violating Local Rule 3-15, World Liberty and its counsel violated well-settled ethical rules that require parties and counsel to ensure the accuracy of all federal court filings, avoid

[1] Unless otherwise noted, all emphasis is added, and all brackets, quotations, and citations omitted.

unreasonable and vexatious multiplication of proceedings, and refrain from making recklessly or knowingly false statements. This conduct is sanctionable on several grounds.

First, pursuant to its inherent powers, this Court is authorized to discipline parties and counsel who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), including a party that "misrepresents the law or the facts to the court," *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 925 (N.D. Cal. 2023). Next, Section 1927 of Title 28 of the United States Code authorizes this Court to order lawyers practicing before it "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" where, as here, their conduct "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Finally, the Court may sanction parties and counsel under Federal Rule of Civil Procedure 11 ("Rule 11") for failure to ensure that all "factual contentions" contained in "representations to the Court" have "evidentiary support," formed after a reasonable inquiry. Fed. R. Civ. P. 11(b)(3), (c)(3).[2]

Here, by filing a disclosure that lacked evidentiary support, World Liberty misrepresented the facts to this Court, and that misrepresentation unreasonably multiplied the proceedings. If World Liberty and its counsel had just followed the rule in the first place, Plaintiffs would not have been forced to brief—and the Court would not have had to expend resources to consider—the motion to compel arbitration. Plaintiffs spent hundreds of thousands of dollars litigating that motion, and now—with subject matter jurisdiction lacking—Plaintiffs will have to refile this case in California state court. There will undoubtedly be a whole new round of briefing in state court, and Plaintiffs should not have to pay their lawyers twice because a basic rule of this Court was violated.

For these and the other reasons below, this Court can—and should—impose monetary sanctions, including reimbursement of Plaintiffs' attorneys' fees.

## FACTUAL BACKGROUND

Plaintiffs allege that World Liberty defrauded them into purchasing $WLFI tokens for tens

[2] While the conduct here violates Rule 11, Plaintiffs do not move under Rule 11(c)(2) because there is no filing that may be withdrawn now that the supplemental disclosure has been filed.

of millions of dollars pursuant to a November 2024 Token Purchase Agreement ("TPA") and then illegally seized their property. Because the TPA requires litigation and not arbitration, Plaintiffs filed their Complaint in this Court on April 21, 2026, bringing fraud, contract, and related claims. (ECF No. 1). Plaintiffs asserted federal subject matter jurisdiction based solely on diversity of citizenship. (*Id.* ¶ 23). On June 2, 2026, World Liberty filed motions to compel arbitration and dismiss the Complaint. (ECF Nos. 40, 41). In those motions, World Liberty never contended that this Court lacked subject matter jurisdiction. That same day, World Liberty filed its Initial Disclosure under Federal Rule of Civil Procedure 7.1 ("Rule 7.1") and Local Rule 3-15 (the "Initial Disclosure"). (ECF No. 42).

Those rules require parties in diversity cases to give complete, accurate information about their citizenship to make sure subject matter jurisdiction exists. Local Rule 3-15 requires each party to "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party." N.D. Cal. Civ. L.R. 3-15(b)(3). If a party—like World Liberty—is a "limited liability corporation, the statement must disclose the identity and citizenship of such entity's members." *Id.* 3-15(b)(3)(i). And "[i]f any of those members is itself a limited partnership, limited liability partnership, limited corporation, or limited liability corporation, the statement must disclose the identity and citizenship of that member's members." *Id.* "This disclosure must continue through any chain of membership until all persons or entities whose citizenship is attributed to the party have been identified." *Id.*

In the Initial Disclosure, World Liberty represented to the Court that (i) World Liberty itself was the ***only*** person or entity in the membership chain whose citizenship required disclosure (even though the disclosure separately identified WLF Holdco LLC as World Liberty's "parent corporation"), and (ii) World Liberty was a citizen of ***only*** Florida. (ECF No. 42 at 1). The Initial Disclosure concluded with a signed statement that counsel was "unaware of any other parties that must be disclosed pursuant to Federal Rule of Civil Procedure 7.1 or Local Rule 3-15." (*Id.*).

The Initial Disclosure thus reflected that the parties were diverse and, as a result, this Court had subject matter jurisdiction. Accordingly, the parties proceeded to litigate World Liberty's arbitration motion, a process that took months and cost Plaintiffs hundreds of thousands of dollars.

Plaintiffs filed their Opposition to World Liberty's motion to compel arbitration on July 14, 2026 (ECF No. 49), and World Liberty filed its reply on July 28, 2026 (ECF No. 55). This Court heard argument on August 20, 2026. At that hearing, the Court took issue with World Liberty's arguments in important respects. (*See* Ex. 1, Hearing Tr. at 9:6-18, 12:2-13, 13:18-14:1, 15:5-14).[3] For instance, the Court remarked that some of Plaintiffs' claims arise under the TPA and have "nothing to do with" a later agreement relied on by World Liberty to compel arbitration. (*Id.* at 12:6). The Court was direct: "I'm not hearing any reason that would make these claims subject to" an "arbitration clause." (*Id.* at 12:12-13). The Court ordered the parties to meet and confer and submit a joint filing one week later—by August 27, 2026—agreeing which claims should go to arbitration and which should remain in federal court. (*Id.* at 15:1-17:24, 18:24-19:23; ECF No. 64).

When counsel for the parties initially met and conferred, World Liberty and its counsel insisted that ***all*** of the claims at issue should be arbitrated. (Ex. 2). When Plaintiffs' counsel objected and tried to resolve the dispute, World Liberty and its counsel did not budge. Then, on August 26, 2026—the day before the parties' joint submission was due and while the parties were sparring about which disputed claims should stay in this Court—World Liberty filed a supplemental corporate disclosure statement (the "Supplemental Disclosure"). (ECF No. 66). Unlike the Initial Disclosure, which identified only one entity, the Supplemental Disclosure identified ***22 persons and entities*** whose citizenship was purportedly attributable to World Liberty. The citizenship of those persons and entities included not only Florida, but also Delaware, Puerto Rico, and the UAE. That same day, World Liberty's counsel emailed Plaintiffs' counsel, stating that the firm only "recently" had become aware of this "additional information relevant to World Liberty's citizenship." (*See* Ex. 3). The email further asserted that this Court lacks subject matter jurisdiction because diversity is incomplete, since both World Liberty and Plaintiffs are citizens of foreign states. (*See id.*).

The timing of this revelation is concerning. World Liberty failed to disclose this key information until more than four months after Plaintiffs filed this action, nearly three months after World Liberty filed the Initial Disclosure and motion to compel arbitration, and more than six weeks

[3] "Ex. __" citations refer to the exhibits to the Declaration of Edward N. Moss filed with this motion.

after Plaintiffs filed their Opposition to the arbitration motion. Yet the Supplemental Disclosure came less than a week after this Court disagreed with some of World Liberty's core arguments in favor of arbitration—and right when World Liberty was refusing to meet and confer in good faith on which claims should stay in court. In light of this new disclosure, the parties agreed on a path forward, and on August 27, 2026, filed a stipulation that expressly required World Liberty to provide "discovery sufficient to satisfy Plaintiffs regarding the citizenship of Defendant as relevant to the Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(2)." (ECF No. 67 ¶ 1).

Given the timing of the Supplemental Disclosure, Plaintiffs requested targeted discovery, including: (i) documentation demonstrating that World Liberty was a UAE citizen when the Complaint was filed; (ii) a limited deposition of a World Liberty representative to verify the company's membership structure and citizenship at the time of filing; (iii) an explanation of when counsel first became aware that World Liberty was a UAE citizen; (iv) what investigation or diligence counsel conducted before filing the Initial Disclosure; and (v) what additional information subsequently came to light, when, and from whom. (Exs. 3-5).

But on September 11, 2026, World Liberty and its counsel changed course, taking the position that formal discovery requests were neither "necessary" nor "provided for under the parties' stipulation." (*See* Ex. 6). World Liberty did ultimately produce limited documentation on the citizenship issue. (Ex. 7). However, World Liberty refused the request for a deposition to obtain additional, sworn information about the documentation it had provided and—importantly for purposes of this application—it also refused to provide ***any*** information about counsel's supposed investigation, or how or why counsel did not learn of World Liberty's UAE citizenship until the parties had litigated for months. (Exs. 8-10).

## ARGUMENT

World Liberty and its counsel filed a disclosure about World Liberty's citizenship that they themselves now contend was false, and which could not possibly have been based on a reasonable inquiry. That filing led the Court and Plaintiffs to waste substantial time and resources on months of litigation before World Liberty finally made a correction—the timing of which smacks of gamesmanship—based on asserted facts World Liberty knew, and counsel could have and should

have discovered, from the very beginning. That is the paradigm of sanctionable conduct.

This Court can impose sanctions even if it dismisses the underlying case for lack of subject matter jurisdiction. *See Willy* v. *Coastal Corp.*, 503 U.S. 131, 137-39 (1992); *Hyde* v. *Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020); *Lake* v. *Gates*, 130 F.4th 1064, 1067 (9th Cir. 2025). Thus, litigants cannot escape accountability through dismissal where, as here, their actions warrant monetary sanctions under this Court's inherent powers, Section 1927, or Rule 11.

## I. WORLD LIBERTY'S INITIAL DISCLOSURE IS SANCTIONABLE

### A. The Initial Disclosure Inexplicably Omitted Required Information

World Liberty's obligations in filing the Initial Disclosure were plain. Local Rule 3-15 provided clear instructions: in diversity cases, an LLC must disclose the identity and citizenship of each of its members—and, if any member is itself an LLC or similar organization, the disclosure must continue through the chain of membership until it terminates in one or more individuals, traditional corporations, or comparable entities. N.D. Cal. Civ. L.R. 3-15(b)(3)(i).

Instead, World Liberty filed an Initial Disclosure representing to the Court and Plaintiffs that World Liberty was a citizen of Florida and that counsel was "unaware of any other parties that must be disclosed pursuant to Federal Rule of Civil Procedure 7.1 or Local Rule 3-15." (ECF No. 42 at 1). That disclosure was apparently untrue—and not even close: the Supplemental Disclosure listed ***22*** entities and individuals (*see* ECF No. 66), which any reasonable inquiry plainly would have revealed the first time around.[4]

World Liberty thus frustrated a key purpose of Rule 7.1 and Local Rule 3-15. Those rules require parties to provide essential information about diversity jurisdiction at the beginning of a case, ***before*** the Court and parties waste time and money litigating a dispute the Court lacks jurisdiction to decide. Indeed, the Advisory Committee Notes to the 2022 amendment to Rule 7.1 explain that because an LLC "takes on the citizenship of each of its owners"—and a plaintiff may not know each

---

[4] Of course, if counsel did make a reasonable inquiry and World Liberty withheld that information from its lawyers, that deceit is itself sanctionable. Plaintiffs cannot say what actually happened, however, because World Liberty and its counsel refused to answer discovery requests seeking this information.

constituent's citizenship at the pleading stage—prompt "disclosure is necessary both to ensure that diversity jurisdiction exists ***and to protect against the waste that may occur upon belated discovery of a diversity-destroying citizenship***." Local Rule 3-15 reinforces this obligation through its specific disclosure requirements for LLCs in diversity cases. The Supplemental Disclosure is precisely the type of "belated discovery" that the rules are designed to prevent.

**B. Sanctions Are Appropriate Under This Court's Inherent Powers**

The Court can and should award sanctions under its inherent powers, a source of disciplinary authority against parties and counsel who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Chambers*, 501 U.S. at 45-46. "That standard may be met when a party misrepresents the law or the facts to the court." *In re Facebook*, 655 F. Supp. 3d at 925. It can also be met where a party "recklessly raises a frivolous argument." *Primus Auto. Fin. Servs., Inc.* v. *Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).

That is precisely what the Initial Disclosure did here: it represented that World Liberty's citizenship was limited to Florida, only for World Liberty to "correct" that months later in a supplemental filing that (i) proves the Initial Disclosure lacked any reasonable basis and (ii) raises compelling inferences of gamesmanship and bad faith. *See Knickerbocker* v. *Corinthian Colleges*, 298 F.R.D. 670, 681 (W.D. Wash. 2014) (imposing sanctions under court's inherent powers where, among other things, defendant and its counsel conducted lackluster document search and relied on a "recklessly false declaration"); *cf. Panzarella Consulting, LLC* v. *Single Touch Interactive, Inc.*, 2011 WL 1626574, at *2 (D. Nev. Apr. 28, 2011) (same, where "[a] minimally competent attorney should know the basic law of diversity jurisdiction"); *Xped LLC* v. *Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 853 (N.D. Ill. 2023) (same, where "a reasonably careful attorney" would have known his client's principal place of business).

**C. Sanctions Are Warranted Pursuant to Section 1927**

The Initial Disclosure independently warrants attorney sanctions under Section 1927 of Title 28 of the United States Code. Section 1927 authorizes this Court to order lawyers practicing before it "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" where, as here, their conduct "multiplies the proceedings in any case unreasonably and vexatiously." 28

U.S.C. § 1927. Section 1927 sanctions are available where an "attorney recklessly or intentionally misled the court" or "recklessly raised a frivolous argument which resulted in the multiplication of the proceedings." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). Frivolous arguments are "ones that are baseless and made without reasonable and competent inquiry." *Caputo* v. *Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1155 (9th Cir. 2024).

The conduct of World Liberty's attorneys merits sanctions under these standards. Judging by the contents of the Supplemental Disclosure, counsel at least recklessly misled the Court and took a baseless position about World Liberty's citizenship "without reasonable and competent inquiry." *Id.* This needlessly multiplied these proceedings, requiring Plaintiffs to litigate for months and waste hundreds of thousands of dollars before the Supplemental Disclosure raised a jurisdictional issue—just six days after this Court had signaled its inclination to retain key parts of this case. That is sanctionable conduct under the law in this Circuit. *Accord Lake*, 130 F.4th at 1070-71 (affirming Section 1927 sanctions where "[t]he timing of the motion further supports" the district court's finding that counsel's conduct "was reckless and met the standard for bad faith under § 1927"); *see also Rowland* v. *Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 142 F.4th 1169, 1170 (9th Cir. 2025) (affirming Section 1927 sanctions against attorney who submitted affidavit that "demonstrated a reckless disregard for providing an accurate and truthful accounting of facts relevant to determining whether the court had personal jurisdiction over defendant"); *Itel Containers Int'l Corp.* v. *P.R. Marine Mgmt., Inc.*, 108 F.R.D. 96, 103-04 (D.N.J. 1985) (imposing Section 1927 sanctions where counsel actively litigated while concealing lack of diversity jurisdiction).

**D. The Conduct Violated Rule 11**

Plaintiffs do not move for sanctions under Rule 11(c)(2), only because the mechanics of the 21-day safe harbor provision do not fit the circumstance. There is no offending filing that could be withdrawn because the Supplemental Disclosure already replaces the false Initial Disclosure. *See* Fed. R. Civ. P. 11(c)(2) (motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets"). However, World Liberty and its counsel are still bound by Rule 11's prescriptions, and it is still within the Court's power to impose sanctions

*sua sponte* under Rule 11. *See* Fed. R. Civ. P. 11(c)(3); *see also Oneto* v. *Watson*, 808 F. Supp. 3d 974, 977-80 (N.D. Cal. 2025) (imposing sanctions *sua sponte* based on rationale that attorney's lack of "reasonable inquiry" met standard for contempt of court).

Like Rule 7.1 and Local Rule 3-15, Rule 11 is plain on its face and easy to follow. It says that a lawyer who files a paper in a federal court "***certifies***" that "the factual contentions have evidentiary support," to "the best of the person's knowledge, information, and belief, formed ***after an inquiry reasonable under the circumstances***." Fed. R. Civ. P. 11(b). The reasonable-inquiry test is objective—subjective bad faith is unnecessary. *See Chambers*, 501 U.S. at 47; *see also Oneto*, 808 F. Supp. 3d at 977-80 (imposing Rule 11 sanctions *sua sponte* based on objective standard). Counsel cannot "avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Smith* v. *Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994).

As stated above, the Initial Disclosure was objectively unreasonable: it omitted extensive information about World Liberty's citizenship that suddenly materialized in the Supplemental Disclosure. The least troubling explanation is that counsel failed to ask World Liberty for the required information before filing the Initial Disclosure. But even that is sanctionable.

The Ninth Circuit has upheld Rule 11 sanctions in similar circumstances. In *Hendrix* v. *Naphtal*, for example, counsel failed to uncover an easily discoverable lack of diversity before filing a federal complaint. 971 F.2d 398, 399-400 (9th Cir. 1992). Counsel did not "conduct a reasonable investigation of the client's domicile," which the client would have revealed if counsel had asked "sufficiently detailed questions about the client's physical presence." *Id.* at 400. And "because the client had [multiple] possible domiciles," a "reasonable attorney should have made extra efforts to establish his actual citizenship." *Id.* at 399. But counsel there made no such efforts. *Id.* at 399-400. Similarly, in *Larson* v. *White Mountain Grp. LLC*, 2011 WL 5592911 (D. Ariz. Nov. 17, 2011), the court granted sanctions where plaintiff's counsel repeatedly maintained that diversity jurisdiction existed because the defendant LLC was incorporated in Delaware, "[w]ithout discussing either the law establishing that an LLC is a citizen of each of its members" or addressing defendants' assertions that both plaintiff and at least one of defendant's members were citizens of the same state. *Id.* at *5. Critically, the court noted it was "unclear" whether counsel did this "because of strategy or

incompetence," but imposed sanctions regardless. *Id.* at *6.[5]

The conduct at issue here is no more defensible. Just as counsel in *Hendrix* failed to ask "sufficiently detailed questions" about his client's domicile despite multiple possible citizenships, 971 F.2d at 399-400, counsel here apparently failed to ask World Liberty about its chain of membership—even though Local Rule 3-15 expressly required that information. Moreover, as in *Larson*, the Initial Disclosure was filed without regard to the black-letter law that an LLC takes on the citizenship of each of its members—not its state of organization. Whether the failure reflects "strategy or incompetence" is immaterial; either is sanctionable. 2011 WL 5592911, at *5-6. And if this Court determines that World Liberty "is responsible" for the lack of reasonable factual support for the Initial Disclosure, sanctions are in order against it as well. Fed. R. Civ. P. 11(c)(1).

## II. MONETARY SANCTIONS ARE APPROPRIATE

The Court has discretion to impose monetary sanctions under its inherent powers, Section 1927, and Rule 11. *See Lake*, 130 F.4th at 1067-70 (affirming attorneys' fees sanctions under Rule 11 and Section 1927 against lead counsel for false, misleading, and unsupported factual assertions made without reasonable inquiry and for acting in bad faith); *In re Facebook*, 655 F. Supp. 3d at 936 (same, under court's inherent powers). Here, Plaintiffs request reasonable attorneys' fees and costs in the amount of $263,821.20 only for opposing the motion to compel arbitration, including drafting the opposition brief and preparing for and attending the August 20, 2026 hearing on that motion. The requested amount is under-inclusive since it includes only fees for the core team working on this task—four lawyers from Cahill Gordon & Reindel LLP—even though other Cahill lawyers, as well as lawyers from Keker, Van Nest & Peters LLP, also worked on the motion and related tasks. Moreover, Plaintiffs are not seeking fees for (i) the post-argument meet-and-confers and limited jurisdictional discovery, including propounding Plaintiffs' discovery requests; or (ii) preparing,

---

[5] *See also Cont'l Air Lines, Inc.* v. *Grp. Sys. Int'l Far E., Ltd.*, 109 F.R.D. 594, 597-98 (C.D. Cal. 1986) (Tashima, J.) (imposing sanctions where defense counsel failed to conduct inquiry into "all reasonably available facts within the knowledge of the client" relevant to personal jurisdiction); *Wymer* v. *Lessin*, 109 F.R.D. 114, 116 (D.D.C. 1985) (same, where defense "counsel failed to make a reasonable inquiry about [defendant's] citizenship" prior to filing an answer, which violated counsel's "obligations under Rule 11" and "caused unnecessary expenditures of time and effort and the delay of this trial").

serving, and filing this motion.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for sanctions, award Plaintiffs their fees and costs incurred as a result of the conduct described above, and award any such other relief as the Court deems just and proper.

Dated: November 2, 2026
New York, NY

**CAHILL GORDON & REINDEL LLP**

By: */s/ Samson A. Enzer*
Samson A. Enzer (admitted *PHV*)
Herbert S. Washer (admitted *PHV*)
Edward N. Moss (admitted *PHV*)
John S. MacGregor (No. 304330)
senzer@cahill.com
hwasher@cahill.com
emoss@cahill.com
jmacgregor@cahill.com
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000

Gregory Strong (admitted *PHV*)
gstrong@cahill.com
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 884-0001

**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (No. 84065)
Steven P. Ragland (No. 221076)
Brook Dooley (No. 230423)
Gayatri V. Paranjape (No. 345933)
rvannest@keker.com
sragland@keker.com
bdooley@keker.com
gparanjape@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

*Attorneys for Plaintiffs*