QUINN EMANUEL URQUHART & SULLIVAN LLP
James D. Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

William A. Burck (admitted *pro hac vice*)
williamburck@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Tel: (202) 538-8000
Fax: (202) 538-8100

Rajat Rana (admitted *pro hac vice*)
Sam Cleveland (admitted *pro hac vice*)
rajatrana@quinnemanuel.com
samcleveland@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendant World Liberty Financial LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUCHEN "JUSTIN" SUN; BLUE ANTHEM LIMITED; and BLACK ANTHEM LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.),<br><br>Defendant. | Civil Action No. 3:26-cv-3360-JD<br><br>**DEFENDANT WORLD LIBERTY FINANCIAL LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Date: December 10, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11<br><br>The Honorable James Donato<br><br>Trial Date: Not Set |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Plaintiffs Acknowledge the Parties' Arbitration Agreements, Then Sue in Federal Court ..... 2

B. World Liberty Files Its Motion to Dismiss, Motion To Compel Arbitration, and Initial Disclosure ..... 3

C. World Liberty's Counsel Discovers the Error Before the Arbitration Hearing and Promptly Supplements ..... 4

D. The Court Hears the Motion to Compel While Counsel's Investigation Is Underway ..... 4

E. The Parties Meet and Confer and Stipulate to a Procedure for Jurisdictional Discovery and Dismissal and/or Amendment of the Complaint ..... 5

F. World Liberty Provides the Stipulated Jurisdictional Discovery, But Instead of Dismissing the Complaint, Plaintiffs File a Motion for Sanctions ..... 6

III. ARGUMENT ..... 6

A. Sanctions Are Not Warranted Under This Court's Inherent Authority ..... 6

B. Section 1927 Sanctions Fail for the Same Reasons ..... 11

C. Plaintiffs Cannot Evade Rule 11's Safe Harbor by Inviting Sua Sponte Sanctions ..... 12

D. Plaintiffs' Motion is Untimely Under Local Rule 7-8 ..... 14

E. Plaintiffs' Fee Request Fails *Goodyear's* But-For Causation Requirement ..... 15

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arroyo v. Yard House Irvine Spectrum, LLC*, 2024 WL 245626 (C.D. Cal. Jan. 19, 2024) .... 7

*Atkins Nuclear Secured, LLC v. Aptim Fed. Servs., LLC*, 2019 WL 1793137 (E.D. Va. Apr. 24, 2019) .... 8, 9

*Augustyniak Ins. Grp., Inc. v. Astonish Results L.P.*, 2013 WL 998770 (D.R.I. Mar. 13, 2013) .... 8, 9, 10

*Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111 (9th Cir. 2024) .... 12

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .... 10

*Demissie v. Ford*, 2026 WL 446479 (D. Nev. Feb. 13, 2026) .... 7

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899 (N.D. Cal. 2023) .... 10

*In re Girardi*, 611 F.3d 1027 (9th Cir. 2010) .... 12

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) .... 15

*Itel Containers Int'l Corp. v. P.R. Marine Mgmt., Inc.*, 108 F.R.D. 96 (D.N.J. 1985) .... 12

*Jalalian v. JPMorgan Chase Bank, N.A.*, 2025 WL 3124080 (N.D. Cal. Nov. 7, 2025) .... 11

*In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431 (9th Cir. 1996) .... 7, 11

*Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670 (W.D. Wash. 2014) .... 10

*Koeller v. Nixplay, Inc.*, 2026 WL 63630 (N.D. Cal. Jan. 8, 2026) .... 8

*Larson v. White Moutain Grp.*, 2011 WL 5592911 (D. Ariz. Nov. 17, 2011) .... 13

*Lofton v. Verizon Wireless (VAW) LLC*,
308 F.R.D. 276 (N.D. Cal. 2015) ........ 6

*McAuslin v. Grinnell Corp.*,
2000 WL 726886 (E.D. La. June 5, 2000) ........ 8

*Meadow v. Goodrich Corp.*,
853 Fed. App'x 184 (9th Cir. 2021) ........ 11

*Miller v. City of Los Angeles*,
661 F.3d 1024 (9th Cir. 2011) ........ 7, 11

*Montrose Chemical Corp. v. American. Motorists Insurance Co.*,
117 F.3d 1128 (9th Cir. 1997) ........ 7, 14

*Oneto v. Watson*,
808 F. Supp. 3d 974 (N.D. Cal. 2025) ........ 13

*OWC Santa Cruz Mfg LLC v. Lochhead*,
2021 WL 2156483 (N.D. Cal. May 27, 2021) ........ 7, 8, 11, 14

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) ........ 11

*Panzarella Consulting, LLC v. Single Touch Interactive, Inc.*,
2011 WL 1626574 (D. Nev. Apr. 28, 2011) ........ 10

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) ........ 7

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
851 F.3d 1218 (11th Cir. 2017) ........ 8, 9

*Roadway Exp., Inc. v. Piper*,
447 U.S. 752 (1980) ........ 7

*Rowland v. Watchtower Bible & Tract Society of New York, Inc.*,
142 F.4th 1169 (9th Cir. 2025) ........ 12

*Smith v. Ricks*,
31 F.3d 1478 (9th Cir. 1994) ........ 13

*Vitus Grp., LLC v. Admiral Ins. Co.*,
2025 WL 2717427 (9th Cir. Sept. 24, 2025) ........ 8

*Xped LLC v. Entities Listed on Exhibit 1*,
690 F. Supp. 3d 831 (N.D. Ill. 2023) ........ 10

*Zambrano v. City of Tustin*,
885 F.2d 1473 (9th Cir. 1989) ........ 7

**Statutes**

28 U.S.C. § 1332 .......... 4
28 U.S.C. § 1332(a) .......... 3
28 U.S.C. § 1332(a)(2) .......... 6

**Other Authorities**

Fed. R. Civ. P. 7.1 .......... 1, 13
Fed. R. Civ. P. 11 .......... 7, 11, 12, 13
Fed. R. Civ. P. 12(b)(6) .......... 3
Local Rule 3-15 .......... 1, 3, 4, 5, 8, 13
Local Rule 7-8 .......... 2, 14

# I. INTRODUCTION

In June 2026, World Liberty's counsel made a mistake and filed a Federal Rule of Civil Procedure 7.1 Disclosure Statement and Civil Local Rule 3-15 Disclosure of Interested Entities or Persons (the "Initial Disclosure") that omitted the membership and citizenship information Local Rule 3-15(b)(3) requires. For nearly three months, no one noticed – including Plaintiffs, who have opposed or objected to nearly every other filing World Liberty has made. Then, in August 2026, World Liberty's counsel caught the error on its own, traced the complex and non-public chain of LLC membership back to the date the Complaint was filed, and promptly filed a supplemental disclosure (the "Supplemental Disclosure"), which revealed that the Court lacks subject matter jurisdiction. This was an honest mistake followed by a prompt attempt to correct course, and it does not warrant sanctions. Plaintiffs' motion fails for three independent reasons.

First, there was no bad faith. World Liberty's counsel was **not** aware when it filed the Initial Disclosure that World Liberty had any foreign citizenship; World Liberty's counsel discovered the deficiency on August 13, 2026 – a week before the August 20, 2026 hearing – and supplemented as soon as it was able to gather the information needed to correct it. World Liberty's supplement was **not** made "just days after World Liberty learned that the Court was not inclined to grant its request to move this entire case into confidential arbitration" (Mot. at 1) – World Liberty had in fact never asked to send the entire case to arbitration, it sought to compel only the Anthem Parties' claims (a request that remains pending). *See* ECF No. 40 at Relief Requested. And the hearing gave World Liberty no reason to change course. Most fundamentally, Plaintiffs get World Liberty's incentives backwards. World Liberty has sought dismissal since the day this case was filed, and it moved to dismiss the entire action on June 2, 2026. Had World Liberty's counsel known of a jurisdictional defect that would end the case, it had every reason to raise it then, not sit on it.

Second, Plaintiffs' own conduct belies their motion. Plaintiffs drafted the parties' August 27, 2026 Stipulation (the "Stipulation"), which World Liberty signed without edits. The Stipulation limited jurisdictional discovery to evidence "sufficient to satisfy Plaintiffs regarding the citizenship of Defendant" and committed Plaintiffs to dismiss the action within five business days once satisfied. ECF No. 67. World Liberty completed the stipulation production by October 2, 2026,

and Plaintiffs do not dispute that the Court lacks jurisdiction. Yet, Plaintiffs did not dismiss within five days. Instead, they waited another month and without notice or any attempt to meet and confer, filed this motion more than two months after learning the facts on which it rests. Local Rule 7-8(c) requires that any motion for sanctions be made "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." Plaintiffs' motion was not.

Third, Plaintiffs' purported prejudice is overstated. The work for which Plaintiffs seek attorneys' fees – opposing a motion to compel arbitration – would be incurred wherever Plaintiffs file a complaint, and the federal briefing can be easily repurposed when, as they state they plan to do, Plaintiffs re-file in state court. Moreover, it is Plaintiffs who have created unnecessary work for the parties and the Court by filing in federal court claims that the Anthem Parties agreed to arbitrate (as Plaintiffs acknowledged when they sent World Liberty a draft arbitration demand in November 2025).

World Liberty's counsel made a mistake, found it, and fixed it promptly and on its own initiative. The motion should be denied.

## II. FACTUAL BACKGROUND

### A. Plaintiffs Acknowledge the Parties' Arbitration Agreements, Then Sue in Federal Court

Prior to filing this lawsuit, the parties engaged in approximately six months of pre-suit negotiations. Judah Decl. ¶ 3. Plaintiffs acknowledged in meet and confers that their disputes with World Liberty are covered by arbitration agreements, and in November 2025 even sent World Liberty a draft arbitration demand. ECF No. 43-8; Judah Decl. ¶ 3.

In January 2026, during pre-suit negotiations and before the Complaint was filed, World Liberty converted from a Delaware corporation to a Florida limited liability company. Judah Decl. ¶ 2.

Notwithstanding their knowledge of the arbitration agreements and their scope, Plaintiffs filed the Complaint in federal court on April 21, 2026. ECF No. 1. Plaintiffs, the parties invoking federal jurisdiction, alleged that "World Liberty Financial is a citizen of New York" and that "[u]pon

information and belief" that World Liberty did not "have any other members whose citizenship would defeat diversity jurisdiction." *Id.* ¶ 20.

**B. World Liberty Files Its Motion to Dismiss, Motion To Compel Arbitration, and Initial Disclosure**

On June 2, 2026, World Liberty submitted three separate filings.

First, World Liberty filed a Motion to Compel Arbitration and Stay the Case (ECF No. 40, the "Motion to Compel") asking the Court to compel arbitration of the claims of two Plaintiffs, Blue Anthem Limited ("Blue Anthem") and Black Anthem Limited ("Black Anthem," and collectively with Blue Anthem the "Anthem Parties"). Judah Decl. ¶ 5. World Liberty did not seek to compel to arbitration the claims of the third Plaintiff, Justin Sun ("Sun"). *Id.* World Liberty requested that the Court stay Sun's claims pending resolution of the Anthem Parties' arbitration, and/or dismiss his claims (explained further below). ECF No. 40 at Notice of Motion.

Second, World Liberty filed a Motion to Dismiss the Case ("Motion to Dismiss"). ECF No. 41. World Liberty moved to dismiss all of the claims brought by Sun for lack of standing. *Id.* at 3-6. World Liberty also moved to dismiss all of the claims brought by all three Plaintiffs (Sun and the Anthem Parties) under Rule 12(b)(6) for failure to state a claim. *Id.* at 6-15. On June 5, 2026 the Court entered an order setting the briefing schedule on the Motion to Compel and staying the Motion to Dismiss pending further order. ECF No. 44.

Third, World Liberty filed its Initial Disclosure. ECF No. 42. The Initial Disclosure identified World Liberty Financial LLC as a citizen of Florida and identified WLF Holdco LLC, World Liberty Financial LLC's sole member. But it did not identify the citizenship of WLF Holdco LLC, or the identity and citizenship of any of its members (or their members) as Local Rule 3-15(b)(3) – which had been amended in October 2025 – requires. That failure was the result of a mistake by World Liberty's counsel. Judah Decl. ¶¶ 6-8.

At the time World Liberty filed its Initial Disclosure, counsel for World Liberty was not aware that World Liberty had foreign citizenship for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). Judah Decl. ¶ 7; Burck Decl. ¶ 4; Rana Decl. ¶ 4; Cleveland Decl. ¶ 4; Furcolo Decl. ¶ 3; Shapiro Decl. ¶ 3. Between June 2, 2026, and August 26, 2026 (when World Liberty

supplemented the disclosure), no party – including Plaintiffs – identified any deficiencies with the Initial Disclosure.

### C. World Liberty's Counsel Discovers the Error Before the Arbitration Hearing and Promptly Supplements

On August 13, 2026, in connection with preparing for the August 20, 2026 hearing on World Liberty's Motion to Compel, World Liberty's counsel reviewed (*inter alia*) the Local Rules and discovered that World Liberty's Initial Disclosure was incomplete. Judah Decl. ¶ 10. The next day, counsel promptly reached out to the client and the client's corporate counsel (from a different law firm) to ascertain and verify the members of World Liberty, the members' membership, and the citizenship(s) of all individuals or entities required to be disclosed pursuant to Local Rule 3-15(b)(3). Judah Decl. ¶ 11. Because of the complexity of the chain of membership, which involved non-public information about third parties and ascertaining specific membership and citizenship information as of a specific date (the date of the filing of the Complaint, April 21, 2026), counsel for World Liberty did not receive confirmation that an entity whose citizenship is attributable to World Liberty under 28 U.S.C. § 1332 had foreign citizenship as of the relevant date until August 21, 2026; and did not obtain all necessary information to make a complete supplement until August 24, 2026. *Id.* ¶ 13. By the morning of August 26, 2026, counsel for World Liberty had obtained authorization to file the Supplemental Disclosure publicly (i.e., without any request to seal). *Id.* Less than an hour after receiving that authorization, counsel for World Liberty emailed Plaintiffs' counsel, explaining that World Liberty would be filing a Supplemental Disclosure, and that based on that supplement, it appeared that the Court lacked subject matter jurisdiction. *Id.* ¶ 14; Ex. 2. Roughly an hour later, World Liberty filed its Supplemental Disclosure. ECF No. 66.

### D. The Court Hears the Motion to Compel While Counsel's Investigation Is Underway

On August 20, 2026, between the date when counsel for World Liberty first realized its mistake and when it obtained the necessary information to supplement the Initial Disclosure, the Court held a hearing on World Liberty's Motion to Compel. At the hearing, the Court stated "[y]ou both have agreed and I have already concluded that there are some claims that will go [to arbitration] and some that won't," and consistent with World Liberty's motion, that "we have already agreed

that anything related to [Plaintiff] Sun is not going to arbitration." Tr. at 15:6-10. With regard to the remaining claims, the Court stated to Plaintiffs' counsel that "[e]ach one of your claims says, the governing agreements here that define the rights and the obligations of the parties include but are not limited to the TPA and the MOU. Each one of your claims says TPA and MOU, each one, not carved out in any way. You blend them all in there. And once you say this is part of the MOU, you are bound to arbitration." Tr. at 8:21-9:2. The Court then ordered the parties to submit a joint list of the claims that would be sent to arbitration (the "Joint Statement"). ECF No. 64. The Court further stayed "everything" else pending resolution of the arbitration question. Tr. at 18:16-17.

### E. The Parties Meet and Confer and Stipulate to a Procedure for Jurisdictional Discovery and Dismissal and/or Amendment of the Complaint

On August 26, 2026, Plaintiffs and World Liberty met and conferred regarding the Joint Statement. In light of World Liberty's Supplemental Disclosure, the discussion focused on the appropriate next steps given the Court's apparent lack of subject matter jurisdiction. Judah Decl. ¶¶ 17-18. Plaintiffs indicated that they would dismiss the federal case if it were true that there was no subject matter jurisdiction, but that Plaintiffs first wanted to see evidence substantiating World Liberty's foreign citizenship. *Id.* ¶ 19. At no point did Plaintiffs' counsel state or suggest that any conduct by World Liberty's counsel was or could be sanctionable. *Id.* ¶ 21.[1] The parties then discussed the process by which World Liberty would provide substantiation of its foreign citizenship, and next steps after that. Although World Liberty's view was that the parties should proceed with submitting the Court-ordered Joint Statement, and then address subject matter jurisdiction afterwards, Plaintiffs proposed submitting a stipulation addressing the procedure for resolution of jurisdictional issues (as well as for Plaintiffs to potentially file an amended complaint).

Following the meet and confer, counsel for Plaintiffs sent a proposed Stipulation that World Liberty executed (without edits). The Stipulation summarized the circumstances that led to the recent supplementation of the Initial Disclosure and outlined the procedure for next steps that the parties agreed would best serve "the interests of judicial efficiency and economy." ECF No. 67 at

[1] When counsel for World Liberty explained at the meet and confer the circumstances that led to the Supplemental Disclosure, Plaintiffs' counsel stated that he understood because Local Rule 3-15 was "a bear," "so wide open," "hard to interpret," and a "nightmare." Judah Decl. ¶ 20.

1. In relevant part, World Liberty would "provide to Plaintiffs discovery sufficient to satisfy Plaintiffs regarding the citizenship of Defendant as relevant to the Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(2)," in response to which, Plaintiffs would either "dismiss the Action within 5 business days" (if satisfied that the Court lacks subject matter jurisdiction) or "file an amended complaint within 30 days, which amended complaint shall consist of only those claims Plaintiffs in good faith believe are not subject to arbitration" (if not satisfied). ECF No. 67 §§ 1-3. The Stipulation did not provide for any discovery regarding World Liberty's counsel's knowledge or communications with its client regarding World Liberty's members and citizenship, and did not provide any procedures or briefing schedule for a sanctions motion (or mention sanctions at all). *Id.*

### F. World Liberty Provides the Stipulated Jurisdictional Discovery, But Instead of Dismissing the Complaint, Plaintiffs File a Motion for Sanctions

As stipulated, World Liberty provided jurisdictional discovery sufficient to show the citizenship of World Liberty as relevant to the Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(2). The produced documents included ownership charts, an LLC agreement, and two declarations. Judah Decl. ¶ 25. That production was completed on October 2, 2026. *Id.* However, even though World Liberty fulfilled its obligations under the Stipulation, and Plaintiffs have not disputed that the Court lacks subject matter jurisdiction, Plaintiffs did not dismiss the action within five business days. Instead, they waited an entire month and then, without notice or any attempt to meet and confer, filed the instant Motion for Sanctions on November 2, 2026. *Id.* ¶ 29-30. The following morning, Sun published a post of more than 700 words about the Motion on X. *Id.* ¶ 32.

## III. <u>ARGUMENT</u>

Plaintiffs have not met their burden to show that sanctions are appropriate. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276 (N.D. Cal. 2015).

### A. Sanctions Are Not Warranted Under This Court's Inherent Authority

World Liberty's inadvertent error comes nowhere near the standard for the imposition of sanctions under the Court's inherent authority, and Plaintiffs rely on speculation and undue inferences as a substitute for evidence of bad faith.

While a court has the inherent power to issue monetary sanctions "[w]hen a losing party has

acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (reversing sanctions because evidence did not support bad faith), the Court must exercise these powers "with restraint and discretion." *OWC Santa Cruz Mfg LLC v. Lochhead*, 2021 WL 2156483, at *4 (N.D. Cal. May 27, 2021). Consistent with the need for restraint, a court may not impose sanctions under its inherent authority absent an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *Primus*, 115 F.3d at 648 (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)); *see also Miller v. City of Los Angeles*, 661 F.3d 1024, 1026 (9th Cir. 2011). This finding has a "high threshold" and "is especially critical when the court uses its inherent powers to engage in fee-shifting." *Id.* at 648-49. Mere recklessness is not enough. *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) ("Our precedents plainly require more" than mere recklessness to impose sanctions under the court's inherent powers). As such, the Ninth Circuit has held that "sanctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" *Primus*, 115 F.3d at 649 (quotation omitted). Conduct that is "merely ignorant or negligent is insufficient to support a claim of bad faith." *Demissie v. Ford*, 2026 WL 446479, at *7 (D. Nev. Feb. 13, 2026); *see also Zambrano v. City of Tustin*, 885 F.2d 1473, 1483-84 (9th Cir. 1989) (reversing imposition of sanctions because violation of local rules was nothing "more than an oversight or ordinary negligence," or "inadvertence or neglect," and there was no evidence of a willful violation or bad faith). Sanctions are not appropriate where a party makes an "honest mistake followed by a prompt attempt to correct course." *Arroyo v. Yard House Irvine Spectrum, LLC*, 2024 WL 245626, at *2 (C.D. Cal. Jan. 19, 2024). That is exactly what happened here.

Applying these standards, courts – including the Ninth Circuit – routinely refuse to sanction parties for mistakes about citizenship. For instance, in *Montrose Chemical Corp. of California v. American Motorists Insurance Co.*, 117 F.3d 1128, 1136 (9th Cir. 1997), the Ninth Circuit reversed a district court's imposition of sanctions under Rule 11 for abuse of discretion when a party failed to properly plead its citizenship for diversity purposes, reasoning that there was no evidence of bad faith and that "technical error[s]" that are typically permitted to be corrected would be an "improper"

basis for sanctions. *See also OWC Santa Cruz Mfg. LLC v. Lochhead*, 2021 WL 2156483, at *4 (N.D. Cal. May 27, 2021) ("because [non-movant] has made a type of technical error that courts traditionally allow parties to correct, it would be improper to impose sanctions solely on this basis" and as a result, "sanctions would not be appropriate under applicable law"); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1227-28 (11th Cir. 2017) (reversing imposition of sanctions where party was initially mistaken about LLC's citizenship, reiterated this mistaken impression multiple times, and later discovered that the LLC had citizenship that defeated diversity jurisdiction, because "[n]o party in this case acted with bad intentions" even though "the result was a colossal waste of time and effort").[2] Mistakes about the citizenship of LLCs, or even what determines citizenship of an LLC, are regarded as resulting from "inadvertence or mistake," rather than culpable misconduct. *Koeller v. Nixplay, Inc.*, 2026 WL 63630 (N.D. Cal. Jan. 8, 2026) (no judicial estoppel where LLC previously disclosed its citizenship as its place of registration and principal place of business, but later realized that its citizenship was Hong Kong by virtue of its sole member); *Augustyniak*, 2013 WL 998770, at *10 n.10 (failure to assess existence of diversity jurisdiction for LLCs or LPs is a "ubiquitous[]" problem and "like a bad penny that keeps turning up" and collecting cases); *Purchasing Power*, 851 F.3d at 1220 ("applying established diversity jurisdiction principles to 21st-century business organizations" is "difficult[]").

This case falls squarely within that line of authority. The Initial Disclosure was incomplete because counsel made a mistake. And it was World Liberty, not Plaintiffs or the Court, that found the error and promptly corrected it. Judah Decl. ¶¶ 10-13. Plaintiffs now say Local Rule 3-15 provides "clear instructions" and is "plain on its face and easy to follow." That is not what their counsel said at the time. At the August 26, 2026 meet and confer, after World Liberty had disclosed its foreign citizenship and filed its Supplemental Disclosure, Plaintiffs' counsel called the rule "a

---

[2] *See also Vitus Grp., LLC v. Admiral Ins. Co.*, 2025 WL 2717427 (9th Cir. Sept. 24, 2025) (denying request for attorneys' fees where plaintiff LLCs failed to disclose complete citizenship information because their citizenship was a "jurisdictional puzzle" and no evidence they previously knew they lacked diversity); *Atkins Nuclear Secured, LLC v. Aptim Fed. Servs., LLC*, 2019 WL 1793137 (E.D. Va. Apr. 24, 2019); *McAuslin v. Grinnell Corp.*, 2000 WL 726886 (E.D. La. June 5, 2000); *Augustyniak Ins. Grp., Inc. v. Astonish Results L.P.*, 2013 WL 998770 (D.R.I. Mar. 13, 2013).

bear," "so wide open," "hard to interpret," and a "nightmare." Judah Decl. ¶ 20. And for nearly three months, Plaintiffs never flagged that the Initial Disclosure omitted the citizenship of WLF Holdco LLC and the identity and citizenship of WLF Holdco LLC's own members (or that it conflicted with Plaintiffs' jurisdiction allegation in the Complaint that World Liberty was a citizen of New York, ECF No. 1 ¶ 20). That silence is telling from litigants who have opposed or objected to nearly every other filing World Liberty has made, including its Notice of Related Case and Motion to Seal. *See*, *e.g.*, ECF Nos. 38, 45.[3]

Unable to point to any bad faith by World Liberty (because none exists), Plaintiffs instead rely on speculation that the timing of World Liberty's Supplemental Disclosure was tied to the Court's purported "disagree[ment] with some of World Liberty's core arguments in favor of arbitration[.]" Mot. 5. The theory collapses on the chronology alone. Counsel discovered the deficiency on August 13, 2026, a week before the August 20 hearing at which the Court supposedly signaled its disagreement. Judah Decl. ¶ 10. Nor did the hearing give World Liberty anything to run from: World Liberty never sought to compel Sun's claims to arbitration, and the Court told Plaintiffs' counsel that because their claims invoke the MOU, "you are bound to arbitration." Tr. at 8:21-9:2. The theory also ignores World Liberty's incentives. Since the day this case was filed on April 21, 2026, World Liberty's primary goal has been dismissal with prejudice. Just two days after Plaintiffs filed the complaint, World Liberty entered into a stipulation in which it stated its position that this dispute should not be proceeding in this Court and ensured that the stipulation would not be a waiver of that argument. ECF No. 16 at 1 & § 5. World Liberty subsequently flagged that it would be moving to dismiss, *e.g.*, ECF No. 37 at 1, and then filed its Motion to Dismiss on June 2, 2026, seeking the complete dismissal of the case. ECF Nos. 41, 41-1. Had counsel been aware at that time that World Liberty was a foreign citizen for purposes of diversity jurisdiction, it would have had every incentive to disclose that fact to obtain what World Liberty was seeking – complete

---

[3] *See also Atkins*, 2019 WL 1793137, at *6-8 (denying motion for sanctions because movant, the party who invoked diversity jurisdiction, did not meet its own burden of investigating and establishing diversity jurisdiction); *Augustyniak*, 2013 WL 998770, at *10 (similar); *Purchasing Power*, 851 F.3d at 1223 (similar).

dismissal of this case.[4] And even had World Liberty known earlier (it did not), sitting on that information would have offered no upside and significant risk. A party does not act with "bad intent or improper purpose" by failing to disclose a fact that would have handed it the very relief it was seeking. *Augustyniak*, 2013 WL 998770, at *11 (rejecting request to "infer an intentional strategy" from purported relationship between the timing of disclosure of lack of diversity jurisdiction and case events perceived to be unfavorable to that party when "Defendant is just as adversely affected by the discovery of no diversity jurisdiction as are Plaintiffs" and where a "more credible history of events" had been presented).

Plaintiffs' inherent-authority cases only underscore what is missing here. Plaintiffs' cases feature egregious and bad faith conduct, such as selling property before a complaint was filed to deny the court jurisdiction (*Chambers v. NASCO, Inc.*, 501 U.S. 32, 40-42 (1991)); engaging in a grand scheme of "stonewalling" and "gaslight[ing]" opposing counsel during discovery and making repeated frivolous arguments to delay required production of highly probative evidence (*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 926-27 (N.D. Cal. 2023)); deleting the plaintiff's email accounts to delay and frustrate discovery (*Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 681 (W.D. Wash. 2014)); or intentionally misrepresenting a client's principal place of business (*Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 853-54 (N.D. Ill. 2023)). *Panzarella Consulting, LLC v. Single Touch Interactive, Inc.*, 2011 WL 1626574, at *2 (D. Nev. Apr. 28, 2011) is no closer: the court sanctioned a plaintiff that filed a complaint over which the court lacked subject matter jurisdiction and then ignored the defendants' repeated arguments that jurisdiction was lacking. No one had to warn World Liberty; World Liberty discovered the problem itself. Meanwhile, the Ninth Circuit has denied a motion for sanctions for conduct far worse than World Liberty's mistake here. For example, in *Spekulation Orphan Relief Tr. v. NewRez, LLC*, the court "decline[d] to sanction [defendant] for omitting from its opening brief any mention of its post-filing change in citizenship" based on the district court's conclusion that "it

[4] While World Liberty also sought an order compelling arbitration of the Anthem Parties' claims, that relief can also be sought in in state court if this federal action were dismissed, or Plaintiffs may have opted to re-file their claims in arbitration following dismissal of this federal action.

had manufactured its Delaware citizenship after filing suit in state court for the purpose of destroying diversity." 2025 WL 2028306, at *2.

Courts in this Circuit have denied sanctions for a "mistaken belief," *Jalalian v. JPMorgan Chase Bank, N.A.*, 2025 WL 3124080, at *2 (N.D. Cal. Nov. 7, 2025), "technical error," *OWC Santa Cruz Mfg LLC*, 2021 WL 2156483, at *4, or errors based on an unclear rule or court order, *see Miller*, 661 F.3d at 1029. In *OWC Santa Cruz Mfg LLC v. Lochhead*, the court declined to award sanctions because "[a]lthough the evidence could suggest [the client] and its counsel did not make a reasonable and competent inquiry before filing its initial complaint or subsequent amended complaints, its failure does not provide an independent basis for the imposition of sanctions." *OWC Santa Cruz Mfg LLC,* 2021 WL 2156483, at *4. Instead, the Court concluded "there is not sufficient evidence on the record to conclude that [the client's] initial failings were the result of 'any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....'" under Fed. R. Civ. P. 11(b)(1). *Id.* The same result should follow here. An incomplete disclosure, promptly self-corrected, is the paradigm of the "technical error" that courts allow parties to fix. It is not the bad faith that inherent-authority sanctions require.

**B. Section 1927 Sanctions Fail for the Same Reasons**

Sanctions under Section 1927 are similarly unwarranted. As with sanctions under the Court's inherent powers, "[t]he imposition of sanctions under § 1927 requires a finding of bad faith," which is judged on a subjective standard. *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000); *Meadow v. Goodrich Corp.*, 853 Fed. App'x 184, (9th Cir. 2021). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass," and "reckless nonfrivolous filings, without more, may not be sanctioned." *In re Keegan*, 78 F.3d at 436. "[U]nfortunate mistake[s]" are not sanctionable under Section 1927. *Jalalian*, 2025 WL 3124080, at *2 (denying Plaintiff's request for sanctions under Section 1927 for lack of "evidence of 'bad faith'").

Section 1927 fails for the same reason inherent-authority sanctions do: there was no bad faith. Nor did World Liberty advance any "frivolous argument." Mot. at 8. The Motion to Compel Arbitration, the only motion the Court has heard, was anything but frivolous, as the Court's

comments at the hearing made clear. Tr. at 8:21-9:2. At most, World Liberty failed to raise an argument that may have resulted in dismissal. Plaintiffs cite no authority holding that such an omission is sanctionable, much less where the party later identified the issue and raised it on its own initiative. Without evidence of subjective bad faith (and there is none), Section 1927 does not apply.

Plaintiffs' Section 1927 cases involve frivolous filings and deliberate misconduct, not inadvertent error, such as: a frivolous appeal based on frivolous arguments and false representations to the Court about basic facts, and doubling down when called out, (*In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010)); ignoring the court's guidance and repeatedly asserting a frivolous claim, which baselessly multiplied proceedings, (*Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1155 (9th Cir. 2024)); delaying moving for a preliminary injunction until the grant of that relief would have been "impossible under the time constraints" and therefore clearly frivolous, (*Lake*, 130 F.4th 1064, 1070); submitting an affidavit riddled with inaccurate facts in an effort to secure dismissal, which reflected a "a conscious decision to provide only a limited depiction of [the entity's] corporate activities," (*Rowland v. Watchtower Bible and Tract Society of New York, Inc.*, 142 F.4th 1169, 1171 (9th Cir. 2025)); and engaging in conscious and purposeful misconduct, including a "wilfull[] elect[ion] to pursue a litigation strategy of actively concealing from the plaintiff and the court as long as possible that this court was without power to hear the matter," including "calculatingly avoid[ing]" providing key facts, which counsel admitted to having done intentionally, which is an "undeniable abuse of the judicial process," (*Itel Containers Int'l Corp. v. P.R. Marine Mgmt., Inc.*, 108 F.R.D. 96, 97 (D.N.J. 1985)). Unlike those cases of intentional misconduct, World Liberty made a mistake, which it promptly self-corrected upon discovering it. It is difficult to imagine a situation more different from Plaintiffs' cases.

### C. Plaintiffs Cannot Evade Rule 11's Safe Harbor by Inviting Sua Sponte Sanctions

Plaintiffs expressly disclaim a Rule 11 motion, Mot. at 8, yet ask the Court to impose Rule 11 sanctions "sua sponte." A sanction requested by a party is, by definition, not sua sponte. Plaintiffs are trying to obtain through the back door what Rule 11's safe harbor bars at the front. In any event, there is no basis for Rule 11 sanctions here.

First, Plaintiffs readily admit – as they must – that a Rule 11 motion is unavailable because such a motion "must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(2). Here, World Liberty promptly and fully corrected its own mistake on its own initiative – without even needing to avail itself of the 21-day safe harbor period. The safe harbor period exists to encourage exactly what World Liberty did. Sanctioning a party for correcting its own filing before the safe harbor period even began would turn the Rule's design on its head.

Second, the Initial Disclosure did not violate Rule 11(b). It was not presented for any improper purpose, Fed. R. Civ. P. 11(b)(1); it was a good-faith, if incomplete, effort to comply with Rule 7.1 and Local Rule 3-15. Its factual contentions had evidentiary support, Fed. R. Civ. P. 11(b)(3); World Liberty Financial LLC is a Florida limited liability company and a citizen of Florida (among other jurisdictions). The error was one of omission, not misstatement. And Rules 11(b)(2) and 11(b)(4), which govern legal contentions and denials of factual contentions, have no application to a disclosure that made neither.

Plaintiffs' Rule 11 cases are far afield. *Oneto v. Watson*, 808 F. Supp. 3d 974 (N.D. Cal. 2025) concerned AI citations and hallucinated caselaw in legal briefs to the court, and in *Smith v. Ricks*, 31 F.3d 1478, 1484-85 (9th Cir. 1994), the attorney was sanctioned for recycling a notice of motion for a matter the court had already denied, part of a "pattern of misconduct." Nothing comparable happened here. In *Larson v. White Mountain Grp., LLC*, 2011 WL 5592911 (D. Ariz. Nov. 17, 2011), the attorney was sanctioned for repeatedly making affirmative representations that there was diversity jurisdiction and ignoring opposing counsel's statements that there was no diversity jurisdiction. World Liberty, by contrast, filed a single incomplete disclosure and corrected it on its own initiative as soon as counsel could confirm the facts. It did not ignore obvious facts, disregard the law, or repeat a jurisdictional representation after learning it was wrong.

Plaintiffs also rely heavily on *Hendrix v. Naphtal*, where counsel failed to report citizenship information before filing a federal complaint. 971 F.2d 398 (9th Cir. 1992). As Plaintiffs admit, the information in *Hendrix,* was "easily discoverable" – it involved only the citizenship of a single individual who himself was invoking diversity jurisdiction. Here, by contrast, identifying World

Liberty's citizenship required tracing a complex chain of LLC membership, involving non-public information about third parties, as of a specific date. And five years after *Hendrix*, the Ninth Circuit held that it would be improper to impose sanctions solely because counsel failed to properly plead a client's citizenship. *Montrose*, 117 F.3d at 1136; *see also OWC Santa Cruz Mfg LLC*, 2021 WL 2156483, at *4 ("Although the evidence could suggest [plaintiff] and its counsel did not make a reasonable and competent inquiry [into the client LLC's citizenship] before filing its initial complaint or subsequent amended complaints, its failure does not provide an independent basis for the imposition of sanctions," because it was "a type of technical error that courts traditionally allow parties to correct.").

**D. Plaintiffs' Motion is Untimely Under Local Rule 7-8**

Plaintiffs have failed to comply with Local Rule 7-8, which requires that any motion for sanctions "be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." L.R. 7-8(c). Plaintiffs have known of the circumstances they allege make the motion appropriate since August 26, 2026. Ex. 2. Rather than promptly raise a sanctions issue then, Plaintiffs negotiated a stipulation that excluded any reference to sanctions or sanctions-related discovery.[5] ECF No. 67. Plaintiffs then waited over two months to move for sanctions (and a full month after World Liberty completed its jurisdictional discovery obligations). That is not "as soon as practicable." Plaintiffs took nearly as long to file a motion faulting World Liberty's timing as World Liberty took to discover and correct its mistake in the first place.

The timing suggests that the motion's intended audience is not this Court. The morning after Plaintiffs filed it, Sun published a post of more than 700 words about the Motion to his 4 million followers on X. Ex. 6 (Sun X, dated November 3, 2026).

[5] Plaintiffs complain that "World Liberty and its counsel refused to answer discovery requests seeking" information about Quinn Emanuel's communications with World Liberty (Mot. at 6 n.4), but ignore that, in addition to seeking privileged and work product protected communications, such discovery was outside the agreed-upon scope of jurisdictional discovery proposed by Plaintiffs in the parties' Stipulation. ECF No. 67; Judah Decl. ¶ 24.

### E. Plaintiffs' Fee Request Fails *Goodyear's* But-For Causation Requirement

Even if some sanction were warranted, and none is, Plaintiffs' fee request cannot stand. Because the sanctions Plaintiffs seek are compensatory, the Court must "establish a causal link … between the litigant's misbehavior and legal fees paid by the opposing party." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). That requires a "but-for" test: "The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 109 (quoting *Fox v. Vice*, 563 U.S. 826 (2011)). Plaintiffs cannot meet that test.

The fees they seek, for opposing World Liberty's Motion to Compel, would have been incurred no matter when the jurisdictional defect came to light. As an initial matter, this dispute should have been brought to arbitration and not in court. Plaintiffs themselves acknowledged that during pre-suit negotiations (when they sent World Liberty a draft arbitration demand), and have now formally conceded that an amended complaint is required if they want any of the Anthem Parties' claims to remain in court. See ECF No. 67 at § 3 (stipulating that if Plaintiffs believe the Court has subject matter jurisdiction, "Plaintiffs shall file an amended complaint within 30 days, which amended complaint **shall consist of only those claims Plaintiffs in good faith believe are not subject to arbitration**") (emphasis added). More fundamentally, Plaintiffs say that had World Liberty identified World Liberty's foreign citizenship for purposes of diversity jurisdiction in June 2026, they simply would have dismissed the federal action and re-filed the Complaint in state court. In that event, World Liberty would have filed essentially the same motion to compel arbitration in state court (as well as essentially the same motion to dismiss), and Plaintiffs would have incurred exactly the same attorneys' fees in opposing the state court motion. Moreover, the work Plaintiffs' counsel undertook in preparing the federal court opposition briefing is not wasted because it can be repurposed for the state court briefing. Plaintiffs should not be permitted to obtain a windfall by recovering attorneys' fees for work that they will repurpose for future use, and/or that they would have incurred no matter when World Liberty identified the lack of diversity jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

DATED: November 16, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By */s/ James D. Judah*
James D. Judah (Bar No. 257112)
jamesjudah@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

William A. Burck (admitted *pro hac vice*)
williamburck@quinnemanuel.com
555 13th Street NW, Suite 600
Washington, D.C. 20004
Tel: (202) 538-8000
Fax: (202) 538-8100

Rajat Rana (admitted *pro hac vice*)
Sam Cleveland (admitted *pro hac vice*)
rajatrana@quinnemanuel.com
samcleveland@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendant World Liberty Financial LLC*