**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

YUCHEN "JUSTIN" SUN; BLUE ANTHEM LIMITED; and BLACK ANTHEM LIMITED,

Plaintiffs,

v.

WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.),

Defendant.

Case No. 3:26-cv-03360-JD

**DECLARATION OF JAMES D. JUDAH IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

Judge: Hon. James Donato

Date Filed: April 21, 2026

Trial Date: None Set

I, James D. Judah, declare as follows:

1. I am a partner at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, attorney for Defendant World Liberty Financial LLC ("World Liberty") in the above matter. I make this declaration based on my personal knowledge. If called and sworn as a witness, I could and would competently testify as to the facts set forth in this Declaration.

**Procedural History and Initial Disclosure**

2. World Liberty (then known as World Liberty Financial Inc.) was formed in 2024 as a Delaware corporation. In January 2026, World Liberty converted into a Florida Limited Liability Company (i.e., World Liberty Financial LLC). Attached as Exhibit 1 is a true and correct copy of World Liberty's Articles of Conversion.

3. Before Plaintiffs Justin Sun ("Sun"), Blue Anthem Limited ("Blue Anthem"), and Black Anthem Limited ("Black Anthem") filed the Complaint in this action on April 21, 2026, the parties engaged in approximately six months of pre-suit negotiations. During those negotiations, I understand that Plaintiffs repeatedly indicated that they would pursue their claims in arbitration, including by sending World Liberty a draft arbitration demand on November 19, 2025. *See* ECF No. 43-8 (Exhibit 5 to Declaration of Sam Cleveland).

4. It was only after Plaintiffs unexpectedly elected to file a Complaint in the Northern District of California, rather than proceeding in arbitration, that I became involved in the case. I filed my Notice of Appearance on April 28, 2026. ECF No. 21.

5. World Liberty filed two motions on June 2, 2026. First, World Liberty filed a Motion to Compel Arbitration (ECF No. 40), seeking to compel Blue Anthem and Black Anthem's claims (but not Sun's) to arbitration based on their agreement, in multiple contracts, to arbitrate disputes with World Liberty. Second, World Liberty filed a Motion to Dismiss (ECF No. 41), seeking to dismiss the entire case with prejudice. I signed both motions. On June 5, 2026, the Court entered an order granting a briefing scheduling stipulation for the Motion to Compel Arbitration and ruling that "[b]riefing on the motion to dismiss, Dkt. No. 41, is stayed pending further order." ECF No. 44.

6. Also on June 2, 2026, World Liberty filed its Federal Rule of Civil Procedure 7.1 Disclosure Statement and Civil Local Rule 3-15 Certification of Interested Entities or Persons (the "Initial Disclosure"). ECF No. 42. I signed the Initial Disclosure.

7. At that time, I was not aware that any person or entity in World Liberty's chain of membership was a citizen of a foreign state for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

8. The Initial Disclosure was incomplete and did not fully comply with the Federal and Local Rules, in particular Local Rule 3-15(b)(3). I deeply regret that mistake. While it is true that at the time I signed the Initial Disclosure I was not aware of any other parties that I believed must be disclosed pursuant to Federal Rule of Civil Procedure 7.1 or Local Rule 3-15, that is because my understanding of which parties needed to be disclosed, in the case of a limited liability corporation, was incorrect.

9. Between June 2, 2026 and August 26, 2026, Plaintiffs' counsel never raised any question or concern regarding the Initial Disclosure, nor did they assert that the Initial Disclosure was incomplete or inaccurate. I offer this information for context, and not in an attempt to suggest that the burden of complying with Local Rule 3-15 is on Plaintiffs or that Plaintiffs are at fault for the incompleteness of World Liberty's Initial Disclosure.

**Investigation and Supplemental Disclosure**

10. As part of my preparation for the August 20, 2026 hearing on World Liberty's Motion to Compel Arbitration, I reviewed the Court's Standing Order, the Local Rules, and previous filings in the case, including World Liberty's Initial Disclosure. On August 13, 2026, I noticed that the Initial Disclosure was incomplete under Local Rule 3-15(b)(3) because Local Rule 3-15 requires that an LLC disclose its members, the members of its members, and so on, as well as the citizenship of each. The Initial Disclosure did not do that. I also realized that Quinn Emanuel did not have the information required to comply with Local Rule 3-15(b)(3), because Quinn Emanuel did not possess a complete list of World Liberty Financial LLC's membership, including the members of its members and so on, and their citizenships.

11. Beginning on August 14, 2026, Quinn Emanuel requested from World Liberty (as well as its outside corporate counsel), information regarding the identity and citizenship of World Liberty's members through the entire chain of membership, as of the date the Complaint was filed (April 21, 2026).

12. In the meantime, on August 20, 2026, the Court heard argument on World Liberty's Motion to Compel Arbitration. Despite working diligently to investigate the required supplementation to the Initial Disclosure, as of that date, Quinn Emanuel had not received all information necessary to supplement the Initial Disclosure.

13. Between August 14 and August 24, 2026, Quinn Emanuel worked diligently with World Liberty to (a) identify each person or entity whose citizenship is attributed to World Liberty; (b) confirm the citizenship of each such person or entity; and (c) confirm that all of this information was accurate as of April 21, 2026. Quinn Emanuel did not receive confirmation that an entity whose citizenship is attributable to World Liberty under 28 U.S.C. § 1332 had foreign citizenship as of the date of the filing of the complaint until August 21, 2026; and Quinn Emanuel did not receive confirmation of all of the requisite information for all members of World Liberty until August 24, 2026. The chain of membership disclosed in World Liberty's supplemental disclosure comprises 22 persons and entities across several tiers of ownership, whose citizenships include Florida, Delaware, Puerto Rico, and the United Arab Emirates. ECF No. 66. Between August 24 and the morning of August 26, 2026, Quinn Emanuel sought and obtained authorization to file the entirety of the Supplemental Federal Rule of Civil Procedure 7.1(a)(2) Disclosure Statement and Civil Local Rule 3-15(b)(3) Certification of Interested Entities or Persons (the "Supplemental Disclosure") publicly, as opposed to under seal.

14. At approximately 10:37 A.M. PDT on August 26, 2026, Quinn Emanuel emailed Plaintiffs' counsel attaching a courtesy copy of the Supplemental Disclosure that World Liberty planned to file. The email stated that World Liberty is, and was as of the date the Complaint was filed, a citizen of, among other jurisdictions, the United Arab Emirates; stated World Liberty's position that the Court therefore lacked subject-matter jurisdiction; and requested a meet and confer. Attached as Exhibit 2 is a true and correct copy of that email.

15. At approximately 11:58 A.M. PDT on August 26, 2026, World Liberty filed its Supplemental Disclosure. ECF No. 66.

**<u>August 26, 2026 Meet and Confer and Stipulation</u>**

16. Following that filing, and pursuant to the Court's direction at the August 20 hearing, counsel for the parties met and conferred in person on the afternoon of August 26, 2026. This meet and confer occurred at the offices of Keker, Van Nest & Peters LLP ("Keker"), 633 Battery Street, San Francisco, CA 94111, in a meeting room on the ground floor. I attended, along with an associate from Quinn Emanuel, on behalf of World Liberty. On behalf of Plaintiffs, Steven Ragland and Gayatri Paranjape, both of Keker, attended in person, and Edward Moss, of Cahill Gordon & Reindel LLP joined remotely via videoconference. The meet and confer commenced around 2:00 P.M. PDT.

17. The purpose of the meet and confer was to finalize the joint statement listing the claims to be sent to arbitration (the "Joint Statement Listing Claims to Be Sent to Arbitration"), as ordered by the Court at the August 20, 2026 hearing. ECF No. 64. In anticipation of that meet and confer, World Liberty sent Plaintiffs a draft reflecting World Liberty's position regarding which claims should be sent to arbitration (all of the Anthem Parties' claims, but not Sun's), and inviting Plaintiffs to provide comments on which claims they did not agree to include in the list. *See* ECF No. 70-3. However, Plaintiffs did not provide any such comments over email, and were not prepared to do so at the meet and confer either.

18. Instead, at the meet and confer Plaintiffs' counsel stated that they had been thinking that the logical next step should be Plaintiffs amending the complaint to narrow the claims that would remain in federal court, and then to address the arbitrability of the remaining claims based on the amended pleading. However, Plaintiffs' counsel asked if we had any thoughts on how best to proceed in light of the Supplemental Disclosure, which potentially impacted the Court's subject matter jurisdiction.

19. I responded that World Liberty's view was that we should proceed with finalization and filing of the Joint Statement Listing Claims to Be Sent to Arbitration, as the parties had been ordered to do so by the Court, and that we could then subsequently address next steps with respect to the jurisdictional issues. Plaintiffs' counsel, however, did not agree with that approach, and

instead suggested that the parties submit a stipulation that provided both for an amended complaint and resolution of jurisdictional issues. In particular, Mr. Ragland stated, in sum and substance, that Plaintiffs did not want to be "mucking around in federal court" if the Court lacked jurisdiction, that Plaintiffs would dismiss this action if the Court lacked subject-matter jurisdiction, and that Plaintiffs first wanted to see evidence substantiating World Liberty's foreign citizenship before voluntarily dismissing the case.

20. Subsequently during the meet and confer, Mr. Ragland asked whether World Liberty's counsel had received an explanation for why it had not received the information reflected in the Supplemental Disclosure earlier. I responded, in sum and substance, that, in preparing for the August 20 hearing, I had reviewed the recently amended Local Rule 3-15, which led me to realize that there were other entities World Liberty may have been required to disclose, and which led to the investigation described above. Mr. Ragland's response indicated that he understood. Mr. Ragland then stated, in sum and substance, that the Local Rule is "such a bear," that "it is so wide open and hard to interpret," and that "[t]he whole thing is a nightmare."

21. At no point during the August 26 meet and confer did Plaintiffs' counsel state or suggest that any conduct by World Liberty or its counsel was or could be sanctionable, that Plaintiffs were considering a motion for sanctions, or that World Liberty or its counsel failed to act in good faith.

22. Following the meet and confer, Plaintiffs sent World Liberty a draft stipulation reflecting the parties' discussion at the August 26, 2026 meet and confer. The email transmitting this draft stipulation is attached as Exhibit 3. World Liberty responded that same day indicating that World Liberty agreed to the stipulation. Ex. 4. Plaintiffs then filed the stipulation (the "Stipulation"). ECF No. 67.

23. The Stipulation provides, in relevant part:

> WHEREAS, on Wednesday, August 26, 2026 … Defendant's counsel notified Plaintiffs' counsel for the first time that, based on the citizenship of at least one of its members, Defendant may be, and may have been on the date the Complaint was filed, a foreign citizen (specifically, a citizen of the United Arab Emirates),

information which Defendant's counsel represented it had only recently learned from its client, and which Defendant disclosed to the Court in a Supplemental Disclosure filed on August 26, 2026, see Dkt. 66;

WHEREAS, the parties discussed that the new information that Defendant may be a citizen of the United Arab Emirates may raise a threshold issue regarding this Court's subject matter jurisdiction, specifically whether the citizenship of Defendant defeats complete diversity between the parties; and WHEREAS, while the parties understood and were in the process of complying with the Court's direction at the August 20, 2026, hearing to address their dispute regarding which claims are subject to arbitration and which claims should remain before this Court, in light of the new disclosure by Defendant, the parties now believe that the interests of judicial efficiency and economy are best served by deferring the resolution of that issue and the pending Motion to Compel Arbitration in favor of first addressing the potential threshold issue of the Court's subject matter jurisdiction;

IT IS THEREFORE STIPULATED AND AGREED by all Parties as follows:

1. Within 30 days following the entry of this Stipulation and Order, the parties shall meet and confer regarding the jurisdictional issue raised by Defendant's August 26, 2026, Supplemental Disclosure and during such time, Defendant shall provide to Plaintiffs discovery sufficient to satisfy Plaintiffs regarding the citizenship of Defendant as relevant to the Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(2);

2. If, at the conclusion of the 30 days referenced in Paragraph 1, Plaintiffs are satisfied that the Court lacks subject matter jurisdiction, Plaintiffs will dismiss this Action within 5 business days;

3. If, at the conclusion of the 30 days referenced in Paragraph 1, Plaintiffs are not satisfied that the Court lacks subject matter jurisdiction, Plaintiffs shall file an amended complaint within 30 days, which amended complaint shall consist of only those claims Plaintiffs in good faith believe are not subject to arbitration;

4. If Plaintiffs file an amended complaint pursuant to Paragraph 3, and Defendant still maintains that the Court lacks subject matter jurisdiction, Defendant shall file

within 30 days a Motion to Dismiss the amended complaint for lack of subject matter jurisdiction. Such Motion will not waive any existing defenses asserted by Defendant, such as those asserted in its Motion to Compel Arbitration, Dkt 40, or its Motion to Dismiss, Dkt. 41. If the Court denies Defendant's Motion to Dismiss for lack of subject matter jurisdiction, Defendant will have 30 days from the Court's order to answer the amended complaint or renew its Motion to Compel Arbitration and/or Motion to Dismiss;

5. If Plaintiffs file an amended complaint pursuant to Paragraph 3, and Defendant no longer maintains that the Court lacks subject matter jurisdiction, Defendant will have 30 days to answer the amended complaint or renew its Motion to Compel Arbitration and/or Motion to Dismiss; and

6. For the avoidance of doubt, nothing herein shall relieve the parties of their obligations under the Stipulation and Order entered on May 25, 2026, Dkt. 39 at 3:6-11, to work in good faith to enter an agreement similar to the Stipulation and Order in the event Plaintiffs voluntarily dismiss the Action or there is a decision in favor of Defendant on any dispositive motion or any motion to compel arbitration.

ECF No. 67 at 1-3.

24. No portion of the Stipulation calls for or contemplates any discovery into whether World Liberty's Initial Disclosure was sanctionable. Nor does any portion of the Stipulation provide for a briefing schedule on a motion for sanctions (or mention sanctions at all).

25. Between September 18, 2026 and October 2, 2026, and consistent with the parties' Stipulation, World Liberty produced to Plaintiffs documents sufficient to show the citizenship of World Liberty as relevant to the Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(2), including ownership charts, an LLC agreement, and two declarations.

26. On October 20, 2026, Brook Dooley, counsel for Plaintiffs, stated to me during a phone call that Plaintiffs would likely agree that the Court lacks subject-matter jurisdiction, but that Plaintiffs first wanted World Liberty to agree to extend the parties' stipulation that World Liberty would not burn Blue Anthem's $WLFI tokens. *See* ECF Nos. 16, 39.

27. On October 30-31, 2026, the parties reached agreement on that extension.

28. Nevertheless, Plaintiffs did not dismiss the case within five business days.

**Sanctions Motion**

29. At no point during this case prior to the filing of the sanctions motion did Plaintiffs' counsel state or suggest to me (or, to the best of my knowledge, any of my colleagues) that Plaintiffs believed that any conduct by World Liberty or its counsel was sanctionable, or that Plaintiffs intended to move for sanctions.

30. Plaintiffs' counsel did not meet and confer with World Liberty's counsel regarding the Motion before filing it, and did not notify World Liberty's counsel in advance that Plaintiffs intended to file it. While Plaintiffs do not explicitly seek relief under Rule 11 of the Federal Rules of Civil Procedure, Plaintiffs did not serve their sanctions motion on World Liberty prior to filing, much less 21 days or more before filing it.

**Amendment to Local Rule 3-15**

31. Attached as Exhibit 5 is a true and correct copy of a redline comparing the version of Civil Local Rule 3-15 in effect before October 3, 2025 with the version that took effect on October 3, 2025, and which remained in effect at the time World Liberty filed its Initial Disclosure.

**Yuchen (Justin) Sun's Subsequent X Post**

32. Attached as Exhibit 6 is a true and correct copy of a post published on or around November 3, 2026 at 6:06 A.M. PST by @justinsuntron, an account with the display name "H.E. Justin Sun."

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 16, 2026.

*/s/ James D. Judah*
James D. Judah