**CAHILL GORDON & REINDEL LLP**
SAMSON A. ENZER (admitted *pro hac vice*)
senzer@cahill.com
HERBERT S. WASHER (admitted *pro hac vice*)
hwasher@cahill.com
EDWARD N. MOSS (admitted *pro hac vice*)
emoss@cahill.com
JOHN S. MACGREGOR - # 304330
jmacgregor@cahill.com
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

**KEKER, VAN NEST & PETERS LLP**
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
GAYATRI V. PARANJAPE - # 345933
gparanjape@keker.com
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

CAHILL GORDON & REINDEL LLP
GREGORY STRONG (admitted *pro hac vice*)
gstrong@cahill.com
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 884-0001

Attorneys for Plaintiffs YUCHEN "JUSTIN" SUN, BLUE ANTHEM LIMITED, and BLACK ANTHEM LIMITED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

YUCHEN "JUSTIN" SUN;
BLUE ANTHEM LIMITED; and
BLACK ANTHEM LIMITED,

Plaintiffs,

v.

WORLD LIBERTY FINANCIAL LLC (f/k/a WORLD LIBERTY FINANCIAL, INC.),

Defendant.

Case No. 26-cv-3360

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS**

Judge: Hon. James Donato

Hearing Date: December 10, 2026
Hearing Time: 11:00 AM

Trial Date: None set

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. WORLD LIBERTY'S RESPONSE CONFIRMS SANCTIONS ARE IN ORDER .......... 2

A. Counsel's Own Account Shows a Lack of Reasonable, Good-Faith Conduct .......... 2

B. This Court Should Impose Sanctions Under Its Inherent Authority .......... 4

C. Sanctions Under Section 1927 Are Warranted .......... 7

D. The Initial Disclosure Violated Rule 11 .......... 7

E. Plaintiffs' Motion Was Timely .......... 9

II. THIS COURT SHOULD AWARD PLAINTIFFS THEIR REQUESTED FEES .......... 9

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arroyo* v. *Yard House Irvine Spectrum, LLC*,
2024 WL 245626 (C.D. Cal. Jan. 19, 2024) ....................5

*Atkins Nuclear Secured, LLC* v. *Aptim Fed. Servs., LLC*,
2019 WL 1793137 (E.D. Va. Apr. 24, 2019) ....................5n

*Augustyniak Ins. Grp., Inc.* v. *Astonish Results L.P.*,
2013 WL 998770 (D.R.I. Mar. 13, 2013) ....................5n

*Caputo* v. *Tungsten Heavy Powder, Inc.*,
96 F.4th 1111 (9th Cir. 2024) ....................7

*Cronus Invs., Inc.* v. *Concierge Servs.*,
35 Cal. 4th 376 (2005) ....................10

*Demissie* v. *Ford*,
2026 WL 446479 (D. Nev. Feb. 13, 2026) ....................6n

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ....................4

*Goodyear Tire & Rubber Co.* v. *Haeger*,
581 U.S. 101 (2017) ....................9, 10

*GovernmentGPT Inc.* v. *Axon Enter. Inc.*,
749 F. Supp. 3d 1049 (D. Ariz. 2024) ....................8

*Guild Mortg. Co.* v. *CrossCountry Mortg. LLC*,
2022 WL 18999842 (W.D. Wash. Dec. 6, 2022) ....................8

*Hendrix* v. *Naphtal*,
971 F.2d 398 (9th Cir. 1992) ....................8

*Jalalian* v. *JPMorgan Chase Bank, N.A.*,
2025 WL 3124080 (N.D. Cal. Nov. 7, 2025) ....................6n

*In re Keegan Mgmt. Co., Sec. Litig.*,
78 F.3d 431 (9th Cir. 1996) ....................7

*Koeller* v. *Nixplay, Inc.*,
2026 WL 63630 (N.D. Cal. Jan. 8, 2026) ....................6n

*L.A. Unified Sch. Dist.* v. *Safety Nat'l Cas. Corp.*,
13 Cal. App. 5th 471 (2017) ....................10

*Larson* v. *White Mountain Grp., LLC*,
2011 WL 5592911 (D. Ariz. Nov. 17, 2011) .......... 8

*McAuslin* v. *Grinnell Corp.*,
2000 WL 726886 (E.D. La. June 5, 2000) .......... 6n

*Montrose Chemical Corp. of California* v. *American Motorists Insurance Co.*,
117 F.3d 1128 (9th Cir. 1997) .......... 5

*Oneto* v. *Watson*,
808 F. Supp. 3d 974 (N.D. Cal. 2025) .......... 8

*OWC Santa Cruz Mfg. LLC* v. *Lochhead*,
2021 WL 2156483 (N.D. Cal. May 27, 2021) .......... 5

*Pac. Harbor Cap., Inc.* v. *Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) .......... 7

*Primus Auto. Fin. Servs., Inc.* v. *Batarse*,
115 F.3d 644 (9th Cir. 1997) .......... 4, 6

*Purchasing Power, LLC* v. *Bluestem Brands, Inc.*,
851 F.3d 1218 (11th Cir. 2017) .......... 5

*Quach* v. *California Com. Club, Inc.*,
16 Cal. 5th 562 (2024) .......... 10

*Spekulation Orphan Relief Tr.* v. *NewRez, LLC*,
2025 WL 2028306 (9th Cir. July 21, 2025) .......... 6n

*Vitus Grp., LLC* v. *Admiral Ins. Co.*,
2025 WL 2717427 (9th Cir. Sept. 24, 2025) .......... 5, 6

*Zambrano* v. *City of Tustin*,
885 F.2d 1473 (9th Cir. 1989) .......... 6n

## PRELIMINARY STATEMENT[1]

World Liberty's opposition confirms the core fact underlying this motion: its counsel certified a false Initial Disclosure of its citizenship under Local Rule 3-15 without asking what that citizenship was—or, apparently, even reading the rule. Those failures wasted this Court's time and effort and cost Plaintiffs hundreds of thousands of dollars litigating. This Court should impose sanctions.

World Liberty and its counsel owed this Court a clear, simple duty that they disregarded. Rule 7.1 and Local Rule 3-15 required them to trace World Liberty's chain of membership and give full information about its citizenship to ensure diversity jurisdiction existed ***before*** the Court and parties devoted significant resources to the case. World Liberty does not say the text of those rules was unclear, nor could it. Indeed, counsel knew exactly what to do when he apparently first read Local Rule 3-15 on August 13, more than two months after he had certified the false Initial Disclosure.

Yet counsel did not alert the Court to any issue with the Initial Disclosure for nearly two more weeks, finally filing the Supplemental Disclosure revealing a lack of diversity jurisdiction on August 26. In the meantime, apparently with full knowledge of the "mistake," counsel argued World Liberty's arbitration motion on August 20 (when the Court agreed with certain of Plaintiffs' positions) and then tried to force Plaintiffs' counsel to agree to arbitrate ***all*** of the company claims covered by the motion, ***despite*** this Court's statements that some of those claims should be publicly litigated. Only when those efforts to move this case completely out of the public eye failed did World Liberty's counsel belatedly reveal that the Court lacked jurisdiction all along.

These undisputed facts easily defeat World Liberty's attempt to whitewash the false Initial Disclosure as "an honest mistake followed by a prompt attempt to correct course." (Def.'s Opp. to Pls.' Mot. for Sanctions ("Opp.") at 1, 7, ECF No. 74). Counsel did not simply flub some nuance of the law of diversity jurisdiction or goof up tracing a complicated ownership chain; he certified facts to this Court without looking, or even informing himself what the required facts were. That conduct

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in Plaintiffs' Memorandum of Law in Support of their Motion for Sanctions ("Mot."), ECF No. 70. Unless otherwise noted, all emphasis is added, and all brackets, quotations, and citations omitted.

was at a minimum reckless, and it resulted in a filing that was both baseless and without reasonable inquiry—or any inquiry at all. Then, when counsel later realized his error, he waited nearly two weeks to disclose it—and did so only after it became abundantly clear that World Liberty would not get everything it wanted from its arbitration motion. That timing shows gamesmanship, not prompt correction.

This Court should impose sanctions under its inherent authority, Section 1927, and Rule 11.

## ARGUMENT

### I. WORLD LIBERTY'S RESPONSE CONFIRMS SANCTIONS ARE IN ORDER

#### A. Counsel's Own Account Shows a Lack of Reasonable, Good-Faith Conduct

As Plaintiffs' moving papers explained (Mot. at 6), World Liberty and its lawyers had a straightforward task in preparing the Initial Disclosure. Local Rule 3-15 told counsel exactly what to do. In a diversity case, a party "must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party." N.D. Cal. Civ. L.R. 3-15(b)(3). For an LLC, the disclosure "must continue through any chain of membership until all persons or entities whose citizenship is attributed to the party have been identified." *Id.* 3-15(b)(3)(i).

Counsel concedes that he did not follow these rules. Instead, he signed a filing that falsely represented to the Court that World Liberty itself was the ***only*** person or entity in its membership chain whose citizenship required disclosure, and that it was a citizen of Florida alone. (ECF No. 42 at 1). But the Supplemental Disclosure identified ***twenty-two persons and entities*** in World Liberty's membership chain, making it a citizen of Florida, Delaware, Puerto Rico, and the UAE. (ECF No. 66 at 2). The failure to include that information in the Initial Disclosure cannot have resulted from a reasonable investigation or good-faith reading of the rules.

World Liberty does not show otherwise. To the contrary, counsel concedes that on June 2, 2026, when he certified he was "unaware of any other parties that must be disclosed" under Rule 7.1 and Local Rule 3-15 (ECF No. 42 at 1), his firm "did not possess a complete list" of World Liberty's chain of membership. (Decl. of James D. Judah in Supp. of Def.'s Opp. ("Judah Decl.") ¶¶ 8, 10, ECF No. 74-1). The reason his firm did not possess a complete list was that he had not asked his client for it. (*See id.* ¶¶ 10-11). And the reason he had not asked his client for it was that his

"understanding of which parties needed to be disclosed, in the case of a limited liability corporation, was incorrect." (*Id.* ¶ 8). Yet counsel does not (and cannot) claim that Local Rule 3-15(b) was unclear.[2] The only way he could have had an "incorrect" understanding of what it required was if he had not read it. Crucially, he does not say that he had. He also does not say that he asked his client any questions in preparing the Initial Disclosure or otherwise describe the steps he took. In other words, counsel admittedly certified the false Initial Disclosure without asking World Liberty for the required information—or even checking the rules to know what that information was. That conduct was reckless and frivolous and alone warrants sanctions.

And there was more. Though World Liberty claims the false Initial Disclosure was an "honest mistake followed by a prompt attempt to correct course" (Opp. at 1, 7), counsel's declaration shows a determined effort to send Plaintiffs' disputed claims to arbitration even after he recognized his "honest mistake" and knew the parties were not diverse. Counsel was aware by August 13, when he reviewed the Local Rules in preparing for argument, that the Initial Disclosure was incomplete—and thus that this Court might lack jurisdiction. (Judah Decl. ¶ 10). He requested the necessary information from World Liberty and its corporate counsel the next day, and received confirmation that World Liberty was a citizen of a foreign nation a week later. (*Id.* ¶¶ 11, 13).

Yet he chose not to mention any jurisdictional issue to the Court when he vigorously argued World Liberty's arbitration motion on August 20. Then, after the Court indicated that some of the company-related claims at issue belonged in public litigation, World Liberty's counsel insisted that all of those claims should be arbitrated—including in an email to Plaintiffs' lawyers on August 24. (Decl. of Edward N. Moss in Supp. of Pls.' Mot. ("Moss Decl.") Ex. 2, ECF No. 70-3; Judah Decl. ¶ 17). That was three days ***after*** counsel received confirmation that World Liberty's membership chain included a foreign citizen, and the same day that counsel received the full information Local

[2] Although World Liberty cites informal remarks by one of Plaintiffs' lawyers that Local Rule 3-15 was hard to follow (Opp. at 8-9), Plaintiffs' counsel remembers the interaction differently and does not recall making any of the statements attributed to him. Regardless, World Liberty's attempt to turn whatever professional niceties may have been uttered into some after-the-fact justification for its lawyers' misconduct lacks merit. World Liberty does not identify any ambiguity in the Rule or say that ***its*** lawyers were confused; to the contrary, counsel apparently had no trouble parsing the Rule or asking his client for the required information when he finally consulted it.

Rule 3-15 required. (Judah Decl. ¶ 13). But counsel's email said nothing about a lack of jurisdiction. Rather, counsel revealed that information only two days later, on August 26, after Plaintiffs' lawyers rejected World Liberty's renewed attempt to send all disputed claims to arbitration. (ECF No. 66; Moss Decl. Ex. 3).

Counsel's admitted actions show a lack of candor in service of World Liberty's attempt to move this case into private arbitration. Even after World Liberty's counsel had reason to suspect a lack of diversity, he pressed this Court to send Plaintiffs' claims to arbitration. And after he confirmed a lack of diversity, he tried to get the same result by pressing Plaintiffs to agree to arbitrate their claims. Only when those efforts failed did counsel disclose—just as this Court was poised to deny key parts of World Liberty's arbitration motion—that the Court lacked jurisdiction in the first place. That conduct reeks of gamesmanship and is sanctionable by any measure.

**B. This Court Should Impose Sanctions Under Its Inherent Authority**

This Court can impose sanctions under its inherent powers "when a party misrepresents the law or the facts to the court," *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 925 (N.D. Cal. 2023), or "recklessly raises a frivolous argument," *Primus Auto. Fin. Servs., Inc.* v. *Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). World Liberty does not take issue with that standard, but insists its counsel simply made a "technical error" and that inadvertence or recklessness alone does not suffice. (Opp. at 6-7, 11).

The argument fails. Plaintiffs' motion has never rested on mere inadvertence or on recklessness alone. It rests on a false certification of World Liberty's citizenship that counsel has now confirmed he signed and filed without asking his client for the information the rules required—or, apparently, even checking the rules to see what they required in the first place. The result was an Initial Disclosure that misrepresented the facts to the Court and recklessly took a position that was both baseless and unsupported by any investigation—*i.e.*, frivolous. *See Primus Auto. Fin. Servs.*, 115 F.3d at 649. The excuse that counsel first realized what the rule actually required when preparing for a (totally unrelated) motion to compel arbitration, even if credited, just underscores the recklessness.

World Liberty claims this case is similar to those declining to impose sanctions for mere

"mistakes about citizenship" in diversity cases. (Opp. at 7-8). Not so. None of World Liberty's cases involved a clear directive (complete with detailed instructions) like Local Rule 3-15 that imposed an affirmative duty to disclose a party's complete citizenship. For instance, *Montrose Chemical Corp. of California* v. *American Motorists Insurance Co.*, 117 F.3d 1128 (9th Cir. 1997), predated Local Rule 3-15 and, in any event, counsel there had objectively nonfrivolous legal grounds to contend that his client corporation's principal place of business was in Nevada, which would have made the parties diverse. *Id.* at 1133-35. But here, there is no legal argument, objective or otherwise, that World Liberty is a citizen of only Florida. Counsel apparently did not read the rule and did not ask his client for the information needed to follow the rule. *OWC Santa Cruz Mfg. LLC* v. *Lochhead* also predated Local Rule 3-15, and the Court there observed that "the evidence *could suggest* [the plaintiff] and its counsel did not make a reasonable and competent inquiry" before incorrectly pleading that the parties were diverse. 2021 WL 2156483, at *4 (N.D. Cal. May 27, 2021). Here, again, there is no factual or legal nuance. World Liberty's counsel just did not follow the rule.[3]

World Liberty's other citizenship cases fare no better. In *Purchasing Power, LLC* v. *Bluestem Brands, Inc.*, unlike here, the Court observed that counsel's investigation into its client's citizenship "might be lacking, but an investigation nevertheless occurred." 851 F.3d 1218, 1228 (11th Cir. 2017). Similarly, in *Arroyo* v. *Yard House Irvine Spectrum, LLC,* sanctions were not warranted because the defendant's counsel legitimately believed that the defendant had completed a merger before it removed the case from state court, which would have made removal proper. 2024 WL 245626, at *1-2 (C.D. Cal. Jan. 19, 2024). World Liberty offers no similar excuse. Meanwhile, in *Vitus Group, LLC* v. *Admiral Insurance Co.*, the Court denied the plaintiff LLCs' request for fees based on the defendant's incorrect removal to federal court because the plaintiffs (not defendant) failed to fully disclose the citizenship of their members. 2025 WL 2717427, at *1-2 (9th Cir. Sept. 24, 2025). The removal was thus "objectively reasonable," and the defendant's error was due to the

---

[3] *See also Atkins Nuclear Secured, LLC* v. *Aptim Fed. Servs., LLC*, 2019 WL 1793137, at *6-7 (E.D. Va. Apr. 24, 2019) (defendant "did not misrepresent any jurisdictional facts" and had no "affirmative obligation" to investigate and ascertain its members' citizenship); *Augustyniak Ins. Grp., Inc.* v. *Astonish Results L.P.*, 2013 WL 998770, at *8-10 (D.R.I. Mar. 13, 2013) (defendant had no "affirmative duty" to "focus on and ascertain the citizenship of its members").

plaintiffs' own failures. *Id.* at *2. *Vitus Group* says nothing about the availability of sanctions for World Liberty's failure to collect or disclose its own citizenship information in the face of a clear, affirmative duty to do so. World Liberty's other cases about citizenship "mistakes" are similarly unavailing.[4] And World Liberty's other "inadvertent error" cases are even farther afield.[5]

World Liberty's arguments on the facts are just as weak as its legal arguments. It contends there was no improper purpose to hide information that showed the lack of diversity because its "primary goal" in this case "has been dismissal with prejudice." (Opp. at 9). But World Liberty's actual goal has been to "***compel this dispute to arbitration***." (ECF No. 16 § 5). ***That*** was the goal World Liberty sought to ensure when it filed its motion, and it did not disclose the "new" information (despite possessing it) until after the Court rejected that attempt in large part.

In any event, imposing sanctions does not require any improper purpose where a party or its counsel has engaged in conduct that is both reckless and frivolous. *See Primus Auto. Fin. Servs.*, 115 F.3d at 649. That is what happened here. World Liberty cannot avoid that conclusion by blaming the victim, either. Although World Liberty criticizes Plaintiffs for not objecting to its Initial Disclosure (Opp. at 9), its own counsel disclaims that argument, stating that he does not "suggest that the burden of complying with Local Rule 3-15 is on Plaintiffs or that Plaintiffs are at fault." (Judah Decl. ¶ 9). And what is more, World Liberty repeatedly stresses that its membership information was "non-public" (Opp. at 1, 4, 14), which means Plaintiffs had no way of obtaining it. Indeed, the

---

[4] *See Spekulation Orphan Relief Tr.* v. *NewRez, LLC*, 2025 WL 2028306, at *2 (9th Cir. July 21, 2025) (affirming sanction against plaintiff for "jurisdictional manipulation"; holding plaintiff's failure to mention manipulation findings in opening appellate brief was defensible given lower court's misapplication of underlying law); *McAuslin* v. *Grinnell Corp.*, 2000 WL 726886, at *3 (E.D. La. June 5, 2000) (at time complaint was filed, "the state of the law concerning the citizenship requirements of [plaintiff] was somewhat ambiguous," and plaintiff's position was not "unreasonable"); *Koeller* v. *Nixplay, Inc.*, 2026 WL 63630, at *8-10 (N.D. Cal. Jan. 8, 2026) (not involving sanctions; holding judicial estoppel did not bar correction of removal allegations).

[5] *See Zambrano* v. *City of Tustin*, 885 F.2d 1473, 1483-84 (9th Cir. 1989) (inadvertent failure to complete largely ministerial district-bar admission process, where counsel had no reason to avoid admission and record supported neither bad faith nor even gross negligence); *Demissie* v. *Ford*, 2026 WL 446479, at *7-8 (D. Nev. Feb. 13, 2026) (denying *pro se* sanctions motion based on failure to transmit confidential deposition exhibit by encrypted email); *Jalalian* v. *JPMorgan Chase Bank, N.A.*, 2025 WL 3124080, at *2 (N.D. Cal. Nov. 7, 2025) (declining to sanction counsel for mistaken belief that hearing would occur remotely where earlier conference had been remote).

record reflects that Plaintiffs exercised more diligence than World Liberty's own lawyers by attempting to learn World Liberty's members and their citizenship from available data. (*See* ECF No. 3-2 ¶ 20 (pleading World Liberty's citizenship on information and belief based on public records describing member domiciled in New York)).

**C. Sanctions Under Section 1927 Are Warranted**

This Court should also order sanctions under Section 1927. (Mot. at 7-8). That statute authorizes sanctions against a lawyer who "multiplies the proceedings in any case unreasonably and vexatiously," 28 U.S.C. § 1927, including by recklessly making frivolous assertions—*i.e.*, ones that are "baseless and made without reasonable and competent inquiry." *Caputo* v. *Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1155 (9th Cir. 2024).

World Liberty's counsel at the very least recklessly misled this Court and made baseless assertions about World Liberty's citizenship in its Initial Disclosure "without reasonable and competent inquiry." *Id.* World Liberty argues that Section 1927 sanctions are not warranted because there was no bad faith. (Opp. at 11-12). But as World Liberty's own case law affirms, "reckless conduct meets [the bad faith] standard," *Pac. Harbor Cap., Inc.* v. *Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000), and "reckless filings may be sanctioned" if they are frivolous. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Moreover, the conduct of World Liberty's counsel after first uncovering a potential lack of diversity on August 13 supports an inference of gamesmanship, which is an improper purpose.

**D. The Initial Disclosure Violated Rule 11**

World Liberty's opposition further confirms that its counsel violated Rule 11. Rule 11 plainly states that in submitting a paper to a federal court, counsel "certifies" that the "legal contentions are warranted by existing law" and the "factual contentions have evidentiary support," to "the best of the person's knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances***." Fed. R. Civ. P. 11(b). World Liberty concedes there was no "reasonable inquiry" here. Just the opposite: counsel's declaration shows that he filed the Initial Disclosure without ***any*** inquiry; the only investigation he describes began on August 14, more than two months after the Initial Disclosure. (Judah Decl. ¶¶ 10-11).

Still, World Liberty argues that Rule 11 sanctions are unavailable because its Initial Disclosure said it was a citizen of Florida, and it is a citizen of Florida. (Opp. at 13). But the rule does not require counsel to list one of the many jurisdictions in which its client has citizenship—it requires counsel to list them all. And the Initial Disclosure did not even hint that World Liberty was a citizen of other jurisdictions in addition to Florida. It said Florida—full stop. (ECF No. 42). And counsel even certified that he was "unaware of any other" persons or entities that had to be disclosed under Local Rule 3-15 (*id.*)—without ever asking his client or, apparently, even reading the rule.

Contrary to World Liberty's argument (Opp. at 13-14), this conduct was at least as culpable as that sanctioned in *Hendrix* v. *Naphtal*, 971 F.2d 398 (9th Cir. 1992), *Larson* v. *White Mountain Grp., LLC*, 2011 WL 5592911 (D. Ariz. Nov. 17, 2011), and *Oneto* v. *Watson*, 808 F. Supp. 3d 974 (N.D. Cal. 2025). In *Hendrix*, the sanctioned law firm at least asked its client some questions about his citizenship, 971 F.2d at 400, which is more than World Liberty's counsel says he did here. In *Larson*, counsel pleaded unsupported jurisdictional facts about the ***opposing*** party, 2011 WL 5592911, at *4-6, whereas here, counsel failed to investigate World Liberty's ***own*** citizenship. And counsel's conduct here is directly analogous to the sanctioned lawyer's actions in *Oneto*; just as the sanctioned lawyer there did not read the AI-hallucinated cases he presented to the Court, 808 F. Supp. 3d at 977-80, World Liberty's counsel evidently did not read Local Rule 3-15 before certifying compliance with it.

Finally, World Liberty accuses Plaintiffs of filing a "back door" Rule 11 motion by pointing out this Court's authority to impose sanctions *sua sponte* under Rule 11(c)(3). (Opp. at 12). But Plaintiffs are not moving for sanctions under Rule 11. Instead, Plaintiffs are explaining that the acts at issue here violated Rule 11's conduct prescriptions and observing that this Court has the power to impose a remedy if it agrees. There is nothing improper about that approach. *See GovernmentGPT Inc.* v. *Axon Enter. Inc.*, 749 F. Supp. 3d 1049, 1057-58 (D. Ariz. 2024) (granting defendant's request for order to show cause "why Rule 11(c) sanctions should not be imposed"); *Guild Mortg. Co.* v. *CrossCountry Mortg. LLC*, 2022 WL 18999842, at *10 (W.D. Wash. Dec. 6, 2022) ("It would be illogical and contrary to the purpose of Rule 11 if a party's sanctions motion operated as a bar to a court considering sanctions on its own initiative at any later time.").

### E. Plaintiffs' Motion Was Timely

Unable to defeat Plaintiffs' motion on the merits, World Liberty assails it as untimely under Local Rule 7-8. That gambit fails, too. Local Rule 7-8 imposes no specific time limit applicable here and simply requires that a motion for sanctions "be made as soon as practicable after the filing party learns of the [relevant] circumstances." N.D. Cal. Civ. L.R. 7-8(c). Plaintiffs met that bar.

As World Liberty concedes (Opp. at 14), Plaintiffs had no knowledge of any circumstances that might support sanctions before August 26, 2026, the day World Liberty filed its Supplemental Disclosure. After that date, Plaintiffs acted diligently. The very next day, Plaintiffs secured a stipulation to allow discovery into the apparent error revealed by the Supplemental Disclosure (ECF No. 67), and served discovery requests on September 2 to learn how the error occurred. (Moss Decl. ¶¶ 4-6). World Liberty refused to provide that information (*id.* Exs. 6, 8-10), and it made its last limited production on other topics on October 2 (Judah Decl. ¶ 25; Moss Decl. Ex. 7). At that point, the case was stayed until October 22. (ECF No. 69 (docket text)). Near the end of that stay, on October 20, Plaintiffs sought an extension of the so-ordered stipulation protecting their $WLFI tokens (*see* ECF No. 39), and the parties reached agreement on October 30-31. (Judah Decl. ¶¶ 26-27). Plaintiffs filed this motion two days later. (ECF No. 70).

## II. THIS COURT SHOULD AWARD PLAINTIFFS THEIR REQUESTED FEES

Plaintiffs seek only a portion of the fees they needlessly incurred as a result of the false Initial Disclosure—namely, $263,821.20 attributable to just four attorneys at one firm for part of their effort opposing World Liberty's arbitration motion. (Mot. at 10-11; Moss Decl. ¶¶ 12-15). World Liberty does not dispute that amount. Instead, it argues that Plaintiffs fail the but-for causation test of *Goodyear Tire & Rubber Co.* v. *Haeger*, 581 U.S. 101 (2017).

*Goodyear* itself rebuts that argument. The Court there observed that if a lawsuit, "absent litigation misconduct, would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its position—then the court may grant all fees incurred from that moment on." *Id.* at 110-11. The same logic applies here. On June 2, World Liberty was required to disclose a fact fatal to this Court's jurisdiction, and World Liberty itself states that Plaintiffs would have dismissed this action had the disclosure been made. (Opp. at 15; Judah Decl. ¶ 19). The fees

Plaintiffs incurred after that date in opposing World Liberty's arbitration motion resulted from World Liberty's and its counsel's failure to disclose the jurisdictional facts.

World Liberty responds by speculating that Plaintiffs would have incurred those fees anyway because it would have filed "essentially the same motion" in state court and that Plaintiffs' "federal briefing can be easily repurposed" in future proceedings there. (Opp. at 2, 15). World Liberty's speculative argument is wrong. In California state court, motions to compel arbitration generally proceed under the California Arbitration Act, not the Federal Arbitration Act (FAA). *See Cronus Invs., Inc.* v. *Concierge Servs.*, 35 Cal. 4th 376, 388-90 (2005) (FAA sections 3 and 4 "were intended to apply only in federal court proceedings"). The California statute and the FAA have critical differences. For example, the FAA requires federal courts to send any claim covered by a valid arbitration clause to arbitrators, whereas the California statute gives courts discretion not to order arbitration in certain cases where overlapping claims are proceeding in court and "there is a possibility of conflicting rulings on a common issue of law or fact." *L.A. Unified Sch. Dist.* v. *Safety Nat'l Cas. Corp.*, 13 Cal. App. 5th 471, 478-79 (2017). California courts also generally apply a different standard to determine when a party has waived a right to arbitrate. *See Quach* v. *California Com. Club, Inc.*, 16 Cal. 5th 562, 584 (2024) (requiring clear and convincing evidence of waiver). World Liberty's self-serving assumption that Plaintiffs can just recycle their federal arbitration briefing ignores these important distinctions.

In any event, *Goodyear* instructs that courts "need not, and indeed should not, become green-eyeshade accountants." 581 U.S. at 110. The goal "is to do rough justice, not to achieve auditing perfection." *Id.* This Court should decline World Liberty's invitation to deny Plaintiffs' fee request based on speculation that some portion of counsel's work can be reused.

**CONCLUSION**

For these reasons, and those set forth in Plaintiffs' moving papers, this Court should award the requested sanctions in full.

Dated: November 23, 2026
New York, NY

**CAHILL GORDON & REINDEL LLP**

By: */s/ Samson A. Enzer*
Samson A. Enzer (admitted *PHV*)
Herbert S. Washer (admitted *PHV*)
Edward N. Moss (admitted *PHV*)
John S. MacGregor (No. 304330)
senzer@cahill.com
hwasher@cahill.com
emoss@cahill.com
jmacgregor@cahill.com
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000

Gregory Strong (admitted *PHV*)
gstrong@cahill.com
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 884-0001

**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (No. 84065)
Steven P. Ragland (No. 221076)
Brook Dooley (No. 230423)
Gayatri V. Paranjape (No. 345933)
rvannest@keker.com
sragland@keker.com
bdooley@keker.com
gparanjape@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

*Attorneys for Plaintiffs*